UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.                                           **Case No. 18 CR 154**

**VAN L. MAYES,**

    Defendant.

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL UNDREDACTED DISCOVERY**

The discovery in the instant matter reveals that a broad range of investigative techniques were employed in this case. A significant portion of the government's case has been memorialized through investigative reports of interviews with cooperating witnesses, informants, and alleged co-conspirators. These individuals have provided observations, conclusions, and opinions regarding the defendant's involvement in the alleged conduct, as well as, the circumstances which gave rise to his participation. While some of the individuals do not claim to have made direct observations, they nevertheless have offered conclusions regarding the genesis of the conspiracy and acts by the defendant which establish a motive. It is also reasonable to assume that these statements will be introduced by the government to place the defendant's actions in context of the conspiratorial events.

The statements of the witnesses are redacted beyond the identity of the declarant. Often, the discovery is masked by a black-out process, to the extent that it cannot be determined with

1

whom the conversation has transpired. Often, the location in which certain conspiratorial events are claimed to have occurred are also obliterated.

The redactions are far too numerous than can be individually listed in the instant memorandum. Accordingly, a representative sample is provided to the court to demonstrate how the redactions prevent the defendant from having meaningful access to the discovery. The black-outs preclude the defendant from effectively conducting an investigation of the declarant, the contents of his or her statement, and to further investigate whether there is corroboration or lack of corroboration to the statement. Without an ability to review the reports in an unredacted fashion, the defendant has no means to test the credibility of the declarant or to determine whether the substantive statements are verifiable. Furthermore, the defendant is precluded from conducting follow up investigation to determine whether other witnesses were present during the individual's observations or whether there is a divergence of opinion with respect to any substantive claim or allegation. In short, the defendant cannot engage in normal investigatory efforts without obtaining unredacted discovery.

The government obtained a protective order based on allegations which were in a sealed application. In the superseding indictment and the discovery, the government claims that the defendant has engaged in some form of witness intimidation. While Mr. Mayes adamantly denies that he engaged in any such conduct the government's concern is understandable. As such, the following is

2

proposed as a means by which to address both the needs of the defendant and the considerations of the prosecution.

Courts, in criminal and civil jurisdiction, have a multitude of tools by which to ensure that an individual's privacy, as well as, commercial and national security interests are protected. In the civil venue, a court may utilize any of the methods enumerated in Fed.R.Civ.P. Rule 26(b)(4)(B). In criminal cases, a court may ensure that limitations are appropriately applied for discovery matters via F.R.Crim.P. Rule 16(d)(1). In both forms of litigation, courts have considerable discretion to regulate discovery when "good cause" is shown. *U.S. v. Panas*, 738 F.2d 278, 286 (8th Cir. 1984) and *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240 (U.S.D.C., D. Kansas 2010).

The terms and limitations of a "protective order" are case specific. The options in F.R.Civ.P. Rule 26(c) permits limitations on discovery in order to protect a party from annoyance, embarrassment, oppression, undue burden or expense, or to prevent information from being revealed to an individual. F.R.Crim.P. Rule 16(d) permits the issuance of such an order to prevent harm to others; the danger of perjury; witness intimidation; the protection of national security information; and protection against economic reprisal.

Various courts, throughout the country, have engaged in creative means by which to ensure that these interests are not compromised, one of which has been euphemistically referred to as Attorney Eyes Only (AEO). By this process, the court's order

3

proscribes dissemination of the protected information from an individual or category of persons. One well reasoned example of "AEO" can be found in *In re the City of New York v. The City of New York*, 607 F.3d 923, 935-36 (2nd Cir. 2010). This decision notes that: "The disclosure of confidential information on an 'attorneys' eyes only' basis is a routine feature of civil litigation involving trade secrets." *The City of New York* at 935. The court noted that, "the purpose of this form of limited disclosure is to prevent a party from viewing the sensitive information while nevertheless allowing the parties lawyers to litigate on the basis of that information. *Id*. at 936. In *Layne*, the court approved a two tier protective order, limiting a portion to that designated as "confidential" and the second tier as "attorney's eyes only" or "highly confidential". In endorsing this process, this court stated:

> "A two tier protective order that allows the parties in good faith to designate certain limited material as 'attorneys eyes only' constitutes a practical and cost-effective way to protect their respective interests in their most sensitive information from a competitor, while complying with their obligations for discovery." *Layne* at 247.

The Second Circuit Court of Appeals considered the propriety of a protective order which permitted disclosure of discovery to counsel only. In *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93 (2nd Cir. 2008), the defendant challenged the application of the "Classified Information Procedures Act" (CIPA). He argued that restrictions placed on disclosure compromised his Sixth Amendment right to counsel and confrontation. The Circuit

4

Court noted that CIPA established a management procedure for cases involving classified information which harmonized the right to obtain and present exculpatory material with the government's need to protect against disclosure when national security was impacted. *Id.* at 116.

In *Embassies*, The district court had entered a protective order precluding anyone who had not first been granted security clearance to access the information. The defendant's counsel was granted such access. The defendant was not permitted access. The court concluded that CIPA was analogous to Rule 16(d), in that an informed decision which configured a protective order was left to the sound discretion of the court. *Id.* at 122. The court determined that CIPA, under the Rule 16(d) construction theory, allowed the court to effectively enter an "eyes only" limitation on the dissemination of discovery. While this matter interpreted the court's inherent authority under CIPA, it's holding is instructive for how the district court can resolve the redaction issues in the instant matter.

It is therefore respectfully requested that the court direct the government to provide an unredacted version of the discovery. Alternatively, for those witnesses whose identity and/or substantive information remains a safety concern, it is requested that the court direct the government to provide a redacted version pursuant to an "AEO", (Attorney's Eyes Only), limitation.

Dated at Milwaukee, Wisconsin, this 21st day of May, 2020.

Respectfully submitted,

5

/s/ *Robert G. LeBell*

Robert G. LeBell, SBN: 01015710
Attorney for Defendant
1223 N. Prospect Avenue
Milwaukee, WI 53202
(414) 276-1233
Fax: (414) 239-8565
dorbell@ldm-law.com