UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                      Case No. 18-CR-154

VAN L. MAYES,

          Defendant.

## ORDER

On August 13, 2016, a Milwaukee police officer shot and killed Sylville Smith. *Estate of Smith v. City of Milwaukee*, 410 F. Supp. 3d 1066, 1069-70 (E.D. Wis. 2019). Members of the community reacted violently to this incident. Over two nights citizens threw bricks and bottles at police officers and vandalized, looted, and burned businesses in the neighborhood where the shooting occurred.

According to the government, on August 15, 2016, Van L. Mayes and others sought to continue the violence and planned to attack a local police district station with firebombs. (*See generally* ECF No. 1.) In preparation, the group collected glass bottles that they filled with gasoline and fitted with wicks made from torn clothing. They also collected rocks to throw at police officers as part of a diversionary prelude to their

firebomb assault. (ECF No. 77-1 at 24, 46, 56.) However, the plan was abandoned when group leaders determined that there were too many police officers in the area. (ECF No. 77-1 at 46, 57.)

Mayes was charged by way of a criminal complaint on June 27, 2018 with attempted arson, possession of a firearm by a prohibited person, and possession of a destructive device in relation to a crime of violence. (ECF No. 1.) The grand jury on July 10, 2018, returned an indictment charging Mayes with five offenses related to an alleged conspiracy to firebomb a Milwaukee Police district station. (ECF No. 14.)

On October 8, 2019, the grand jury returned a superseding indictment alleging that Mayes conspired to firebomb a Milwaukee Police district station and residences in a Milwaukee suburb (Count One); conspired to encourage others to riot and to coordinate the making of destructive devices to firebomb the police station and residences (Count Two); possessed a destructive device during and in relation to a crime of violence (Count Three); taught others, including juveniles, how to make and use firebombs, with the intent that the firebombs would be used in civil disorder (Count Four); "conspired to intimidate, threaten, and corruptly persuade witnesses to the activities described in Counts One, Two, and Four of this Superseding Indictment by instructing witnesses to create a false and common story to be communicated to law enforcement and by threatening to expose witnesses who were cooperating with law

enforcement…" (Count Five); possessed a firearm after having been convicted of a felony (Count Six); and made a destructive device (Count Seven). (ECF No. 62.)

Currently before the court are three motions filed by Mayes: a "Motion to Compel Unredacted Discovery" (ECF No. 71); a "Motion to Disclose Identity of Informant and Related Discovery" (ECF No. 73); and a motion to seal (ECF No. 74).

The court finding good cause, Mayes's motion to seal (ECF No. 74) will be granted. Mayes's unredacted memorandum in support of his motion to compel disclosure of the identity of the confidential informant (ECF No. 77) will remain sealed.

Mayes's "Motion to Compel Unredacted Discovery" (ECF No. 71) will be granted as unopposed. The United States has agreed to "provide discovery with only the names and addresses of witnesses redacted." (ECF No. 83.)

With respect to Mayes's motion to compel disclosure of the identities of witnesses, "[t]here is no constitutional right to discover evidence favorable to the state in a criminal case, so the inability of a defendant to interview witnesses is a constitutional problem only if the state artificially restricted the defendant's ability to obtain evidence." *United States ex rel. Jones v. De Robertis*, 766 F.2d 270, 274 (7th Cir. 1985) (citing *Wardius v. Oregon*, 412 U.S. 470, 474, 37 L. Ed. 2d 82, 93 S. Ct. 2208 (1973)). The government has not, for example, instructed witnesses to refuse to cooperate with the defense. (ECF No. 82 at 12.) Thus, the defense team is free to undertake its own

3

investigation and identify any witnesses who might be adverse or supportive of its case. (ECF No. 82 at 13.)

