UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

  v.                                                                          Case No. 18-cr-154-pp

VAN L. MAYES,

        Defendant.

---

**ORDER OVERRULING DEFENDANT'S OBJECTIONS TO JUDGE DUFFIN'S ORDER DENYING MOTION TO QUASH (DKT. NO. 65), OVERRULING DEFENDANT'S OBJECTIONS TO JUDGE DUFFIN'S ORDER DENYING MOTION TO DISCLOSE IDENTITY OF INFORMANT AND RELATED DISCOVERY (DKT. NO. 96) AND AFFIRMING BOTH ORDERS (DKT. NOS. 63, 94)**

---

Although this case currently is assigned to Magistrate Judge William E. Duffin for pretrial motions, the defendant has filed two "objections" to orders Judge Duffin has issued. Dkt. Nos. 65, 96. Because the defendant has not met his burden, the court will overrule the objections.

I. **Procedural History**

This case arises out of widespread arson, rioting and looting that occurred in Sherman Park (a Milwaukee, Wisconsin neighborhood) on August 13-15, 2016 after a Milwaukee Police Officer shot Sylville Smith at the intersection of North 44th Street and West Auer Avenue. Dkt. No. 1. Magistrate Judge Nancy Joseph signed the complaint, which accused the defendant of

1

attempted arson, possession of a firearm by a prohibited person and possession of a destructive device in relation to a crime of violence. Dkt. No. 1.

Magistrate Judge William E. Duffin entered a temporary detention order on July 2, 2018, but later released the defendant, instructing him not to possess firearms or other destructive devices, restricting his travel to the Eastern District of Wisconsin and entering a no contact order. Dkt. No. 10. This court, as duty judge, granted the government's motion to stay the order setting conditions of release, granted a *de novo* hearing, denied the government's motion to reverse Judge Duffin's order and ordered the defendant's release on the conditions Judge Duffin had set. Dkt. No. 12.

On July 10, 2018, the grand jury returned an indictment charging the defendant with five counts: attempted arson, conspiracy to commit arson, possession of a destructive device, and two counts of possession of a firearm by a prohibited person. Dkt. No. 14. Judge Duffin took the not guilty pleas, dkt. no. 20, and appointed Attorney Robert G. LeBell to represent the defendant, dkt. no. 21.

Magistrate Judge David Jones conducted status conferences on October 11, 2018; November 6, 2018; January 22, 2019 and March 19, 2019, discussing the voluminous discovery. Dkt. Nos. 31, 32, 35, 36. On May 23, 2019, the government filed a motion to reassign this case from Judge Adelman to this court because it is based on a similar set of facts, events, witnesses and offenses as United States v. Toronse Carter, Case No. 17-cr-190, and United States v. Charles Edward, Case No. 16-cr-159 (both of which were assigned to

this court). Dkt. No. 43. This court granted the motion and the Clerk of Court reassigned the case to this court and Judge Duffin (after Judge Jones became unavailable). Dkt. No. 52.

On September 18, 2019, the defendant filed a motion to quash the government's subpoenas issued to Corey Miles, Bernice Hart and Derrick Madlock for their attendance before the grand jury, dkt. no. 56 (sealed); the government opposed the motion, dkt. no. 61 (sealed), and the defendant did not reply.

Meanwhile, the grand jury returned a superseding indictment on October 8, 2019, charging the defendant with conspiracy to firebomb a Milwaukee Police district station (Count One); conspiracy to encourage others to riot and to coordinate the making of destructive devices to firebomb the police station and residences (Count Two); possession of a destructive device during and in relation to a crime of violence (Count Three); teaching others, including juveniles, how to make and use firebombs, with intent that the firebombs would be used in civil disorder (Count Four); conspiracy to intimidate, threaten and corruptly persuade witnesses to create a false and common story and threatening to expose witnesses who were cooperating (Count Five); possessing a firearm after being convicted (Count Six); and making a destructive device (Count Seven). Dkt. No. 62.

The next day, Judge Duffin denied the defendant's motion to quash because the defendant had not met his burden. Dkt. No. 63. On October 3, 2019, the defendant filed objections to Judge Duffin's order on the motion to

3

quash and asked for *de novo* review. Dkt. No. 65. The government filed a response opposing the objections. Dkt. No. 66. Because the case still is assigned to Judge Duffin, this court did not receive notification through the Case Management/Electronic Case Filing (CM/ECF) system that an objection needing its attention was pending.

