UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

           Plaintiff,

v.                              Case No. 18-CR-154

VAN L. MAYES,

           Defendant.

## ORDER AND RECOMMENDATION

**1. Background**

On August 13, 2016, a Milwaukee police officer shot and killed Sylville Smith. *Estate of Smith v. City of Milwaukee*, 410 F. Supp. 3d 1066, 1069-70 (E.D. Wis. 2019). Members of the community reacted violently to the incident. Over two nights citizens threw bricks and bottles at police officers and vandalized, looted, and burned businesses in the neighborhood where the shooting occurred.

According to the government, on August 15, 2016, Van L. Mayes and others sought to continue the violence and planned to attack a local police district station with firebombs. (*See generally* ECF No. 1.) In preparation, the group collected glass bottles that they filled with gasoline and fitted with wicks made from torn clothing. They also

collected rocks to throw at police officers as part of a diversionary prelude to their firebomb assault. (ECF No. 77-1 at 24, 46, 56.) However, the plan was abandoned when group leaders determined that there were too many police officers in the area. (ECF No. 77-1 at 46, 57.)

Mayes was charged by way of a criminal complaint on June 27, 2018, with attempted arson, possession of a firearm by a prohibited person, and possession of a destructive device in relation to a crime of violence. (ECF No. 1.) The grand jury on July 10, 2018, returned an indictment charging Mayes with five offenses related to an alleged conspiracy to firebomb a Milwaukee Police district station. (ECF No. 14.)

On October 8, 2019, the grand jury returned a superseding indictment alleging that Mayes conspired to firebomb a Milwaukee Police district station and residences in a Milwaukee suburb (Count One); conspired to encourage others to riot and to coordinate the making of destructive devices to firebomb the police station and residences (Count Two); possessed a destructive device during and in relation to a crime of violence (Count Three); taught others, including juveniles, how to make and use firebombs, with the intent that the firebombs would be used in civil disorder (Count Four); "conspired to intimidate, threaten, and corruptly persuade witnesses to the activities described in Counts One, Two, and Four of this Superseding Indictment by instructing witnesses to create a false and common story to be communicated to law enforcement and by threatening to expose witnesses who were cooperating with law

enforcement…" (Count Five); possessed a firearm after having been convicted of a felony (Count Six); and made a destructive device (Count Seven). (ECF No. 62.)

Before the court are two motions: Mayes's motion to dismiss the superseding indictment (ECF No. 123) and Mayes's motion for disclosure of the unindicted coconspirators (ECF No. 125).

**2. Disclosure of Unindicted Coconspirators**

Mayes asks the court to "issue an order directing the prosecution to disclose the identity of all unindicted co-conspirators." (ECF No. 125 at 2.) The government responds that this issue has already been resolved in an order addressing Mayes's motion for the disclosure of the identities of witnesses (ECF No. 94), and states that it will disclose the unindicted coconspirators along with the identities of all witnesses seven days before the final pretrial conference. (ECF No. 129.) Mayes did not reply.

For the reasons set forth in this court's prior order (ECF No. 94) and Chief Judge Pepper's order overruling Mayes's objections to that order (ECF No. 104), Mayes's motion will be denied. Notably, the grand jury has found probable cause to believe that Mayes conspired to intimidate, threaten, and corruptly persuade witnesses in this matter (ECF No. 62 at 5) and there is other evidence that Mayes and his associates attempted to influence witnesses (*see* ECF No. 94 at 8-10). With this background it is easy to conclude that immediate disclosure of the identities of the unindicted alleged coconspirators is not appropriate. Disclosure seven days before the final pretrial

conference will afford Mayes sufficient time to make use of the information in preparation for trial. (*See* ECF No. 94 at 10-12.)

3. **Motion to Dismiss**

Count Four of the superseding indictment alleges that Mayes

> taught and demonstrated to other persons, including juveniles, the use, application, and making of Molotov cocktails, which are explosive devices capable of causing injury and death, knowing and intending that such devices would be used in furtherance of a civil disorder, which in any way and degree would obstruct, delay, and adversely affect interstate commerce and the conduct and performance of any federally protected function, *to wit:* the functioning of the Milwaukee Police Department.
> In violation of Title 18, United States Code, Sections 231(a)(1) and 2.

