UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

Case No. 18-cr-154-pp

v.

VAN L. MAYES,

Defendant.

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 136), DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT (DKT. NO. 123) AND REQUIRING PARTIES TO FILE STATUS REPORT**

The defendant filed a motion to dismiss the indictment, arguing that 18 U.S.C.§§231(a)(1) and (2) exceed Congress's Commerce Clause authority, operate as a content-based restriction on expression and violate his Due Process rights. Dkt. No. 124. Following briefing, Magistrate Judge William E. Duffin recommended that this court deny the motion to dismiss. Dkt. No. 135. On October 4, 2021, the defendant filed objections to the recommendation. Dkt. No. 143. The government responded on October 18, 2021. Dkt. No. 146. The court will adopt the recommendation and deny the motion to dismiss the indictment.

I.      **Standard of Review**

Federal Rule of Criminal Procedure 59(b) governs a district court's referral of motions to dismiss to magistrate judges. Parties have fourteen days to file "specific objections" to a magistrate judge's report and recommendation

1

to a motion to dismiss. Fed. R. Crim. P. 59(b)(2). When reviewing a magistrate judge's recommendation, the district judge must review *de novo* the portions of the magistrate judge's recommendations to which a party timely objects. 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). The court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1).

## II. Background

### A. Factual Background

The grand jury returned a superseding indictment on October 8, 2019, charging the defendant with seven counts relating to events that occurred in Milwaukee between August 13 and 15, 2016. Dkt. No. 62. Count One charged the defendant with conspiring with others to maliciously damage the Milwaukee Police Department and residences in West Allis by means of fire and use of a destructive device under 18 U.S.C. §§844(m) and 2. Id. at 1. Count Two charged him with using a cellphone to encourage others to riot and to coordinate the making of destructive devices to firebomb the above locations under 18 U.S.C. §§2101(a)(2) and (3) and 2. Id. at 2. Count Three charged him with knowingly possessing a destructive device in relationship to a crime of violence under 18 U.S.C. §924(c)(1)(B)(ii). Id. at 3. Count Four charged the defendant with teaching and demonstrating to others, including juveniles, the use, application and making of Molotov cocktails, knowing that the devices would be used in furtherance of civil disorder, "which in any way and degree would obstruct, delay, and adversely affect interstate commerce and the

conduct and performance of any federally protected function, *to wit*: the functioning of the Milwaukee Police Department" under 18 U.S.C. §§231(a)(1) and 2. Id. at 4. Count Five charged the defendant with knowingly and intentionally conspiring to intimidate, threaten and corruptly persuade witnesses to engage in the described acts by creating a false and common story to be communicated to law enforcement and threatening to expose witnesses with the intent to hinder the ATF under 18 U.S.C. §§1512(b)(3) and (k) and 2. Id. at 5. Count Six charged him with knowingly possessing a firearm after having previously been convicted of a crime punishable by a term exceeding one year under 18 U.S.C. §§921(a)(3) and (4). Id. at 6. Finally, Count Seven charged the defendant with knowingly making a National Firearms Act firearm, a "Molotov cocktail," under 26 U.S.C. §§5822 and 5861(f) and 18 U.S.C. §2. Id. at 7.

These charges arose from incidents that occurred after a young Black man was shot by police in a neighborhood near Sherman Park in Milwaukee on August 13, 2016. Dkt. No. 124 at 4. According to the defendant, the crowd that gathered after the shooting "became more agitated, louder and aggressive," culminating in incidents of arson, destruction of property and assault. Id. At some point, a BP station was completely destroyed by fire. Id. "Over two nights, citizens threw bricks and bottles at police officers and vandalized, looted, and burned businesses in the neighborhood where the shooting occurred." Dkt. No. 135 at 1 (citing generally dkt. no. 1).

3

The government says the evidence shows that the defendant demonstrated—in front of children and adults—how to make Molotov cocktails as part of a plan to throw them at the police station and homes. Dkt. No. 131 at 3. The defendant allegedly attempted to intimidate and interfere with witnesses and with the investigation by lying, compiling a list of those who received subpoenas with the intent of exposing those witnesses, saying he wanted something done about a witness, creating a story to protect the witnesses from prosecution, and posting intimidating video messages referring to citizen witnesses as "snitches" and threating to find out who made statements. Id. at 3. The government indicates that one witness was assaulted by an unknown assailant because of his/her cooperation. Id.

