UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

VAN L. MAYES,

        Defendant.

Case No. 18-cr-154-pp

---

**SCHEDULING ORDER REGARDING UNITED STATES' MOTION *IN LIMINE* TO ADMIT EVIDENCE OF RIOTING (DKT. NO. 163) AND DEFENDANT'S MOTIONS *IN LIMINE* (DKT. NO. 166)**

---

Almost four and a half years ago, the government filed a complaint alleging that on August 15, 2016, during what became known as the "Sherman Park riots" that followed the police shooting of a Black man in that neighborhood, the defendant had committed the offense of attempted arson, possession of a firearm by a prohibited persona and possession of a destructive device in relation to a crime of violence. Dkt. No. 1. A few weeks later, the grand jury returned an indictment charging the defendant with attempted arson of a police station, conspiracy to commit arson of that station, possessing a destructive device during and in relation to a crime of violence, knowingly possessing a firearm after having been convicted of a felony and knowingly manufacturing a prohibited destructive device. Dkt. No. 14. On July 11, 2018, Magistrate Judge David E. Jones granted the government's motion and designated the case as complex. Dkt. No. 17.

1

For the next fifteen months, the case proceeded before the magistrate judge, until on October 8, 2019, the grand jury returned a superseding indictment charging the defendant with conspiracy to commit arson of the police station and some residences, using facilities of interstate commerce to incite rioting, knowingly possessing a destructive device during and in relation to a crime of violence, teaching others to make destructive devices knowing that they would be used to further civil disorder, conspiracy to tamper with witnesses, possessing a prohibited weapon after having been convicted of a felony and making a prohibited destructive device. Dkt. No. 62. Litigation continued before the magistrate judge, mostly involving disputes about discovery.

Eventually, Magistrate Judge William E. Duffin set a deadline of May 21, 2021 for the parties to file pretrial motions. Dkt. No. 122. The defendant timely filed motions (Dkt. Nos. 123, 125). After the parties had briefed the motions, Judge Duffin issued a report recommending that this court deny the dispositive motion. Dkt. Nos. 135-136. The defendant obtained a couple of extensions of time, then filed objections. Dkt. No. 143. On January 24, 2022, this court adopted Judge Duffin's recommendation and denied the motion. Dkt. No. 149. Several weeks later, the parties asked the court to schedule a telephone conference to discuss pretrial litigation and a trial schedule. Dkt. No. 154.

During the March 30, 2022 status conference, the government indicated it could be ready for trial in November 2022, while defense counsel indicated that he could not possibly be ready by then and described a number of issues

2

he believed needed to be resolved before trial. Dkt. No. 160. The court rescheduled the status conference and ordered that before that conference, the parties must confer about a schedule for addressing the issues defense counsel had listed and should work to narrow the disputed pretrial issues. Id.

At the next status conference on June 2, 2022, the government reported that the parties had identified four categories of disputed issues that needed to be addressed before the court could schedule a trial: (1) how much evidence the government should be allowed to present to provide background and context for the rioting charge, (2) whether evidence the government believed showed that the defendant was involving in the rioting actually showed that he was involved in the rioting and how much of that evidence was admissible, (3) whether government evidence (including social media evidence) showed that the defendant had conspired with others and (4) the extent to which the government should be allowed to present "motive" evidence (such as evidence that might indicate that the defendant did not trust police). Dkt. No. 162 at 1. Defense counsel suggested that rather than waiting until trial to rule on the admissibility of some of this evidence (particularly whether certain out-of-court statements constituted co-conspirator statements and thus were not inadmissible hearsay), the court allow the parties to file motions *in limine* so that it could make those rulings before scheduling the trial. Id. at 1-2. The court proposed to take the motions in stages, with the first set of motions relating to the evidence that would provide context for the rioting charge and the evidence that allegedly showed the defendant had participated in those

3

riots. Id. at 2. It set a deadline of July 22, 2022 by which the government must file its motion *in limine* asking to present certain context evidence and the defense must file his motion *in limine* challenging any evidence allegedly demonstrating that the defendant was present for rioting activities. Id. Responses were due by August 19, 2022 and replies by September 9, 2022. Id.