The government has a limited privilege to withhold the identities of confidential informants. *United States v. McDowell*, 687 F.3d 904, 911 (7th Cir. 2012) (citing *Roviaro v. United States*, 353 U.S. 53, 59 (1957)). The privilege is automatic; the government need not make any threshold showing that the witness faces likely reprisal or retaliation. *In re EyeCare Physicians of Am.*, 100 F.3d 514, 518 n.5 (7th Cir. 1996) (quoting *United States v. Herrero*, 893 F.2d 1512, 1525 (7th Cir. 1990)). The defendant may overcome the privilege by showing that the informant's identity "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause."*Roviaro v. United States*, 353 U.S. 53, 60-61 (1957). Ultimately, the court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62.

The court's analysis varies based on the informant's role. It is difficult for a defendant to show that disclosure is appropriate when the informant is a mere "tipster," *e.g.*, a person who simply provides investigative leads or relates hearsay. *See McDowell*, 687 F.3d at 911. A stronger case for disclosure exists when the informant was a "transactional witness," *e.g.*, a person who witnessed or participated in a charged offense. *Id*. Ultimately, the burden is on the defendant to show that disclosure is required. *United States v. Shaw*, 824 F.3d 624, 629 (7th Cir. 2016).

Mayes offers summaries of several witness statements contained in certain investigative reports. He breaks them down into two categories: those who provided statements that inculpate him and those who provided statements that exculpate him. However, he does not distinguish between those witnesses that are mere tipsters and those that are transactional witnesses. It appears that he intended the summaries to be mere examples and that he seeks disclosure of the identity of every confidential informant regardless of the nature of the information the person provided. Such broad disclosure is inconsistent with the fact-intensive and individualized nature of the court's balancing. *See United States v. Hinton*, 535 F. App'x 528, 530 (7th Cir. 2013) (unpublished). Further complicating matters is the fact that, although Mayes provided the investigative reports that underlie *some* of his summaries, he did not provide them all. As a result, it is impossible to undertake a thorough individualized assessment of each witness.

In response, the government groups Mayes's summaries into 13 "sources of information" (ECF No. 82 at 4-10), thus revealing that in some instances a single person was behind multiple reports. It states that it will disclose the names and related information of the witnesses it intends to call at trial not less than seven days before the final pretrial conference, consistent with Chief Judge Pepper's standard practices, which means that Mayes will receive the information roughly a month before trial. The government argues that no basis exists for earlier disclosure. (ECF No. 82 at 11.) The government further argues that the identities of the witnesses are privileged, and many

5
Case 2:18-cr-00154-PP    Filed 09/03/20    Page 5 of 13    Document 94

of them are mere tipsters. (ECF No. 82 at 15-18.) Finally, it asserts that it "reasonably believes that redacting the witnesses' names will help protect their safety." (ECF No. 82 at 18.)

Mayes replies that none of the sources of information reported Mayes threatening or intimidating them. (ECF No. 91 at 1.) He argues that "there is not a shred of corroboration, substantiation or documentation offered to support the bold claims" of witness intimidation or obstruction by Mayes. (ECF No. 91 at 3.) He further argues that "the government fails to address the alternative proposal presented by the defense that the CIs identities and collateral information be disclosed on an [attorneys] 'eyes only' basis." (ECF No. 91 at 5.)

There is good reason why the government did not respond to an attorney's eyes only proposal: Mayes never made any such argument in conjunction with his motion to compel the disclosure of the confidential informants. An attorney's eyes only argument was presented only in the brief submitted in support of Mayes's Motion to Compel Unredacted Discovery. (ECF No. 72.) Because Mayes failed to make his attorneys eyes only argument in his initial brief in support of his Motion to Compel Identity of Informant and Related Discovery (ECF No. 76, 77), he forfeited the argument and cannot raise it for the first time in his reply brief. *See Nationwide Ins. Co. v. Cent. Laborers' Pension Fund*, 704 F.3d 522, 527 (7th Cir. 2013).

Although Mayes's memorandum in support of his motion is 29 pages long, he devotes a mere two and a half pages to argument. As stated, his argument is completely devoid of any recognition that the law distinguishes between witnesses who are mere tipsters and those who are transactional witnesses. Although he says that he needs to know the identities of these people "to determine credibility" (ECF No. 77 at 27), "to determine, in advance of trial, the accuracy and truthfulness of their accusations" (*id*. at 27-28), and so the defense can "engage in meaningful investigation" (*id*. at 28), he never explains why he needs to know their identities now. Even when prompted on that issue by the government's response Mayes's reply never explains why immediate disclosure is required.