Judge Duffin set a deadline of May 15, 2020 for the filing of pretrial motions. Dkt. No. 67. The defendant filed an unopposed motion to stay the briefing schedule until any motion to compel (which had not yet been filed) could be resolved. Dkt. No. 69. Judge Duffin granted that motion and on May 21, 2020, the defendant filed a motion to compel the production of unredacted discovery, dkt. no. 71, and a motion for disclosure of identity of informant and related discovery, dkt. no. 73. The defendant filed a twenty-nine-page memorandum in support of the motion for disclosures, along with a seventy-seven page exhibit. Dkt. Nos. 76, 77. The government filed its responses to both motions, dkt. nos. 82, 83, and the defendant filed reply briefs, dkt. nos. 90, 91.

Judge Duffin granted the unopposed motion to compel unredacted discovery because the government agreed to provide discovery with only the names and addresses redacted, and granted in part the defendant's motion to disclose identity of informant and related discovery. Dkt. No. 94. Judge Duffin ordered the government to disclose the identities of witnesses referred to as sources of information (SOI) #1, #6, #7, #9 and #10 no later than seven days before the final pretrial conference. Id.

In response to a text-only order issued by this court requiring the parties to notify the court of their anticipated next steps, the defendant filed objections (restricted) and requested *de novo* review. Dkt. No. 96. The defendant acknowledged Judge Duffin's conclusion that he had not provided enough information for Judge Duffin to determine which of the SOIs whose identities the defendant sought were tipsters and which were transactional witnesses. Id. at 1. Two days later, the defendant filed a letter explaining that he intends to file at least one substantive pretrial motion with respect to the superseding indictment. Dkt. No. 99. The government filed a response to the defendant's objections, dkt. no. 100, and the defendant filed a reply, dkt. no. 101.

## II. Objections to Order Denying Defendant's Motion to Quash Subpoenas (Dkt. No. 65)

The defendant filed objections to Judge Duffin's order denying his motion to quash, asking this court to conduct a *de novo* review. Federal Rule of Criminal Procedure 59 distinguishes between objections to an order ruling on nondispositive matters, Fed. R. Crim. P. 59(a), and objections to a recommendation for a ruling on dispositive matters, Fed. R. Crim. P. 59(b). The difference is the standard of review. The district court reviews a magistrate judge's order resolving nondispositive matters to determine whether any part of the order is contrary to law or clearly erroneous. Fed. R. Crim. P. 59(a). A district court reviews *de novo* those portions of a magistrate judge's recommendation on *dispositive* matters to which the defendant objects. Fed. R.

Crim. P. 59(b)(2). The defendant's objections do not address the rule or explain why the defendant believes he is entitled to *de novo* review.

The defendant styled his motion to Judge Duffin as a motion to quash a subpoena under Rule 17(c). He asked Judge Duffin to quash subpoenas served on grand jury witnesses and "prohibit the prosecution from further misuse of its' subpoena power." Dkt. No. 56 at 6. General Local Rule 72(b)(2)(N) states that a magistrate judge may enter an order on a motion brought under Rule 17(c) (treating such an order as what it is—a ruling on a nondispositive motion). Accordingly, Judge Duffin issued a final order rather than a recommendation, cited the applicable law and found that the defendant had not met his burden. Dkt. No. 63. Because Judge Duffin issued a final order resolving a nondispositive matter, this court reviews it under Rule 59(a) to determine if it is contrary to law or clearly erroneous, and that rule makes no provision for *de novo* review.

Judge Duffin discussed the controlling authority before applying that authority to the facts of this case:

> The government may not use the grand jury for the sole or primary purpose of obtaining evidence against a defendant who has been indicted. *United States v. Badger*, 983 F.2d 1443, 1458 (7th Cir. 1993) (citing *United States v. Thompson*, 944 F.2d 1331 (7th Cir. 1991), cert. denied, 117 L. Ed. 2d 422, 112 S. Ct. 1177 (1992)); *United States v. Segal*, 299 F. Supp. 2d 840, 844, 851-52 (N.D. Ill. 2004). But there is nothing improper about the government using the grand jury process to pursue additional charges against an indicted defendant. *United States v. West*, No. 08 CR 669, 2011 U.S. Dist. LEXIS 22256, at *5 (N.D. Ill. Mar. 7, 2011) (citing *Badger*, 983 F.2d at 1458). In fact, it is commonplace. Id. It is the defendant's burden to demonstrate that the government abused the grand jury

process. *Badger*, 983 F.2d at 1458 (citing *Thompson*, 944 F.2d at 1337).