(ECF No. 62 at 4.) Section 231(a)(1) of Title 18 of the United States Codes states:

> Whoever teaches or demonstrates to any other person the use, application, or making of any firearm or explosive or incendiary device, or technique capable of causing injury or death to persons, knowing or having reason to know or intending that the same will be unlawfully employed for use in, or in furtherance of, a civil disorder which may in any way or degree obstruct, delay, or adversely affect commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function …
>
> Shall be fined under this title or imprisoned not more than five years, or both.

"The term 'civil disorder' means any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1).

Mayes argues that 18 U.S.C. § 231(a)(1) and (2) are unconstitutional because the proscribed conduct lacks a sufficient nexus to interstate commerce, the statutes proscribe conduct protected by the First Amendment, and are unconstitutionally vague in violation of due process. He also argues that the indictment does not adequately allege a violation of 18 U.S.C. § 231(a)(2).

### 3.1. 18 U.S.C. § 231(a)(2)

Mayes argues:

> Count Four alleges that the defendant engaged in conduct which violated both subsection (1) and subsection (2) of 18 U.S.C. § 231(a). The language of the indictment itself appears only to track that set forth in subsection (1) of the statute. There are no allegations, statements, or inferences to be drawn which support the charging of the defendant under subsection (2). Subsection (2) prohibits distinctly different activities from those which are proscribed in subsection (1). Subsection (1) relates to the teaching and demonstration, whereas subsection (2) appears to prohibit the transportation and/or manufacture of certain devices. The defendant is entitled to notice of which subsection for which he faces criminal liability. Moreover, the indictment must set forth sufficient language to support the claimed violation in Title 18, U.S.C. 231(a)(2).

(ECF No. 124 at 23.)

Mayes's argument is based on a misreading of the superseding indictment. The superseding indictment does not purport to charge Mayes with violating 18 U.S.C. § 231(a)(2). Rather, he is charged with violating 18 U.S.C. § 231(a)(1) and 18 U.S.C. § 2. Similarly, Counts One, Two, Five, and Seven of the superseding indictment include alleged violations of 18 U.S.C. § 2.

Because Mayes is not charged under 18 U.S.C. § 231(a)(2), his arguments directed at that subsection will be disregarded in resolving his motion.

### 3.2. Commerce Clause

The federal government lacks a general police power. *See, e.g.*, *Taylor v. United States*, 136 S. Ct. 2074, 2082-83 (2016) (Thomas, J., dissenting). But Article I, Section 8, Clause 3 of the United States Constitution grants to Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." "The Commerce Clause enables Congress to regulate and protect the use of the channels of commerce, instrumentalities of interstate commerce, and those activities having a substantial relation to interstate commerce." *United States v. Wehrle*, 985 F.3d 549, 557 (7th Cir. 2021) (citing *United States v. Lopez*, 514 U.S. 549, 558-59 (1995)); *United States v. Khan*, 771 F.3d 367, 374 (7th Cir. 2014) (citing *United States v. Stokes*, 726 F.3d 880, 894 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 713 (2013)).

Mayes argues that § 231(a)(3) plausibly falls under only the third category of Congress's Commerce Clause power—the power to regulate those activities that have a substantial relation to interstate commerce. But, in regulating any act relating to "civil disorder which *in any way or degree* obstructs, delays, or adversely affects commerce…" (emphasis added), Mayes contends that § 231 is not limited to conduct that has a "*substantial* relation to interstate commerce."

The Hobbs Act, 18 U.S.C. § 1951(a), however, also uses the "in any way or degree" language ("Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion…shall be fined under this title or imprisoned not more than twenty years, or both."). 18 U.S.C. § 1956 (defining "financial transaction" in the money laundering statute, in part, as "a transaction which in any way or degree affects interstate or foreign commerce …."). And the Court of Appeals for the Seventh Circuit has repeatedly rejected Commerce Clause challenges to the Hobbs Act, holding that only a *de minimis* effect on commerce need be shown. *United States v. Carr*, 652 F.3d 811, 813 (7th Cir. 2011) (citing *United States v. Griffin*, 493 F.3d 856, 861 (7th Cir. 2007); *United States v. Sutton*, 337 F.3d 792, 796 (7th Cir. 2003); *United States v. Peterson*, 236 F.3d 848, 852 (7th Cir. 2001); *United States v. Watson*, 525 F.3d 583, 590 n.3 (7th Cir. 2008)); *cf. Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (noting that in administrative law "substantial evidence" means "more than a mere scintilla").