    B.    <u>Motion to Dismiss</u>

        1.    *Defendant's Motion* (Dkt. No. 124)

The defendant argued that in Count Four, the government had charged a violation of a statute (18 U.S.C. §§231(a)(1) and (2)) that violates the Constitution in three ways: (1) it does not require a substantial nexus to interstate commerce as mandated by the Commerce Clause; (2) it burdens expressive conduct under the First Amendment; and (3) it is unconstitutionally vague because it chills protected speech, provides inadequate notice of criminal conduct and allows for discriminatory enforcement and prosecution. Dkt. No. 124 at 5-24.

As to the first argument, the defendant argued that the Commerce Clause prohibits the criminalization of noneconomic intrastate activity unless

4

the activity "substantially affects interstate commerce." Id. at 5 (citing United States v. Lopez, 514 U.S. 549 (1995)). He cited the four-factor test articulated by the Supreme Court for determining whether the regulated activity "substantially affects" interstate commerce:

> (1) whether the regulated activity is commercial/economic in nature; (2) whether an express jurisdictional element is provided in the statute to limit its reach; (3) whether Congress made express findings about the effects of the proscribed activity on interstate commerce; and (4) whether the link between the prohibited activity and the effect on interstate commerce is attenuated.

Dkt. No. 124 at 6 (citing United States v. Morrison, 529 U.S. 598, 610-12 (2000)). Applying those factors, the defendant first argued that the activity regulated by §§231(a)(1) and (2) is noneconomic. Id. at 8. Second, the defendant asserted that the facial commercial nexus contained in the statute is not connected to the prohibited acts because it uses permissive language ("may") and requires a civil disorder that affects commerce "in any way or degree." Id. at 10. Third, the defendant asserted that Congress has made no findings to establish that the activity regulated by §§231(a)(1) and (2) "substantially affect[s] interstate commerce beyond any impact 'visible to the naked eye.'" Id. at 10-11 (quoting Lopez, 541 U.S. at 563). Fourth, the defendant claimed that the relationship between the activity regulated under §§231(a)(1) and (2) and interstate commerce is too attenuated to survive a constitutional challenge. Id. at 11.

Next, the defendant argued that the statute violates the First Amendment in two ways: (1) §§231(a)(1) and (2) are substantially overbroad regulations of protected expression because they impose steep criminal penalties on an

5

expansive range of speech and expressive conduct; and (2) §§231(a)(1) and (2) were enacted for the express legislative purpose of suppressing the content of messages that favor civil rights advocacy. Id. at 12. According to the defendant, §§231(a)(1) and (2) draw no distinction between acts that would violate the statute and acts that are undertaken "merely to convey a message or symbolic conduct." Id. at 13. He argued that the failure to provide proper notice and the over-inclusiveness of the statute create a substantial risk of arbitrary or discriminatory enforcement and places a significant burden on expression. Id. at 14. With respect to the content-based restriction argument, the defendant insisted that the statute cannot survive the strict scrutiny analysis because it regulates protected expression, the legislative history reveals an intent to suppress the messages supporting the civil rights and racial justice for Black Americans, and the burdens imposed are only remotely connected to any potential federal interest. Id. at 16.

Finally, the defendant argued that the §§231(a)(1) and (2) are unconstitutionally vague in violation of the Due Process Clause because they chill protected speech, provide inadequate notice of criminal conduct and invite arbitrary and discriminatory enforcement and prosecution. Id. at 17. The defendant cited allegedly vague terms such as "to obstruct, delay or adversely affect," "use in or in furtherance of a civil disorder," "knowing or having reason to know or intended that the same will be unlawfully employed," "unlawfully employed," "technique," "teaches or demonstrates," "in any way," "impact on commerce or impact on the conduct or performance of any federally protected

6

function," "civil disorder," and "may." <u>Id.</u> at 18, 19. The defendant asserted that the alleged vagueness cannot be remedied by construction without violation the Constitutional separation of powers. <u>Id.</u> at 21-22.