On July 14, 2022, the government filed its motion *in limine* to admit evidence of rioting. Dkt. No. 163. The defendant has not filed a response to that motion. On July 20, 2022, however, the defendant filed an unopposed motion for extension of time to file his own motions *in limine*. Dkt. No. 164. The court extended the deadline to the end of the day on August 5, 2022 and ordered the government to respond by September 2, 2022 and the defendant to reply by September 30, 2022. Dkt. No. 165. The defendant timely filed his motions *in limine* on August 5, 2022, dkt. no. 166, the plaintiff responded on September 2, 2022, dkt. no. 167, and the court granted the defendant an extension to file his reply by October 14, 2022, dkt. no. 169. On October 14, 2022, the court granted the defendant's request for an additional extension. Dkt. No. 171. The defendant filed his reply on October 17, 2022. Dkt. No. 172.

**I.    Government's Motion *in Limine* to Admit Evidence of Rioting (Dkt. No. 163)**

The plaintiff filed a motion *in limine* asking the court to admit evidence of rioting that does not specifically identify or show the defendant's actions or statements. Dkt. No. 163 at 1. The plaintiff argued such evidence is relevant because the defendant is charged with violating the Anti-Riot Act, 18 U.S.C.

4

§2101(a)(2). Id. at 3. It argued that to prove that charge, it will be required to prove that the defendant (1) used any facility in interstate commerce; (2) with the intent to incite a riot, organize, promote, encourage, or participate in a riot, or commit an act of furtherance of a riot (or with the intent to aid and abet any person in inciting or participating in or carrying on a riot or committing any act of violence in furtherance of a riot); and (3) attempted to or did perform an overt act for those purposes. Id.

The government indicated that it had met with defense counsel and explained that it intended to present video evidence from four broad categories of general rioting activity—not specific to the defendant— that took place between August 13 and August 15, 2016. Id. at 3-4. These categories include:

- Business surveillance videos from a BP Gas Station, BMO Harris Bank, PJ's Supermarket, MJM Liquor and Big Jim's Liquor;
- Milwaukee Police Department body camera footage;
- Law enforcement aerial videos of the rioting and damage; and
- Social media videos.

Id. at 4. The government also plans to show video evidence of the defendant's participation in rioting activity. Id. The government indicates that it does not plan to introduce "hours of general rioting footage that does not specifically show the defendant participating in rioting activity." Id. Instead, it plans to show portions of the four categories listed above "to demonstrate the ongoing rioting, the nature of the activity, and the damage sustained." Id. The government argues that such evidence provides context, shows the defendant's motive and is relevant to the elements of the crime. Id. The government also

5

argued that any risk of prejudice is outweighed by the probative value, particularly with respect to the 18 U.S.C. §2101 charge. Id. at 5.

In a footnote, the government stated:

The United States informed defense that this motion will not address specific videos, but rather, it will argue for the admissibility of these four general categories. As we move closer to trial, the United States will provide the specific video portions that we intend to use.

Id. at 4 n.1. In its prayer for relief, the government moved "to admit evidence of rioting as relevant under Fed. R. Evid. 401." Id. at 6.

## II.  Defendant's Motions *in Limine* (Dkt. No. 166)

The defendant's motion says that "the discovery received on the hard drive contains twelve folders that are not relevant for establishing context or background." Dkt. No. 166 at 1. He says that the folders "do not include any evidence from any part of the riot" and that many of the videos post-date the riot. Id. He lists the twelve videos by name:

1. "Charles Edwards"
2. "Corey Miles"
3. "Derrick Madlock"
4. "Desmond London"
5. "Gary Conner"
6. "Greg Videos – Toronse Carter"
7. "Jeff Houston"
8. "Marie Weeks (Alberta Weeks)"
9. "Patrick Hampton"
10. "Qoulisha Thompson Interview"
11. "Recorded Phone Call to Van Mayes"
12. "Toronse Carter"

Id. at 1-2.

The defendant says that the hard drives also contain a folder bearing his name, and says that none of the files in that folder are relevant for establishing

6

context or background. Id. at 2. He lists two that he says are "prejudicial over probative," asserting that a file labeled "Jail Calls" contains calls that took place after the riots and that a file labeled "Van Mayes Facebook" contains videos from before the riots. Id. He asserts that both are irrelevant. Id.