In short, although Mayes contends that he "has shown a genuine need for immediate disclosure" (ECF No. 77 at 28), he has done nothing of the sort. The only investigation that he suggests requires time is when he speculates that some witnesses may have juvenile delinquency records. As to these witnesses he notes that a court order is required to obtain delinquency records in Wisconsin. (ECF No. 77 at 7.) Setting aside questions of whether a juvenile delinquency adjudication may be admissible, *see* Fed. R. Evid. 609(d), Mayes has failed to show that three to four weeks would be insufficient time for him to obtain such records.

Mayes also argues that disclosure is appropriate because certain witnesses provided allegedly exculpatory statements. However, Mayes never develops this

argument, discusses *Brady*, or frames his argument in terms of that well-established framework.

As for Mayes's argument in his reply brief that the government has failed to present evidence of witness intimidation or obstruction, it overlooks the fact that the grand jury indicted Mayes for doing just that. Specifically, the grand jury found probable cause to believe that Mayes

> and others known and unknown to the grand jury knowingly and intentionally combined and conspired to intimidate, threaten, and corruptly persuade witnesses to the activities described in Counts One, Two, and Four of this Superseding Indictment by instructing witnesses to create a false and common story to be communicated to law enforcement and by threatening to expose witnesses who were cooperating with law enforcement, with the intent to hinder, delay, and prevent communication to the United States Bureau of Alcohol, Tobacco, and Firearms of information relating to the commission of a Federal Offense, including those described in Counts One, Two, and Four.

(ECF No. 62 at 5.) The fact that Mayes has been indicted for tampering with a witness, victim, or an informant with respect to this matter makes this unlike a case in which the government can offer only generalized concerns regarding the safety of informants and the integrity of the process.

Beyond the fact that Mayes has been indicted for intimidating witnesses, the record substantiates the government's concerns regarding witness intimidation and related obstructive activities by Mayes and others associated with this investigation. After Mayes was arrested in 2018 he and others reportedly sought to communicate with witnesses so they could develop a "common story" (ECF No. 77-1 at 68) and to instruct

witnesses as to what they should say to law enforcement (ECF No. 77-1 at 69; *see also* ECF No. 77-1 at 60, 62). An associate of Mayes posted in a Facebook group discouraging people from talking to law enforcement. (ECF No. 77-1 at 3.)

Mayes reportedly wanted to "expose" witnesses. (ECF No. 77-1 at 69.) A report of one interview states that the witness "stated that MAYES said that once he gets the discovery on his case and confirms that [REDACTED] is cooperating with law enforcement, then MAYES wants 'something done' about [REDACTED]. [REDACTED] said MAYES believes [REDACTED] is the main witness against him." (ECF No. 77-1 at 77.)

The government in its response included a photograph that it describes as "a still photograph from one of Mayes's 2016 social media videos referencing civilian witnesses as 'snitches.'" The still image contains the text "Riot Snitches Be Like." (ECF No. 82 at 3.) The government also stated that, with respect to one witness, "s/he was physically assaulted by one of Mayes' associates after the perpetrator asked the witness if s/he was cooperating with police." (ECF No. 82 at 8.) It appears that this assault was recounted in an investigative report provided by Mayes. (ECF No. 77-1 at 67.) However, a Post-It note seems to have been placed over the scanned version of the report Mayes provided to the court, thus obscuring the most relevant portions.

In another report provided by Mayes the witness stated that the witness "had concerns for his/ her safety and that various encounters throughout the past few weeks

9

led the witness to fear for his/ her safety." (ECF No. 77-1 at 35.) The report refers to two other investigative reports that have not been provided to the court. (ECF No. 77-1 at 35.) The witness recounted an incident where he encountered Mayes and Mayes communicated in a manner that the witness believed was intended to be intimidating. (ECF No. 77-1 at 36.)