> [The defendant] has not demonstrated that the sole or primary purpose of the government was to obtain additional evidence rather than to investigate additional charges against him. Significantly, on October 8, 2019, the grand jury returned a superseding indictment against [the defendant], which suggests not only that the government's use of the grand jury was for the legitimate purpose of pursuing a superseding indictment but that his motion is moot.

Dkt. No. 63 at 1-2.

This decision was not clearly erroneous (and is not erroneous even under a *de novo* review). The motion is based on speculation that the government was abusing its subpoena power. This argument lost its momentum when the grand jury returned a superseding indictment with additional charges, including witness tampering and intimidation. The defendant admits that the motion to quash "may be considered moot" because the grand jury returned the superseding indictment with additional charges. Dkt. No. 65 at 1. He also admits that he filed the "objection and request for *de novo* review" to preserve appellate issues and to support an anticipated motion to dismiss the superseding indictment. Id. The court will overrule the objection and affirm Judge Duffin's order denying the defendant's motion to quash the grand jury subpoenas.

### III. Objections to Order Granting in Part Motion to Compel Disclosure (Dkt. No. 96)

A similar analysis applies to the defendant's objection to Judge Duffin's order granting in part the defendant's motion to compel identity of informant and related discovery. Dkt. No. 96. The defendant filed the objection in

response to this court ordering the parties file a status report with their anticipated next steps. Dkt. Nos. 95. Again, Judge Duffin's order resolving the motion to compel is a final order resolving a nondispositive motion. The court reviews Judge Duffin's order only to determine whether it is contrary to law or clearly erroneous and there is no authority supporting the defendant's request for *de novo* review.

A. Judge Duffin's Order (Dkt. No. 94)

Judge Duffin began his decision with the premise that there "is no constitutional right to discover evidence favorable to the state in a criminal case, so the inability of a defendant to interview witnesses is a constitutional problem only if the state artificially restricted the defendant's ability to obtain evidence." Dkt. No. 94 at 3 (quoting United States *ex rel.* Jones v. DeRobertis, 766 F.2d 270, 274 (7th Cir. 1985). Judge Duffin acknowledged the government's limited—but automatic—privilege to withhold the identities of confidential informants. Id. at 4 (citing United States v. McDowell, 687 F.3d 904, 911 (7th Cir. 2012)). He explained that the defendant may overcome the privilege by showing that the informant's identity is "relevant and helpful to the defense" or essential to a fair determination. Id. (citing Roviaro v. United States, 353 U.S. 53, 60-61 (1957)). He explained that a stronger case exists for the disclosure of a transactional witness than a mere tipster. Id. (citing McDowell, 687 F.3d at 911). And he pointed out that the defendant bears the burden of showing that disclosure is required. Id.

Judge Duffin explained why he concluded that the defendant had not met this burden:

> [The defendant] offers summaries of several witness statements contained in certain investigative reports. He breaks them down into two categories: those who provided statements that inculpate him and those who provided statements that exculpate him. However, he does not distinguish between those witnesses that are mere tipsters and those that are transactional witnesses. It appears that he intended the summaries to be mere examples and that he seeks disclosure of the identity of every confidential informant regardless of the nature of the information the person provided. Such broad disclosure is inconsistent with the fact-intensive and individualized nature of the court's balancing. *See United States v. Hinton*, 535 F. App'x 528, 530 (7th Cir. 2013) (unpublished). Further complicating matters is the fact that, although [the defendant] provided the investigative reports that underlie *some* of his summaries, he did not provide them all. As a result, it is impossible to undertake a thorough individualized assessment of each witness.

Id. at 5.

Judge Duffin also found that the defendant had forfeited any argument that the names be provided on an attorney's-eyes-only basis because he never raised the argument in connection with his motion to compel the disclosure of the confidential informants and he could not raise it for the first time in his reply brief. Id. at 6. He pointed out that in the twenty-nine-page motion, the defendant had reserved only two and a half pages for argument. Id. at 7. Judge Duffin found that the defendant failed to acknowledge the law distinguishing tipsters and transactional witnesses, failed to show a genuine need for immediate disclosure and failed to discuss Brady v. Maryland, 373 U.S. 83 (1963) or place any of his arguments within that familiar framework. Id. at 7-8.

Regarding the defendant's argument that the government had no evidence (or stale evidence) that the defendant intimidated witnesses or

9

obstructed, Judge Duffin found that the defendant had overlooked the grand jury's return of the superseding indictment. Id. at 8. He pointed out that the grand jury found probable cause to believe that the defendant

> knowingly and intentionally combined and conspired to intimidate, threaten, and corruptly persuade witnesses to the activities described in Counts One, Two, and Four of this Superseding Indictment by instructing witnesses to create a false and common story to be communicated to law enforcement and by threatening to expose witnesses who were cooperating with law enforcement, with the intent to hinder, delay, and prevent communication to the United States Bureau of Alcohol, Tobacco, and Firearms of information relating to the commission of a Federal Offense, including those described in Counts One, Two, and Four.

Id.

Judge Duffin pointed to several parts of the record that substantiated the government's concerns about witness intimidation and obstruction, citing Dkt. No. 77-1 at 3, 35, 60-61, 68, 69, 77 and Dkt. No. 82. Id. at 8-10. Based on legitimate concerns of witness influence and intimidation and a "strong reason to believe that there is a concerted effort by [the defendant] and others to influence witnesses to provide favorable testimony" (or persuade them to refuse to cooperate), Judge Duffin declined to order immediate disclosure. Id. at 10. Instead, he ordered the government to disclose the identities of each transactional witness no later than seven days before the final pretrial conference—even if the government does not intend to call that person at trial. Id. He noted that the government had conceded that witnesses identified as SOIs #7 and #10 are transactional witnesses, and determined (notwithstanding the lack of argument by the defendant) that sources #1, #6 and #9 also are

10

transactional witnesses. Id. at 12. Ultimately, Judge Duffin balanced the need for access to transactional witnesses with the concern that disclosing their identities earlier would give the defendant "many months" in which to influence or intimidate them. Id.

### B. Defendant's Objections (Dkt. No. 96)

The defendant argues that he provided a sufficient basis for disclosure. Dkt. No. 96 at 2. He asserts that he demonstrated that nineteen individuals inculpated the defendant and fifteen others provided exculpatory statements. Id. The defendant argues that each of the nineteen individuals who gave inculpatory statements are either transactional or provided information which directly contradicts someone else. Id. at 2-9. The defendant also accuses the government of relying on stale information. Id. at 9. The defendant returns to his forfeited argument that the court could provide the identities on an "eyes only" basis. Id. at 10-12.

### C. Government's Response (Dkt. No. 100)

The government asserts that the defendant has attempted to intimidate and interfere with witnesses by (1) lying to law enforcement; (2) stating that he had compiled a list and intended to expose the people who received federal subpoenas to testify; (3) saying that he wanted "something done" about a witness whose identity was confirmed in discovery; (4) associating with someone gathering witnesses who could be identified in the criminal complaint to develop a story to protect them all from prosecution; and (5) posting intimidating video messages, referring to citizen witnesses as "snitches" and

11

threatening to find out who made statements to law enforcement." Dkt. No. 100 at 2-3. The government says that one witness has been attacked by an unknown assailant for cooperating. Id. at 3. It says that it has provided protective resources to some witnesses. Id.

The government explains that it has thirteen sources of information (SOIs #1 through #13). The government represents that SOIs #2, #3, #4, #5, #8, #11, #12 and #13 either did not implicate the defendant or provided no first-hand information about the crimes that the defendant allegedly committed. Id. at 4-10. The government has no objection to Judge Duffin's order requiring it to disclose the names of transactional witnesses not less than seven days prior to the final pretrial conference. Id. at 1.

The government contends that the procedures in place adequately account for the defendant's need to conduct discovery. It points to the court's established procedure requiring disclosure of witnesses' names seven days prior to the final pretrial conference and adequately protects the government's interests. Id. at 10 (citing Tips for Parties Practicing before Judge Pepper, Section VI.A., available at http://www.wied.uscourts.gov/sites/wied/files/ documents/Judge_Pepper_tips_5-24-18.pdf). It points to the procedure for challenging the open file policy under Criminal Local Rule 16 (E.D. Wis.), noting that the rule exempts from disclosure material that might contain sensitive witness information. Id. at 12-13. It points to the detailed process in that rule, which includes allowing the defendant to challenge redactions. Id.

The government points out that it has a limited privilege to withhold the identity of an informant, (citing United States v. Harris, 531 F.3d 507, 514 (7th Cir. 2007)), and that this limited privilege is granted as a right (citing United States v. Valles, 41 F.3d 355, 358 (7th Cir. 1994)). Id. at 14. It explains that courts must balance the public interest in protecting the flow of information against the individual's right to prepare his defense. Id. at 15. The government cites authority distinguishing transactional witnesses from tipsters, and admits that SOIs #7 and #10 fall within the transactional witness category. Id. at 16. The government admits that SOIs #1, #2, #4, #5, #6, #8 and #9 could fall into either the transactional witness or tipster categories but says it already has provided the substance of their statements and the defendant has failed to establish a legitimate reason why the identities are relevant or essential at this time. Id. It says that the remaining witnesses—SOIs #3, #11, #12 and #13— clearly fall within the tipster category, because they are tipsters who voluntarily told the police about suspicious activity. Id. The government argues that the Seventh Circuit has held that a tipster need not be disclosed. Id. at 17 (citing United States. v. Wilburn, 581 F.3d 618, 623 (7th Cir. 2009)). The government asserts that the defendant has not offered anything beyond his speculation that talking to these witnesses would reveal anything more than what they have already stated and that concern for their safety outweighs disclosure. Id. Finally, the government points out that the court has not set a trial date, so disclosing identities at this point would unnecessarily jeopardize witness safety. Id. at 19.

13

D.  Defendant's Reply (Dkt. No. 101)

The defendant replies that he has overcome the presumption of non-disclosure and asserts generally that he cannot move forward with his defense investigation without disclosures from the witnesses. Dkt. No. 101 at 1. The two-page reply brief cites no authority. Instead, the defendant reiterates that if the court finds that immediate disclosure to the defendant himself is inappropriate, the court may consider the "eyes only" process." Id.

E.  Analysis

The court has stated that the defendant has not provided any legal authority supporting a *de novo* review. Nor has he explained why Judge Duffin's decision is clearly erroneous. Judge Duffin correctly cited the law and required disclosure of the identities of five of the thirteen SOIs (SOIs #1, #6, #7, #9 and #10) seven days before the final pretrial conference. The defendant makes arguments to this court that he did not make to Judge Duffin, and continues to propose an "attorney's eyes only" procedure that he did not raise until his reply brief and that Judge Duffin concluded he had forfeited.

The defendant is not entitled to discover the identities of all confidential sources. In his objection, the defendant *for the first time* identifies the confidential sources whom he believes to be transactional witnesses. Beyond the SOIs that Judge Duffin already has ordered the government to disclose, the defendant now suggests that SOIs #8, #12, #14, #17, #18 and #19 are

14

transactional witnesses.[1] The defendant did not identify these SOIs for Judge Duffin in his memorandum in support of the motion to compel. With the exception of SOI #5, the government disputes that any of the other SOIs have first-hand knowledge of the crimes allegedly committed. The defendant has not contradicted that assertion with any authority or record evidence.

With respect to SOI #5, the court notes the difference between what the defendant submitted to Judge Duffin and what he has submitted to this court:

**Defendant's Motion to Judge Duffin (SOI-5):**

5. January 26, 2017 interview by ATF Agents Hankins and Rorabeck of Unnamed Individual:

He told the agents that the first time he heard about Molotov Cocktails was when he spoke to Gabby [an associate of [the defendant]]. Gabby told him that federal agents had been by Charles' Edwards' place asking about gas cans and Molotov Cocktails. Gabby told him that, "they 'covered it up' by saying that the gas cans were used for Charles Edwards' generator."

He further stated that Edwards told him, "that Edwards, G, T and [the defendant] all met at Edwards apartment within days after the riots in order to get 'something going' but it 'didn't pop off' like they planned…Edwards claimed to have tried to get something started like they had on the day of the riots but it didn't work."

He "did not know what specific role [the defendant] had in manufacturing the Molotov Cocktails, but was sure [the defendant] was involved because that's the type of guy he is." The government claims that Gabby is co-conspirator of [the defendant].

**Defendant's Objection to this court (SOI-5)**

This witness is transactional to the alleged conspiracy. The witness purportedly overheard another unindicted co-conspirator implicate herself and (sic) well as the defendant. That witness also has heard

---

[1] There are only thirteen sources of information, so it is not clear to whom the defendant refers when he mentions ##14, 17, 18 and 19.

> direct statements from Edwards which purportedly implicate the defendant in the conspiracy.

Compare Dkt. No. 77 at 11 with Dkt. No. 96 at 4.

The Seventh Circuit defines a transactional witness as someone "who participated in the crime charged against the defendant or witnessed the event in question." <u>Harris</u>, 531 F.3d at 515. If one goes by what the defendant told Judge Duffin, SOI #5 did not witness first-hand, or participate in, the crimes with which the defendant is charged. SOI #5 allegedly heard from Charles Edwards that Edwards met with the defendant "days after the riot" to get something going and SOI #5 thought the defendant was involved because that's the type of guy he is. On the other hand, the government, in its response to the defendant's objections, reveals that SOI #5 saw—from a distance—the burning of the BP gas station. Dkt. No. 100 at 6. The government says that SOI #5 did not see the defendant, but heard from the defendant's associate that the defendant lied and tried to "cover up evidence." <u>Id.</u>

At any rate, the defendant did not argue to Judge Duffin that SOI #5 was a transactional witness and did not give Judge Duffin a good reason why he needed to know the identity of SOI #5. Judge Duffin did not commit clear error in finding that the defendant "failed to demonstrate that immediate disclosure of any witness, much less all witnesses, is necessary to ensure he is able to adequately prepare for trial." Dkt. No. 94 at 12. Judge Duffin did not commit clear error in finding that the government had "demonstrated a strong reason to believe that, if the identifies of witnesses are disclosed now, it will

16

significantly increase the risk that [the defendant] or others acting on his behalf will attempt to influence them." Id.

The exhibits filed by the defendant and cited by Judge Duffin support a finding that the government has legitimate safety concerns. See Dkt. Nos. 77-1 at 3, 36, 67, 68, 69, 77. Particularly troubling is an interview in which the witness stated "that [THE DEFENDANT] said that once he gets the discovery on his case and confirms that [REDACTED] is cooperating with law enforcement, then [THE DEFENDANT] wants 'something done' about [REDACTED]. [REDACTED] says [THE DEFENDANT] believes [REDACTED] is the main witness against him." Dkt. No. 77-1 at 77. The government included three social media posts by the defendant, one as recent as June 23, 2020. In one post, the defendant refers to civilian witnesses as snitches; the second and third posts show him dressed in a tactical vest with a gun; and in the third post, the defendant live-streamed an incident where he went to a Milwaukee home and accused the residents there of child abduction (leading to shots fired and the home being set on fire). Dkt. No. 82 at 3-4. Since the court first reviewed the detention order, the grand jury has returned a superseding indictment with charges of witness tampering/intimidation.

Because the court does not review *de novo* a magistrate judge's order on a nondispositive motion, it will reverse Judge Duffin's order only if that order was clearly erroneous or contrary to law. The defendant has not demonstrated that Judge Duffin's order was clearly erroneous or contrary to law. Objecting to Judge Duffin's discovery order does not authorize the defendant to raise

17

arguments before this court that he did not give Judge Duffin a chance to consider; Judge Duffin cannot err—clearly or otherwise—in failing to consider an argument never presented to him. The defendant did not identify transactional witnesses to Judge Duffin, articulate a reason for his request for immediate disclosure or rebut the government's substantiated concerns for witness safety. There is no basis for this court to disturb Judge Duffin's rulings.

### IV. Conclusion

The court **OVERRULES** the defendant's Objections to Magistrate Judge's Order Denying Motions to Quash. Dkt. No. 65.

The court **AFFIRMS** Judge Duffin's order denying the defendant's motion to quash. Dkt. No. 63.

The court **OVERRRULES** the defendant's Objection to Magistrate Judge's Order. Dkt. No. 96.

The court **AFFIRMS** Judge Duffin's order denying defendant's motion for disclosure of identity of informant and related discovery. Dkt. No. 94.

Dated in Milwaukee, Wisconsin this 16th day of December, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER
Chief United States District Judge**