In *Carr*, the court explained why *United States v. Morrison*, 529 U.S. 598 (2000), and *United States v. Lopez*, 514 U.S. 549 (1995), did not require that the court reconsider its holding that a *de minimis* effect on interstate commerce is sufficient to invoke Congress's Commerce Clause power:

> In this case, there is no similar risk that the Hobbs Act will obliterate all limits on federal power. Although robbery itself is not necessarily economic activity, Carr's crime targeted a business engaged in interstate commerce. And unlike the statutes at issue in *Lopez* and *Morrison*, the

>
> Hobbs Act contains a jurisdictional element which requires the government to prove the interstate nexus. [*Peterson*, 236 F.3d at 852] ("[The Hobbs Act] does not federalize all robberies because all robberies per se affect interstate commerce; rather, it applies only to robberies with the proven effect."). An act of violence against even one business, like the convenience store in this case, could conceivably deter economic activity and thus harm national commerce. The economic harm would not necessarily depend upon the amount of money with which any particular defendant absconds. If retail stores, in the aggregate, have a substantial effect on commerce (which they undoubtedly do, *see* [*Sutton*, 337 F.3d at 796 n.2]), then the federal government has a legitimate interest in preventing any crime like the one in this case.

*Carr*, 652 F.3d at 813-14.

In the interest of safeguarding interstate commerce, Congress was permitted to regulate conduct that may "obstruct, delay, or adversely affect" such commerce. It is easy to recognize how "civil disorder" may plausibly have more than a *de minimis* effect on interstate commerce, and thus, in the interest of safeguarding interstate commerce, Congress was permitted to proscribe the teaching of how to make a firearm, explosive, or incendiary device when that person knows or intends the device to be used in a "civil disorder" that may interfere with interstate commerce. The explicit jurisdictional element in § 231(a)(1) distinguishes the statute from those at issue in *United States v. Lopez*, 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000). Consequently, the enactment of 18 U.S.C. § 231(a)(1) did not exceed Congress's power under the Commerce Clause, and dismissal on that basis is not warranted.

### 3.3. First Amendment

Mayes argues that § 231(a)(1) violates the First Amendment because it is an overbroad regulation of protected expression and was "enacted for the express legislative purpose of suppressing the content of messages favoring civil rights advocacy." (ECF No. 124 at 12.)

"It is well established that in the area of freedom of expression an overbroad regulation may be subject to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable." *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 129 (1992). "Only a statute that is substantially overbroad may be invalidated on its face." *Houston v. Hill*, 482 U.S. 451, 458 (1987). It is not enough that it may be possible to conceive of some circumstance where the law could be applied in an impermissible fashion. *Id*. Thus, the court's first task is to determine whether the statute "reaches a substantial amount of constitutionally protected conduct." *Id.* (quoting *Hoffman Estates* v. *The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982)).

Section 231(a)(1) regulates expressive conduct—the teaching or demonstration "to any other person the use, application, or making of any firearm or explosive or incendiary device, or technique capable of causing injury or death to persons …." 18 U.S.C. § 231(a)(1). This represents a content-based restriction. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) ("Government regulation of speech is content based if a law

applies to particular speech because of the topic discussed or the idea or message expressed.") As a content-based regulation of speech, § 231(a)(1) is "presumptively unconstitutional and may be justified only if the government proves that [it is] narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163 (2015); *see also United States v. Stevens*, 559 U.S. 460, 468 (2010).

However, the statute proscribes such conduct only in narrow circumstances—when the person knows or has reason to know or intends "that the same will be unlawfully employed for use in, or in furtherance of, a civil disorder which may in any way or degree obstruct, delay, or adversely affect commerce or the movement of any article or commodity in commerce …." This element significantly narrows the breadth of the statute such that it proscribes only activity that is outside the scope of First Amendment's protections. *See Nat'l Mobilization Comm. to End War in Viet Nam v. Foran*, 411 F.2d 934, 937 (7th Cir. 1969) ("The requirement of intent of course 'narrows the scope of the enactment by exempting innocent or inadvertent conduct from its proscription.' … In sum, we cannot say that the attack on Section 231(a)(1) involves a substantial constitutional question.") (quoting *Landry v. Daley*, 280 F. Supp. 938, 939 (N.D. Ill. 1968) (three-judge district court)); *see also United States v. Featherston*, 461 F.2d 1119, 1122-23 (5th Cir. 1972) (rejecting First Amendment challenge to 18 U.S.C. § 231(a)(1)); *cf. United States v. Coronado*, 461 F. Supp. 2d 1209, 1213 (S.D. Cal. 2006) (discussing 18 U.S.C. § 842(p)(2) and noting, "The statute does not seek to censor the

mere teaching or demonstration of a destructive device. It is only when the teaching or demonstration of a destructive device is coupled with specific intent to commit a federal crime of violence that an individual runs afoul of the statute.").

Mayes's argument that persons could be prosecuted under this statute for engaging in protected expression is without merit. Notably, he does not identify any example of how this might occur. The *mens rea* element ensures that the statute proscribes only "speech integral to criminal conduct." *See Stevens*, 559 U.S. at 468 (citing *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949)). Accordingly, the First Amendment does not require dismissal of Count Four.

### 3.4. Due Process

Mayes also argues that § 231(a)(1) is unconstitutionally vague and violates due process. (ECF No. 124 at 17-22.) The government responds that Mayes lacks standing to bring this argument. (ECF No. 131 at 19.)

As a general rule, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010) (quoting *Hoffman Estates*, 455 U.S. at 495 (1982)). Thus, the government argues, "Mayes must demonstrate § 231(a)(1) is vague as applied to him before he can raise a facial vagueness challenge on behalf of others. Where, as here, the defendant's conduct is 'clearly proscribed,' there is

'no reason to evaluate the merits of his vagueness claim.'" (ECF No. 131 at 19 (quoting *United States v. Bonin*, 932 F.3d 523, 537 (7th Cir. 2019).)

Mayes failed to address this argument in reply (ECF No. 134) and therefore has conceded and forfeited the argument. *See In re LaMont*, 740 F.3d 397, 410 (7th Cir. 2014) (citing *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)). Because Mayes lacks standing to make a vagueness challenge, there is no basis to recommend dismissal of Count Four.

### 3.5. Other Counts

Mayes argues:

> Count One and Count Two have many of the same deficiencies of 18 U.S.C. § 231(a)(1) and (2), as have been examined in the instant memorandum. The statutes under which the defendant is charged in Counts One and Two suffer the same commerce clause deficiencies as set forth in the instant memorandum. The defendant herein adopts those arguments and challenges the indictment's failure to establish appropriate nexus between the prohibited acts and interstate commerce.

(ECF No. 124 at 22-23.)

This represents the entirety of Mayes's argument on this point and, as such, it is woefully undeveloped. Moreover, Mayes's arguments regarding 18 U.S.C. § 231(a)(1) would not readily apply to the charges alleged in Counts One and Two, which allege violations of 18 U.S.C. § 844(i) and 18 U.S.C. § 2101(a)(2) and (3), respectively. Those statutes contain different jurisdictional elements. But in any event, aside from being

undeveloped, because the court finds no basis for dismissal of Count Four, the court finds no merit in any argument regarding Counts One and Two.

**IT IS THEREFORE ORDERED** that Mayes's motion for the immediate disclosure of unindicted coconspirators (ECF No. 125) is **denied**. The government shall disclose unindicted coconspirators no later than one week before the final pretrial conference.

**IT IS FURTHER RECOMMENDED** that Mayes's motion to dismiss the indictment (ECF No. 123) be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(2), whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation or prior to the Final Pretrial Conference, whichever is earlier. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 13th day of August, 2021.

*William E. Duffin*
WILLIAM E. DUFFIN
U.S. Magistrate Judge