Although the motion to dismiss addressed only Count Four, the defendant argued that the court must dismiss the remaining counts of the superseding indictment, as well, because Counts One and Two "suffer from the same Commerce Clause deficiencies." <u>Id.</u> at 22. He threw in one final argument—that the government failed to identify which subsection of §231(a) he violated by charging a violation of both (1) and (2). <u>Id.</u> at 23. According to the defendant, charging both subsections violated Fed. R. Crim. P. 7(c)(1). <u>Id.</u>

2.    *Government's Response* (Dkt. No. 131)

Before turning to the substance of the defendant's arguments, the government pointed out—in a footnote—that this court and others have rejected nearly identical constitutional arguments to the one the defendant made in this case, dkt. no. 131 at 1, n.1 (citing, *e.g.*, <u>United States v. Howard</u>, Case No. 21-cr-28, Dkt. No. 55 (E.D. Wis. Aug. 30, 2021)), *and* that, contrary to the defendant's assertions, the United States did not charge him with violating §231(a)(2),[1] dkt. no. 131 at 1, n.2.

---

[1] Section 231(a)(2) states, "Whoever transports or manufactures for transportation in commerce any firearm, or explosive or incendiary device, knowing or having reason to know or intending that the same will be used unlawfully in furtherance of a civil disorder" shall be fined or imprisoned or both.

7

Beginning with the Commerce Clause argument, the government argued that the defendant's analysis was flawed because the Commerce Clause extends to activities that, "while wholly local in nature, nevertheless substantially affect interstate commerce." Id. at 5 (quoting McClain v. Real Estate Bd. of New Orleans, Inc., 444 U.S. 232, 241 (1980)). The government distinguished this case from Lopez and Morrison, asserting that §231(a)(1) applies only to "the subset of civil disorders that have at least a de minimis effect on interstate commerce (or the performance of a protected federal function), such as those that cut off access to thoroughfares, prevent use of significant commercial or government buildings, or prevent the movement of goods and articles in commerce." Id. at 9. The government characterized this as a "jurisdictional element" or "jurisdictional hook." Id. at 7-9. The government argued that a person may be charged under §231(a)(1) only if he or she teaches or demonstrates

> to any other person the use, application, or making of any . . . explosive or incendiary device, or technique capable of causing injury or death to persons, knowing or having reason to know or intending that the same will be unlawfully employed for use in, or in furtherance of, a civil disorder which may in any way or degree obstruct, delay, or adversely affect commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function; . . .

Id. (quoting §231(a)(1)).

The government rejected the defendant's argument that the jurisdictional hook must have a substantial effect on commerce. Id. at 10. According to the government, Congress may regulate "violent conduct interfering with interstate commerce even when the conduct itself has a 'minimal' effect on such

8

commerce." Id. (quoting United States v. Hill, 927 F.3d 188, 199 (4th Cir. 2019), which quoted Taylor v. United States, 136 S. Ct. 2074, 2079 (2016)). The government further asserted that the "substantially affects" test "applies where Congress seeks to regulate an entire class of activities based on the aggregate effect of that class rather than the specific effect of the activity of a particular defendant." Id. at 11.

Turning to the First Amendment argument, the government focused entirely on the charged conduct—"teaching or demonstrating the use, application or making" of the Molotov cocktail with plans to firebomb an occupied police station and residences. Id. at 12. The government asserted that to the extent that the statute reached speech, "it does so only with respect to the type of illegal communications, attempting to accomplish a prohibited crime, that have long been recognized as unprotected." Id. at 13. The government also refuted the defendant's assertion that the legislative history revealed that the statute targeted messages supporting the civil rights movement, asserting that it focused on violence and not speech. Id. at 15-16.

The government highlighted the *mens rea* requirement in §231(a)(1), asserting that it was fatal to the defendant's arguments because it required that the defendant acted while "knowing, or having reason to know or intending." Id. at 16. The government argued that the *mens rea* requirement exempted innocent or inadvertent conduct. Id.

The government speculated that the defendant had brought a facial challenge because his conduct clearly falls within the statute, and an as-

9

applied challenge would fail. Id. at 17-18. It argued that for a facial challenge to succeed, there must be some realistic danger of chilling speech of third parties, and asserted that the defendant had provided no proof of such a danger. Id. at 18 (citing Members of the City Council v. Taxpayers for Vincent, 466 U.S. 789, 801 (1984)). The government also argued that intermediate scrutiny—not strict scrutiny—should apply because the statute criminalizes conduct and speech that is integral to criminal conduct. Id. at 18.

As to the Due Process challenge, the government maintained that the defendant lacked standing because he had not argued that the statute was vague as applied to the facts of this case. Id. at 19. The government pointed out that the Seventh Circuit has held that a defendant "who engages in some conduct that is clearly proscribed," "cannot complain of the vagueness of the law as applied to the conduct of others." Id. (quoting United States v. Bonin, 932 F.3d 523, 537 (7th Cir. 2019)).

Finally, the government argued that there was no basis to dismiss Counts One and Two because both statutes have an interstate jurisdictional element and multiple courts have found that the constitutional defects are cured by the addition of a jurisdictional element. Id. at 21. The government argued that the defendant was wrong in challenging the superseding indictment for failure to provide notice because he was charged with violations of 18 U.S.C. §231(a)(1) (civil disorder) and *18 U.S.C. §2* (aiding and abetting)— not §231(a)(1) and *§231(a)(2)* (transporting or manufacturing firearms or

explosives knowing that they will be unlawfully used in furtherance of a civil disorder). Id. at 22.

>    3.    *Defendant's Reply* (Dkt. No. 134)

The defendant replied that the government failed to show "how the statute only relates to civil disorders that may adversely affect interstate commerce, and only with regard to a specific class of criminal activities, that will tend to exacerbate or prolong the obstruction of interstate commerce." Dkt. No. 134 at 1. He argued that it was not "evident" haw the conduct he was alleged to have engaged in impacted interstate commerce, even minimally. Id.

> C.    Recommendation (Dkt. No. 135)

Judge Duffin first noted that the defendant's arguments are based, in part, on a misreading of the superseding indictment. Dkt. No. 135 at 5. He recounted that the government had charged the defendant with a violation of 18 U.S.C. §231(a)(1) and a violation of 18 U.S.C. §2—not a violation of §231(a)(1) and a violation of §231(a)(2). Id. Judge Duffin pointed out that Counts One, Two, Five and Seven also each charged the defendant with aiding and abetting in violation of 18 U.S.C. §2. Id. Because the defendant had not been charged with violating 18 U.S.C. §231(a)(2), Judge Duffin disregarded the defendant's arguments relating to that statute. Id. at 6.

Addressing the Commerce Clause argument, Judge Duffin started with the defendant's assertion that §231(a)(1)'s regulation of "any act relating to 'civil disorder which *in any way or degree* obstructs, delays, or adversely affects commerce" was not limited to conduct that had a substantial impact on

11

interstate commerce. Id. at 6 (emphasis added). Judge Duffin compared the language of §231(a)(1) to the Hobbs Act, 18 U.S.C. §1951(a), which uses identical language ("in any way or degree"), and noted that the Seventh Circuit repeatedly has rejected Commerce Clause challenges to the Hobbs Act. Id. at 7. He discussed the fact that in United States v. Carr, the Seventh Circuit explained that neither Lopez nor Morrison required it to reconsider its holding that a de minimis effect on interstate commerce is sufficient to invoke the Commerce Clause power. Id. (citing United States v. Carr, 652 F.3d 811, 813-14 (7th Cir. 2011)). Judge Duffin reasoned that it

> is easy to recognize how "civil disorder" may plausibly have more than a de minimis effect on interstate commerce, and thus, in the interest of safeguarding interstate commerce, Congress was permitted to proscribe the teaching of how to make a firearm, explosive or incendiary device when that person knows or intends the device to be used in a "civil disorder" that may interfere with interstate commerce.

Id. at 8.

Judge Duffin acknowledged that §231(a)(1) regulates expressive conduct, and thus "represents a content-based restriction" of speech. Id. at 9 (citing Reed v. Town of Gilbert, 576 U.S. 155, 163 (2015)). He concluded, however, that the statute proscribes conduct only in narrow circumstances—

> when the person knows or has reason to know or intends "that the same will be unlawfully employed for use in, or in furtherance of, a civil disorder which may in any way or degree obstruct, delay or adversely affect commerce of the movement of any article of commodity in commerce."

Id. at 10. Judge Duffin found the defendant's argument that the statute allows for the prosecution of protected expression failed because the defendant did not

cite a single example of how that would occur and because the statute contains a *mens rea* requirement that proscribes only that speech that is "integral to criminal conduct." Id. at 11 (citing United States v. Stevens, 559 U.S. 460, 468 (2010)).

Finally, Judge Duffin found that the defendant had failed to address the government's argument that he had no standing to raise a Due Process challenge and therefore had forfeited and conceded the argument. Id. at 12. He concluded that because the defendant lacked standing to make a vagueness challenge, he had no reason to recommend dismissal of Count Four. Id.

To the extent the defendant asked the court to recommend dismissal of Counts One and Two, Judge Duffin found the defendant's argument to be "woefully underdeveloped." Id. He noted that the statutes alleged to have been violated in those counts contained jurisdictional elements. Id. Finally, because Judge Duffin had no basis for dismissing Count Four, he concluded that he also had no basis for dismissing Counts One and Two. Id. at 13.

D.    Objection (Dkt. No. 143)

For his objections to Judge Duffin's recommendation, the defendant resubmitted his brief in support of his motion to dismiss, minus the final two arguments that other counts should be dismissed and that the superseding indictment charged violations under 18 U.S.C. §§231(a)(1) and (2). Dkt. No. 143. The objection does not identify any alleged errors made by Judge Duffin or identify specific objections. On the first page of the objection, the defendant states that he objects to Judge Duffin's finding and requests a *de novo* review.

13

Id. at 1. On the last page, he states that "[f]or the forgoing reasons, the decision of the Magistrate Judge should be reversed the indictment should be dismissed, and the statute declared unconstitutional." Id. at 23.

E. Government's Response to the Defendant's Objections
(Dkt. No. 146)

Noting that the defendant made the same arguments in the objection as he did in his motion, the government's brief reiterates much of its brief in opposition to the defendant's motion to dismiss. Dkt. No. 146.

## III. Analysis

Once the government had clarified that it had not charged the defendant with violating §231(a)(2), the defendant's objections focus entirely on the constitutionality of §231(a)(1). That statute provides:

> (a)(1) Whoever teaches or demonstrates to any other person the use, application, or making of any firearm or explosive or incendiary device, or technique capable of causing injury or death to persons, knowing or having reason to know or intending that the same will be unlawfully employed for use in, or in furtherance of, a civil disorder which may in any way or degree obstruct, delay, or adversely affect commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function;
>
> * * * *
>
> Shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. §231(a)(1).

The statutory language is not ambiguous. It prohibits:

- teaching or demonstrating how to make a "firearm or explosive or incendiary device, or technique capable of causing injury or death"
- knowing or having reason to know (or intending)

14

- that the device will be unlawfully used in or in furtherance of
- a civil disorder order which may in any way or degree obstruct, delay, or adversely affect commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.

The statute defines "firearm," "explosive or incendiary device," "civil disorder," and "federally protected function." 18 U.S.C. §232(1)-(5). An "explosive or incendiary device" includes the Molotov cocktail because it covers

> (C) any incendiary bomb or grenade, fire bomb, or similar device, including any device which (i) consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting alone.

18 U.S.C. §232(5).

It also covers the type of civil disorder that occurred in the aftermath of the Sherman Park shooting, because it defines a civil disorder as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. §232(1). The statute further defines "commerce" as "commerce (A) between any State or the District of Columbia and any place outside thereof; (B) between points within any State or the District of Columbia, but through any place outside thereof; or (C) wholly within the District of Columbia." 18 U.S.C. §232(2). Finally, "federally protected function" "means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by any officer or employee thereof; and such term shall

specifically include, but not be limited to, the collection and distribution of the United States mails." 18 U.S.C. §232(3).

As the Supreme Court stated in 2020,

[t]his Court has explained many times over many years that, when the meaning of the statute's terms is plain, our job is at an end. The people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration. See, *e.g.*, *Carcieri v. Salazar*, 555 U.S. 379, 387 . . . (2009); *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 . . . (1992); *Rubin v. United States*, 449 U.S. 424, 430 . . . (1980).

<u>Bostock v. Clayton Cty., Ga.</u>, ___ U.S. ___, 140 S. Ct. 1731, 1749 (2020).

Section 231(a)(1) clearly punishes individuals—regardless of their viewpoints—who teach or demonstrate how to make a firearm, explosive or incendiary device knowing that the device will be used in a civil disorder that either obstructs, delays or adversely affects commerce or the conduct or performance of a federally protected function. It punishes such individuals regardless of their viewpoints. Because the language of the statute is unambiguous, there is no reason for the court to turn to the legislative history, even if that history might reveal that some proponents of the legislation might have been motivated by racial or social animus or may have wished to suppress protected speech.[2]

---

[2] The court also notes, as it did in <u>United States v. Howard</u>, Case No. 21-cr-28, Dkt. No. 50 (E.D. Wis. Aug. 30, 2021), that at least two other district courts have rejected the legislative history argument the defendant makes here. <u>See</u> <u>United States v. Pugh</u>, Case No. 20-CR-73, Dkt. No. 95 (S.D. Ala. May 13, 2021); <u>United States v. Wood</u>, No. 20-56 MN, 2021 WL 3048448, *4 (D. Del. July 20, 2021).

Case 2:18-cr-00154-PP   Filed 01/24/22   Page 16 of 24   Document 149

A.    Commerce Clause

Congress lacks a general police power, but Article I, Section 8, Clause 3 of the Constitution provides a broad power to regulate commerce between the states. See, e.g., Taylor v. United States, 136 S. Ct. 2074 (2016); Gibbons v. Ogden, 22 U.S. 1 (1824); U.S. CONST. art. 1, §8, cl. 3. The United States has identified three categories of activity that Congress may regulate under its commerce power: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "those activities having a substantial relation to interstate commerce, . . . i.e., those activities that substantially affect interstate commerce." United States v. Lopez, 514 U.S. 549, 558–59 (1995). The defendant focuses on the third category, arguing that Congress's power is limited to regulating those activities that substantially affect interstate commerce. He cites to Lopez, 514 U.S. 549, and Morrison, 529 U.S. at 598, in support of his argument that §231(a)(1) exceeds Congress's authority under the Commerce Clause because it targets conduct used in a civil disorder which may "in any way or degree" affect commerce or a federally protected function. Dkt. No. 124 at 7.

The defendant's reliance on Lopez or Morrison is misplaced for a couple of reasons. First, unlike the statutes in those cases, §231(a)(1) has a jurisdictional hook. Congress proscribed teaching or demonstrating how to make an incendiary device when the charged individual knows that the device will be used in a civil disorder *that may interfere with interstate commerce or a*

17

*federally protected function*. The defendant's argument that the statute "fails to articulate how the prohibited explosives/firearms could *in any way, or degree* obstruct commerce" misses the mark. Dkt. No. 124 at 9. The law does not require that the Molotov cocktail obstruct commerce. It requires that the person teaching or demonstrating to others how to make the Molotov cocktail know that the Molotov cocktail will be used in a *civil disorder* that may interfere with interstate commerce or a federally protected function. The *civil disorder* is what provides the interstate commerce nexus, not the particular device.

The question for the purpose of the Commerce Clause analysis is whether the civil disorder—in this case, the unrest in the Sherman Park neighborhood that followed the shooting of Sylville Smith—would "obstruct, delay, or adversely affect commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function." As Judge Duffin indicated, it is easy to see how that civil disorder could obstruct or delay commerce. The unrest that occurred between August 13 and 15, 2016 involved arsons of retail businesses, obstruction of roads and other types of commercial obstruction. Dkt. No. 131 at 3.

The defendant's reliance on <u>Lopez</u> and <u>Morrison's</u> emphasis on "substantial" impacts on interstate commerce is also misplaced. The United States Supreme Court has explained that activities "substantially affecting" interstate commerce—"may be regulated so long as they substantially affect interstate commerce in the aggregate, even if their individual impact on interstate commerce is minimal." <u>Taylor</u>, 136 S. Ct. at 2079. The fact that the

18

individual violation—or, in this case, the individual civil disorder—may have only a minimal impact on interstate commerce is irrelevant if the aggregate impact of such disorders overall is substantial. The aggregate impact of such civil disorders on interstate commerce is substantial, particularly when the unrest spreads from one geographic location to the broader regional or national community.

The defendant has failed to demonstrate that §231(a)(1) violates the Commerce Clause.

B.     First Amendment

The defendant argues that §231(a)(1) violates the First Amendment in two ways. First, he argues that the statute burdens a substantial amount of constitutionally protected speech. Dkt. No. 143 at 12. Second, he argues that the statute operates as a content-based restriction that fails the strict scrutiny test. Id. at 13.

The court begins by considering whether the statute reaches a "substantial amount of constitutionally protected conduct." City of Houston v. Hill, 482 U.S. 451, 458 (1987). The Supreme Court has stated that a statute may be invalidated as overly broad under the First Amendment if "a substantial number of its applications are unconstitutional, [when] judged in relation to the statute's plainly legitimate sweep." Americans for Prosperity Found. v. Bonta, 141 S. Ct. 2373, 2387 (2021) (quoting United States v. Stevens, 559 U.S. 460, 473 (2010)). "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed

19

to speech or to conduct necessarily associated with speech." <u>Virginia v. Hicks</u>, 539 U.S. 113, 124 (2003).

The defendant argues that a citizen will not be able to distinguish true criminal conduct from First Amendment expression. Dkt. No. 143 at 13. Rather than identifying any true First Amendment expression that would be captured by the statute, the defendant focuses on individual words in the statute such as "civil disorder," "may" and "in any way." <u>Id.</u> He states that the "sweeping language; the over-inclusiveness; and the multiple ambiguities of §231(a)(1) has a chilling effect upon the exercise of free speech." <u>Id.</u>

Section 231(a)(1) is not overbroad. It targets specific speech and conduct—teaching or demonstrating how to use, apply or make a firearm, explosive or incendiary device capable of causing death. The regulation of that conduct is narrowly tailored to those individuals who are engaging in such conduct knowing (or having reason to know) that the firearm, explosive or incendiary device will be used in a civil disorder (a term defined by the statute) "which may in any way or degree obstruct, delay, or adversely affect commerce or the movement of any article of commodity in commerce." 18 U.S.C. §231(a)(1). The Supreme Court has rejected the view that "conduct can be labeled 'speech' whenever the person engaging in the conduct intends to express an idea." <u>See</u> <u>Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.</u>, 547 U.S. 47, 65–66, (2006).

In <u>National Mobilization Committee to End War in Viet Nam v. Foram</u>, the Seventh Circuit rejected an argument that portions of §231(a)(1) were overly

broad and vague. 411 F.2d 934, 937 (7th Cir. 1969). The court focused on the "knowing or having reason to know or intending" requirement. Id. It reasoned that the "requirement of intent of course narrows the scope of the enactment by exempting innocent or inadvertent conduct from its proscriptions." Id. Accordingly, the Seventh Circuit could not "say that the attack on Section 231(a)(1) involves a substantial constitutional question." Id.

The Fifth Circuit built on that analysis in United States v. Featherston, where it rejected a challenge to §231(a)(1) on the theory that it captured conduct that had not come to pass. 461 F.2d 1119, 1122 (5th Cir. 1972). The Fifth Circuit reasoned that the government need not wait until the plans have been executed to intervene and charge a violation under §231(a)(1). The court rejected the argument that the statute was unconstitutional on its face or that it covered mere inadvertent conduct. Id.  The court found that by requiring intent or knowledge that the information—taught or demonstrated—would be used in furtherance of the civil disorder, the statute withstood the overbreadth challenge. Id.

The parties dispute whether the court should apply intermediate or strict scrutiny. If a statute applies "based on the message a speaker conveys," it is subject to "strict scrutiny." Reed, 576 U.S. at 163-64. Strict scrutiny "requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." Id. (quoting Arizona Free Enterprise Club's Freedom Club PAC v. Bennett, 131 S. Ct. 2806, 2817 (2011). The court need not decide whether §231(a)(1) applies based on the message

that the speaker conveys and thus whether it must be subject to strict scrutiny, because even under that stringent standard of review, the government has a compelling state interest in regulating the conduct of teaching or demonstrating how to make or use a destructive device in civil disorder that will "obstruct, delay or adversely affect commerce," and the statute is narrowly tailored to achieve that interest.

The court will adopt Judge Duffin's recommendation to deny the motion to dismiss on First Amendment grounds.

C.     Due Process

The defendant has not objected to the portion of Judge Duffin's recommendation in which Judge Duffin concluded that the defendant had conceded that he lacked standing to raise his Due Process argument. The defendant's objection makes no mention of standing. He simply makes the same arguments he made in his initial motion about the statute being unconstitutionally vague. Dkt. No. 143 at 16-22. Without standing, the defendant cannot bring those arguments. And without a specific objection to that portion of Judge Duffin's recommendation, the court need not conduct a *de novo* review. Fed. R. Crim. P. 59(b) (the court conducts a *de novo* review of any part of a magistrate judge's report and recommendation to which a specific objection has been made); see also 28 U.S.C. 636(b)(1). Courts have found that general statements that a party objects or simply incorporates the arguments previously made to the magistrate judge do not suffice. United States v. Hogan, No. 11-CR-130, 2013 WL 265230, *1 (E.D. Wis. Jan. 18, 2013) ("Without

22

specific reference to portions of the Magistrate's decision and legal discussion on the objected portion, the district court's duty to make a de novo determination does not arise") (quoting <u>United States v. Molinaro</u>, 683 F. Supp. 205, 211 (E.D. Wis. 1988); <u>see also</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 149 (1985) (holding that "[s]ection 636(b)(1)(C) . . . does not on its face require any review at all . . . of any issue that is not the subject of an objection").

Whether he has forfeited or conceded his right to assert that he has standing, the defendant lacks standing to bring the Due Process challenge. He identifies ten words or phrases from the statute that he believes are vague, but never argues that they are vague as applied to the facts of his case. This court is confined to considering whether the statute is vague as applied to the facts of this case, because a party who "engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" <u>Holder v. Humanitarian L. Project</u>, 561 U.S. 1, 18-19 (2010) (quoting <u>Hoffman Estates v. Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489, 495 (1982)); <u>see also United States v. Cook</u>, 970 F.3d 866, 877 (7th Cir. 2020) (referring to general rule that a defendant whose conduct is clearly prohibited by a statute cannot be the one to make a facial vagueness challenge). The defendant cannot bring a facial challenge for vagueness—the government has accused him of teaching or demonstrating to other persons (including juveniles) how to make a Molotov cocktail knowing and intending that such devices would be used in furtherance of a civil disorder which in some way or degree would obstruct, delay and adversely affect interstate

23

commerce and the conduct or performance of any federally protected function. Dkt. No. 62 at 4. He is alleged to have engaged in conduct clearly proscribed by the statute, so he has no standing to argue that the statute might be vague as to others accused of different acts.

The court will adopt Judge Duffin's recommendation and deny the motion to dismiss on Due Process grounds.

## IV. Conclusion

The court **ADOPTS** the recommendation of the magistrate judge to deny the defendant's motion to dismiss the indictment. Dkt. No. 136.

The court **OVERRULES** the defendant's objections. Dkt. No. 143.

The court **DENIES** the defendant's motion to dismiss the superseding indictment. Dkt. No. 123.

The court **ORDERS** that by the end of the day on **February 25, 2022**, the parties must file a joint status report informing the court of their anticipated next steps—whether they need time to discuss possible resolution or need a hearing to schedule trial dates.

Dated in Milwaukee, Wisconsin this 24th day of January, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

Case 2:18-cr-00154-PP   Filed 01/24/22   Page 24 of 24   Document 149