The defendant says that a video labeled "8.14.2016.1033.hrs.14041641_108004274725026_835392087_n" "depicts racially charged arguments by other demonstrators" that are inflammatory and prejudicial. Id. He identifies other files that he says contain videos of racially charged language and violence by other individuals. These files include: (1) 8.30.2016; (2) Vaun Mayes FB 8.30.2016.1834hrs; (3) Vaun Mayes FB 9.03.2016.1644hrs; (4) Vaun Mayes FB 9.04.2016.1718hrs; (5) Vaun Mayes FB 9.11.2016.1652hrs; (6) Vaun Mayes FB 8.13.2016.1915hrs; (7) Vaun Mayes FB 8.13.2016.2339hrs; and (8) Vaun Mayes FB 8.15.2016.1959hrs. Id. at 2-3.

The defendant argues that a folder labeled "Videos Posted on Social Media and Captured by MPD" and "the two subfolders within the 'Van Mayes'" folder are irrelevant for the purpose of establishing context or background. Id. at 3.

The defendant explains that in addition to the hard drive, the government produced thirty discs in discovery. Id. He argues that twenty-three are not of the riot and either predate or postdate the riot. Id. These include: (1) Mayes Phone Videos; (2) Quinn Taylor Facebook Records August 2019; (3) Mayes Jail Calls 7/3/18-7/4/18; (4) Van Mayes Facebook Records August 2019; (5) Return Phone Calls on 9/13/16 to Van Mayes: (6) Interview of Van

7

Mayes on 9/20/16; (7) Kenyari Montgomery 9/1/16 + 2/19/17 Interviews; (8) Jeff Houston 1/10/17 Interview; (9) Mayes Facebook Video 8/14/18 8:10 p.m.; (10) Madlock Interviews 2/9/17, 3/24/19 + One Small Video Asking for Telephone # of Another Person; (11) Mayes Videos 2018 #2; (12) Citgo Surveillance Video 4137 W. Fond Du Lac Ave; (13) ROI # 24 Videos Mayes Discovery; (14) Wilson Facebook Data; (15) Marcus Wilson Interview 7/5/18; (16) Gabby Taylor Facebook + Facebook Analysis Report; (17) Derobertis Johnson Facebook Records; (18) Desmond London 3/16/17 Interview; (19) Madlock Jail Calls; (20) Interview of Carrie Bernard and Tommie Lee Discovery; (21) VLM – 8/14/18 Start – 8:00 Start – 41:00; (22) Corey Mills – Interview 1/4/17 and Facebook Data; and (23) Alberta Weeks 12/30/16 Interview. Id. at 3-4. The defendant says the remaining seven discs (five of which are titled "Van Mayes Youtube Videos"—Discs 1, 2, 3, and 6) and "Mayes Videos 2018" contain protected free speech which could inflame the passions of the jury. Id.

    The government responded, asserting that the defendant's arguments are too vague for proper Federal Rule of Evidence 401 or 403 analysis. Dkt. No. 167 at 1. It argues that the video evidence is relevant and is not substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence. Id. The government divides the items the defendant has identified into two categories:

*CATEGORY 1: VIDEO AND AUDIO EVIDENCE RELATED TO
SUSPECTS AND/OR WITNESSES' ACTIONS OR STATEMENTS*

1. Charles Edwards
2. Corey Miles
3. Derrick Madlock
4. Desmond London
5. Gary Conner
6. Greg Videos-Toronse Carter
7. Jeff Houston
8. Marie Weeks (Alberta Weeks)
9. Patrick Hampton
10. Quolisha Thompson Interview
11. Toronse Carter
12. Videos Posted on Social Media and Captured by MPD
13. Quinn Taylor Facebook Records August 2019
14. Kenyari Montgomery 9/1/16+2/19/17 Interviews
15. Jeff Houston 1/10/17 Interview
16. Madlock Interviews 2/9/17, 3/24/19 + One Small Video
17. Citgo Surveillance Video 4137 W. Fond du Lac Ave.
18. ROI #24 Videos Mayes Discovery
19. Wilson Facebook Data
20. Marcus Wilson Interview 7/5/18
21. Gabby Taylor Facebook + Facebook Analysis Report
22. Derobertis Johnson Facebook Records
23. Desmond London 3/16/17 Interview
24. Madlock Jail Calls
25. Interview of Carrie Bernard and Tommie Lee Discovery
26. Corey Mills – Interview 1/4/17 and Facebook Data
27. Alberta Weeks 12/30/16 Interview

*CATEGORY 2: VIDEO AND AUDIO EVIDENCE RELATED
SPECIFICALLY TO VAN MAYES' ACTIONS OR STATEMENTS*

1. Recorded Phone Call to Van Mayes
2. Van Mayes
3. DNA Hari SW Audio
4. Jail Calls
5. Van Mayes Facebook
6. 8.14.2016.1033.hrs.14041641_1087002474725026_835392087_n
7. 8.30.2016
8. Vaun Mayes FB 8.30.2016.1834hrs
9. Vaun Mayes FB 9.03.2016.1644hrs
10. Vaun Mayes FB 9.04.2016.1718hrs
11. Vaun Mayes FB 9.11.2016.1652hrs

9

12. Vaun Mayes FB 8.13.2016.1915hrs
13. Vaun Mayes FB 8.13.2016.2339hrs
14. Vaun Mayes FB 8.15.2016.1959hrs
15. Mayes Phone Videos
16. Mayes Jail Calls 7/3/18-7/4/18
17. Van Mayes Facebook Records August 2019
18. Return Phone Calls on 9/13/16 to Van Mayes
19. Interview of Van Mayes on 9/20/16
20. Mayes Facebook Video 8/14/18 8:10 p.m.
21. Mayes Videos 2018 #2
22. VLM – 8/14/18 Start- 8:00 Start – 41:00
23. Van Mayes Youtube Videos (discs 1,2,3,6)
24. Mayes Videos 2018

The government asks the court to deny the defendant's motion to exclude evidence at this time because it is impossible to address the defendant's arguments based on what he has provided the court. Id. at 4. The government argues that relevance is a low threshold, <u>United States v. Driggers</u>, 913 F. 3d 655, 658 (7th Cir. 2019), and reminds the court that the defendant has been charged with seven crimes (arson, rioting, use of a destructive device in relation to a crime of violence, civil disorder, witness intimidation, felon in possession, and making a destructive device). Id. at 5. It asserts that the Category 1 evidence contains video and audio evidence of suspects and witnesses who were involved in the August 13, 2016 rioting and arson. Id. at 6. It says that the Category 2 evidence contains video and audio evidence of the defendant's own statements and actions related to August 13, 2016, including his inculpatory statements and actions as well as statements and actions relating to his motive to participate in these crimes. Id.

The government clarifies that it will not introduce hours of this evidence. Id. It gives an example of a cellphone video taken by the defendant during the

10

rioting which it says shows the defendant's location, co-actors and motive; it asserts that "part of that video is relevant and not outweighed by prejudicial factors." Id. The government says that several of the "Van Mayes YouTube Videos" show the defendant engaged in rioting activity, including encouraging violent attacks on police officers. Id. The government concedes that the "entirety of all of these pieces of video and audio evidence are not necessary," but it says it "may" introduce portions for "relevant and admissible purposes;" it says that it will show portions of both Category I and Category 2 videos "to demonstrate the ongoing rioting, the nature of the activity, connections between suspects, the defendant's movements, motive, and modus operandi, and the defendant's inculpatory statements and actions." Id. Finally, the government acknowledges that as it provides specific video exhibits for the trial, the court will "again address issues within a Fed. R. Evid. 403 analysis." Id. at 8.

The defendant replies that he has identified specific pieces of evidence and has made specific arguments—pre- or post-riot, unduly prejudicial, First Amendment issues—and says the government has not directly addressed any of his arguments. Dkt. No. 172 at 2-3. The defendant alleges that the government has "done very little to help whittle down the voluminous discovery." Id. at 3.

### III. Discussion

The court appreciates the parties' efforts to sort the evidence into categories, but neither party has provided the court with the information it

11

would need to rule. The government asks the court to endorse the general proposition that evidence that shows what was going on in Sherman Park in the days (and nights) of rioting that occurred in August 2016 is relevant to the rioting charges against the defendant. The court agrees with that general proposition. "Relevant evidence is that which 'has any tendency to make a fact . . . of consequence' any 'more or less probable than it would be without the evidence.'" United States v. Hamzeh, 986 F.3d 1048, 1052 (7th Cir. 2021) (quoting Fed. R. Evid. 401). "A fact of consequence includes one that is 'ultimate, intermediate, or evidentiary.'" Id. Whether evidence meets this "low threshold" of relevance has to do with what must be proven at trial. Id.

Count Two of the superseding indictment charges the defendant with using a cell phone to perform an overt act with the intent and purpose of carrying on a riot and to commit an act of violence in furtherance of a riot, in violation of 18 U.S.C. §§2101(a)(2) and (3). Evidence that there was rioting going on at the time the defendant used the cell phone would have a tendency to make it more probable that the defendant was using that cellphone to incite, or participate in, or carry on that riot. The defendant makes much of the fact that some of the videos or calls took place before the riots and some took place after. That may or may not render the evidence irrelevant. A video of a person planning a riot before it began could be relevant. A video of someone eating lunch before the riot began might not be. The government will be required to prove that the defendant used the cell phone with the *intent* to incite, organize, promote, encourage, participate in or carry on the riot. Evidence that rioting

12

had been occurring prior to his use of the cell phone and during it is relevant to whether, when he used the cell phone, he intended to encourage or participate in that rioting.

The court's general agreement that evidence of the context in which the event described in Count Two took place likely is relevant does little to nothing to move the case closer to trial. Without seeing what is on each video, or hearing what is in each call, the court cannot determine whether a particular video or call is relevant.

For his part, the defendant provides the court with lists of pieces of evidence, then throws out general arguments such as, "This evidence involves events that occurred before the riots," or "This evidence is more prejudicial than probative." The defendant may be right. But while the government and the defendant have seen these videos and heard these calls and seen the social media posts, the court has not. Again, without seeing the evidence, the court has no way to determine whether a piece of evidence is relevant, or whether it is more prejudicial than probative. The defendant's arguments do little to move the case closer to trial.

And it is time to move this case closer to trial. The government has indicated that it doesn't plan to present hours of video evidence. It has indicated that it does not plan to present the entirety of every video. The court will require the government to narrow down the evidence and to provide the court with the video clips, calls, social media posts and other evidence it anticipates it will use at trial. The court will require the defendant to address

13

each item identified by the government and to explain in detail why he believes it is not relevant, or more prejudicial than probative, or involves the First Amendment. The court then will review the evidence and made its determinations.

The court understands that this places a burden on the government to identify likely trial evidence before a trial date has been set. But given the length of time the case has lingered, and the significant disputes between the parties over the admissibility of large chunks of evidence, the court is concerned that setting a trial date without first resolving some of these issues will be an exercise in futility. Addressing as many of these issues as possible before setting a trial date will enable the court and the parties to better predict the length of trial and the time needed to prepare witnesses. Hopefully, it also will prevent needless delay during trial as the parties dispute these issues while a jury waits in a cramped jury room.

**IV.    Conclusion**

The court **ORDERS** that by the end of the day on **December 31, 2022**, the government must submit to the court a list of the exhibits it may present at trial (understanding that it may not present every exhibit on the list) and a copy of the exhibit. If the exhibit is a video, the government must identify the portion of the video it seeks to have admitted. If it is a telephone call, the government must identify the portion of the call it seeks to admit. The government must submit electronic exhibits on a *thumb drive,* not a CD.

The court **ORDERS** that by the end of the day on **January 31, 2023**, the defendant must file written objections to the exhibits. The written objections must be detailed and specific; "Exhibit 29 is not relevant because it happened before the riots," or "Exhibit 50 is more prejudicial than probative" will not suffice.

The court orders that by the end of the day on **February 24, 2023**, the government must respond to the defendant's objections with its own specific explanations of why the objections are unfounded.

Dated in Milwaukee, Wisconsin this 7th day of November, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**