Against this backdrop the court finds that the government's concerns about witness influence and intimidation are well-founded. There is strong reason to believe that there is a concerted effort by Mayes and others to influence witnesses to provide testimony favorable to Mayes, or at a minimum to persuade them to refuse to cooperate with law enforcement. The possibility of influence is especially high given that it appears that the witnesses tend to have been previously allied with Mayes, often appear to have shared his alleged antipathy toward law enforcement, and in most instances continue to reside in or be active in the community shared by Mayes and his supporters.

The government states that, consistent with Chief Judge Pepper's standard practices, not less than seven days before the final pretrial conference it will disclose the names of any witness it intends to call at trial. (ECF No. 82 at 11.) That would not cover a confidential informant the government does not intend to call at trial. Presumably, the government does not intend to ever disclose the identities of those individuals. However, the court finds that the government must disclose the identities of each transactional witness even if it does not intend to call that person as a witness at trial.

The government having not proposed any other deadline for disclosing the identities of all transactional witnesses, the court will order the disclosure of the identities of these witnesses not later than seven days before the final pretrial conference. Given Chief Judge Pepper's common practice of scheduling a final pretrial conference two to three weeks before the commencement of trial, this will result in Mayes learning the identities up to a month before trial.

Delayed disclosure diminishes the opportunities for witness corruption. No trial has yet been scheduled. Thus, if witnesses were disclosed now, the reasonable concern is that Mayes and his supporters would have many months in which to influence or intimidate them.

In the interim, the defense is not forced to sit idle. The absence of certain witnesses' identities does not preclude the defense from performing its own investigation of potential witnesses. In fact, given the facts and circumstances of the case, it is likely that the defense already recognizes the identities of many of the purportedly confidential witnesses. Even the court, with minimal familiarity of the persons involved and the facts of the case, has been able to recognize the identities of certain witnesses.

In sum, the defendant has the burden to show that the government's privilege must yield. Generally, this requires the defendant to show that the confidential informant was a transactional witness. Mayes has failed to discuss any of the sources of

information in such terms. Rather, he argues broadly that the government must immediately disclose the identities of all persons who provided information to investigators. However, he has failed to demonstrate that immediate disclosure of any witness, much less all witnesses, is necessary to ensure he is able to adequately prepare for trial. The government, on the other hand, has demonstrated a strong reason to believe that, if the identities of witnesses are disclosed now, it will significantly increase the risk that Mayes or others acting on his behalf will attempt to influence them.

Balancing these concerns, the court concludes that the government must disclose the identities of all transactional witnesses not less than seven days before the final pretrial conference. The government concedes that the witnesses it identifies as "SOIs 7 and 10" are transactional witnesses. (ECF No. 82 at 17.) Notwithstanding Mayes's lack of argument on the point, the court nonetheless has reviewed the investigative reports provided to the court and concludes that those witnesses the government has identified as Sources of Information numbers 1, 6, 9 are also transactional witnesses. The government shall disclose the identities of these individuals—SOIs 1, 6, 7, 9, and 10— not less than seven days before the final pretrial conference.

**IT IS THEREFORE ORDERED** that Mayes's motion to seal (ECF No. 74) is **granted**. The document filed as ECF No. 77 will remain sealed.

**IT IS FURTHER ORDERED** that Mayes's "Motion to Compel Unredacted Discovery" (ECF No. 71) is **granted as unopposed**.

12
Case 2:18-cr-00154-PP    Filed 09/03/20    Page 12 of 13    Document 94

**IT IS FURTHER ORDERED** that Mayes's "Motion to Compel Identity of Informant and Related Discovery" (ECF No. 73) is **granted in part**. The government shall disclose the identities of the witnesses it refers to as Source of Information numbers 1, 6, 7, 9, and 10 not later than seven days before the final pretrial conference. Mayes's motion is denied in all other respects.

Dated at Milwaukee, Wisconsin this 3rd day of September, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge