UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA,**

   Plaintiff,

v.              **Case No. 18 CR 154**

**VAN L. MAYES,**

   Defendant.

---

**MOTION TO UNSEAL, INSPECT, AND COPY GRAND JURY MATERIALS**

---

### PROCEDURAL HISTORY

The defendant was charged in a five count indictment with: count one: Attempted Arson, in violation of 18 U.S.C. §844(I) and 2; count two: Conspiracy to Commit Arson, in violation of 18 U.S.C. §844(m) and 2; count three: Possession of a Destructive Device in Relation to a Crime of Violence, in violation of 18 U.S.C. §924(c)(1)(B)(ii); count four: Possession of a Firearm/Destructive Devices by a Prohibited Person, in violation of 18 U.S.C. §922(g)(1) and 924(a)(2); and count five: Making a Destructive Device, in violation of 26 U.S.C. §5822, 5861(f), and 18 U.S.C. §2.

On October 8, 2020, the grand jury returned a superseding indictment in this matter. The superseding indictment charged the following: count one: Conspiracy to Commit Arson, in violation of

1

18 U.S.C. §844(m) and 2; count two: Using a Cell Phone to Encourage Others to Riot and Commit Arson, in violation of 18 U.S.C. §2101(a)(2) and (3) and 2; count three: Possession of a Destructive Device in Relation to a Crime of Violence, in violation of 18 U.S.C. §924(c)(1)(B)(ii); count four: Taught Others the Use, Application, and Making of Molotov Cocktails in Furtherance of Civil Disorder, in violation of 18 U.S.C. §231(a)(1) and 2; count five: Witness Intimidation, in violation of 18 U.S.C. §1512(b)(3) and (k), and 2; count six: Possession of a Firearm/Destructive Devices by a Prohibited Person, in violation of 18 U.S.C. §922(g)(1) and 924(a)(2); and count seven: Making a Destructive Device, in violation of 26 U.S.C. §5822, 5861(f), and 18 U.S.C. §2.

On January 5th, 2024, the government filed a motion to dismiss counts one, two, and three of the superseding indictment. Two days later, on January 7th, 2024, the court dismissed the previously referenced counts. The defendant is now charged with the remaining four charges as outlined in the paragraph above.

## CASE BACKGROUND

In the afternoon hours of August 13th, 2016, a young black man, Sylville Smith, was shot by police in a neighborhood which abuts Sherman Park in the City of Milwaukee. The occurrence drew immediate community outrage. Questions arose regarding the way in

which the shooting occurred and whether it was justified. Shortly after the young man's death, on August 13th, elements both within the community and outside of Milwaukee began to assemble and voice their opposition to what was believed to be an unjustified shooting of a young black man. As the evening progressed, the crowd became more agitated, louder, and more aggressive. Its response soon turned from verbal expressions to physical destruction of property. A BP station, situated on the corner which abuts Sherman Park, was set on fire and completely destroyed. Other incidents of arson, destruction of property, and physical assaults occurred. Commercial properties were entered, looted, and rendered unusable. They include a beauty supply store, cell phone outlet, bank, and grocery store.

During the arson of the BP station two noteworthy events occurred. The employees of the station positioned themselves in the enclosed glass register area to avoid the angry crowd and the ensuing violence. Witnesses have stated that Mr. Mayes assisted in saving the employees by removing them from the burning building. Additionally, a camera crew from a local newspaper was chased through the streets by an angry group of individuals. Mr. Mayes, again, is credited with saving these individuals from assault and removing them to safety.

Witnesses who viewed the BP arson have stated that the

3

conflagration was initiated by Molotov cocktails. Some observers have indicated that Charles Edwards was responsible for bringing the incendiary devices to the station and distributing them to those who used them to ignite the fire. The prosecution does not allege that Mr. Mayes participated in acts of arson which occurred on August 13th, 2016. Other acts of unrest continued to occur on August 14th, 2016. The National Guard intervened at the request of the Governor. There was vast media coverage throughout much of the country.

The original indictment charged Mr. Mayes with having conspired with Charles Edwards and others to attack the Seventh District Police Station in retaliation for the perceived unjust shooting. According to the plan, rocks would be thrown at police officers who were standing guard over the station. This would create a diversion so as to allow the building itself to be attacked with Molotov Cocktails.

The government further theorizes that the Molotov Cocktails were to have been assembled during the evening hours of August 15th, 2016, at Charles Edwards's apartment. According to the prosecution, the defendant brought empty glass juice bottles from his home or from events at Sherman Park. There, he assisted in the construction of the cocktails as well as in teaching juveniles from his park program how to do the same. Witnesses claimed that

4

the intended assault on the precinct never took place because one or more individuals believed the police presence to be too significant. They maintain that the attack was called off because of these concerns.

Much of the case against the defendant is based upon statements of unindicted co-conspirators whose identities were deemed privileged by the government. Several of these witnesses were minors at the time of the events and had significant involvement in the criminal justice system. Some of these individuals have been convicted of felony offences and are presently serving periods of prison incarceration. Edwards was a convicted felon charged in the Eastern District of Wisconsin with felony drug and firearm matters.

---

**ARGUMENT – STRIKING LANGUAGE FROM COUNT 5 IS A
FATAL AMENDMENT TO THE INDICTMENT AND
NECESSITATES RE-SUBMISSION TO THE GRAND JURY**

---

Although Mr. Mayes is not alleged to have been involved in the arson or other acts of August 13th and 14th, the charges stem directly from those occurrences. In the original indictment, the defendant was charged in count two with conspiracy to commit arson, as well as other counts emanating from the events in August of 2016. After the dismissal of counts one, two, and three, the

5

remaining counts of the superseding indictment charge Mr. Mayes with the following: count four, instructing juveniles how to make the bombs; count five, conspiracy to intimidate, corruptly persuade witnesses, and create a false story from the events in counts one, two, and four; count six, possession of a destructive device having been previously convicted of a felony; and count seven, construction of Molotov cocktails.

Count five charges the defendant as follows:

> "Between approximately August 20th, 2016 and May 1st, 2019, in the State and Eastern District of Wisconsin, Van L. Mayes and others known and unknown to the grand jury knowingly and intentionally combined and conspired to intimidate, threaten, corruptly persuade witnesses to the activities described in Counts One, Two, and Four of this Superseding Indictment by instructing witnesses to create a false and common story to be communicated to law enforcement and by threatening to expose witnesses who were cooperating with law enforcement, with the intent to hinder, delay, and prevent communication to the United States Bureau of Alcohol, Tobacco, and Firearms of information relating to the commission of a Federal Offense, including those described in Counts One, Two, and Four."

The dismissal of the three counts raises significant questions of whether the act constitutes a material variance or an allowable amendment. Federal Rule of Criminal Procedure 6(e)(3)(E)(I) permits the court to disclose grand jury proceedings "preliminarily to or in conjunction with a judicial proceeding." The United States Supreme Court has determined that disclosure of grand jury transcripts is appropriate where the defendant can show

6

a "particularized need" for the materials that outweighs the policy underlying grand jury secrecy. *See*, *Douglas Oil Company v. Petrol Stops Northwest*, 441 U.S. 211, 223-24 (1979).

The Fifth Amendment of the United States Constitution guarantees the right of the accused to be tried only on charges in an indictment returned by the grand jury, *Stirone v. United States*, 361 U.S. 212, 217 (1960), also *see United States v. Muresanu*, 951 F.3d 833,839 (7th Cir. 2020). A judicial amendment without the approval of the grand jury is per se reversible error, *United States v. Galiffa* 734 F.2d 306, 311 (7th Cir. 1984), *see also Muresanu*, 951 F.3d at 839 and *Stirone*, 361 U.S. at 217. The *Meresanu* court noted that "deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harm-less error", *Merasanu*, 951 F.3d at 851. As such, the defendant enjoys a fundamental right to be tried based on the actual charges brought during the grand jury proceedings, *Stirone*, 361 U.S. at 217.

Any material amendment to the indictment has to be made by re-submission to the grand jury, *United States v. McNeese*, 901 F.2d 585, 601 (7th Cir. 1990), *overruled on other grounds United States v. Westmoreland*, 240 F.3d 618 (7th Cir. 2001). An indictment may be amended without re-submission only if the alteration makes no material change and there is no prejudice to the defendant,

7

*United States v. Lorefice*, 192 F.3d 647, 653 (7th Cir. 1999). A material element of a crime is one "whose specification with precise accuracy is necessary to establish the illegality of the behavior in the court's jurisdiction", *United States v. Alhalabi*, 443 F.3d 605, 613 (7th Cir. 2006).

In *United States v. Mankarious*, 151 F.3d 694 (7th Cir. 1998), the court adopted the five-part test used by the Tenth Circuit to determine whether a deletion from an indictment constitutes a material change, *United States v. Cook*, 745 F.2d 1311, 1316-17 (10th Cir. 1984). One factor of the five-part *Cook* test provides that the deletion "may not strike any portion of the charging paragraph." In the instant matter, count five incorporates by reference the acts set forth in counts one, two, and four. If counts one and two are deleted from the wording of count five, the allegations rely only upon the conduct set forth in count four. The issue then arises whether the deletion of the three counts constitutes a material variance which would require re-submission to the grand jury. The defendant maintains that the circumstances as have been described herein constitute a material variance and not a mere narrowing of the indictment.

It is recognized that, under certain circumstances, narrowing an indictment may be permissible without the necessity of going back to the grand jury. However, narrowing issues often arise when

8

there are amendments to a conspiracy as opposed to a substantive count. *See*, *United States v. Graffia*, 120 F.3d 706, 711 (7th Cir. 1973); *United States v. Duff*, 76 F.3d 122, 126 (7th Cir. 1996). In the instant case, the defendant was originally indicted with the conspiracy in count two, and all other charges emanating from the conspiracy. Count five is also a conspiracy charge. It alleges that the defendant conspired with others to intimidate witnesses and to create a false story in relationship to the conspiracy in count two and substantive counts one and four.

The defendant is therefore charged in count five with conspiring to do an illegal act with respect to the conspiracy charged in count two. Had the evidence of the conspiracy in count two not been presented to the grand jury, would a "true bill" have been handed down with respect to the conspiracy charge in count five? The conspiracy in count two has now been dismissed. What facts were relied upon for the grand jury in its determination with respect to the other counts?

It is unknown to anyone but the prosecutor and the grand jurors themselves what evidence was submitted and considered in reaching their decision to indict the defendant on any or all of the counts. No one knows, other than the prosecution and the jurors, how the interrelationship of counts one, two, and four impacted on the jury's deliberation to indict the defendant on

9

count five. Questions immediately arise regarding the impact to the jurors' ultimate vote if evidence in support of the conspiracy in count two had not been presented. Were there overt conspiratorial acts committed by unindicted co-conspirators for count two which gave rise to count five? Was the evidence in support of counts one and two essential to the jury's decision to indict on count five? Was the evidence submitted in support of count four, standing alone, sufficient to support the indictment in count five?

Count five has been drafted so that notice to the defendant is reliant upon the acts set forth in counts one, two, and four. The string of questions set forth above can only be addressed and answered by a review of the materials submitted to the grand jury which issued the superseding indictment in this case.

Courts often struggle with determining whether modifications to the indictment constitute a fatal variance, or what the *Stirone* court referred to as a (constructive amendment). In *United States v. Jingles*, 702 F.3d 494 (9th Cir. 2012), the court noted that:

> "('The line between a constructive amendment and a variance is at times difficult to draw'). A review of the history of the amendment/variance dichotomy reveals the reason for our perplexity. The problem is that, according to our definitions of the two terms, 'variance' and 'amendment' can, and often do, mean the same thing." *Id.* at 500.

The *Jingles* court went on to explain the difference between

10

an amendment and variance:

> "An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them. A variance occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment. *Id.* at 586 (quoting *United States v. Cusmano*, 659 F.2d 714, 718 (6th Cir. 1981)). We borrowed this language from the Sixth Circuit, which, in turn, took it from a decision by the D.C. Circuit, *Gaither v. United States*, 413 F.2d 1061, 1071 (D.C. Cir. 1969).
>
> In *Gaither*, the court reviewed the historical background of the two doctrines. According to *Gaither*, these doctrines had their genesis in the different purposes served by the Fifth Amendment's indictment requirement. Requiring indictment by grand jury protects individuals by: (1) requiring the prosecutor to establish probable cause for prosecution to the satisfaction of a group of unbiased men and women, (2) enabling the accused to prepare a defense by giving notice of the precise conduct alleged, and (3) protecting against another prosecution for the same offense. *Id.* at 1066. As explained in *Gaither*, an amendment is thought to be bad because it deprives the defendant of his right to be tried upon the charge in the indictment as found by the grand jury and hence subjected to its popular scrutiny. A variance is thought to be bad because it may deprive the defendant of notice of the details of the charge against him and protection against reprosecution. *Id.* at 1071-72 (internal footnotes omitted).
>
> The court explained that, prior to *Stirone*, the leading Supreme Court case of Ex parte *Bain* required automatic reversal if the indictment was amended. *Gaither*, 413 F.2d at 1072. Prosecutors avoided the automatic reversal rule by simply proving the facts which the amended indictment would have charged without changing the indictment's terms. *Id.* 'Thus instead of an amendment, there is a variance. And the accepted rule is that a variance does not call for dismissal of the indictment except upon a showing of prejudice.' *Id.*
>
> However, the *Stirone* case limited the use of this device. In that case, there was no actual amendment of the indictment—

11

rather there was a variation in proof from the grand jury's charge. However, the Supreme Court found the variance substantial enough to amount to a constructive amendment of the indictment, and relied on *Bain* in ordering the indictment dismissed. The reason given was not that the variance deprived the defendant of notice or protection against double jeopardy, but rather that it infringed his 'right to have the grand jury make the charge on its own judgment.' *Id*. (italics added) (quoting *Stirone*, 361 U.S. at 218-19, 80 S.Ct. 270).

Thus, *Gaither's* description of the difference between an 'amendment' and a 'variance' is somewhat misleading. As *Gaither* itself recognized, a 'constructive amendment' is simply one kind of 'variance'—that is, a variation in proof from the grand jury's charge. If the variation in proof results in an infringement of the right to have the grand jury make the charge on its own indictment, we call it a constructive amendment. Regardless of the name ascribed to it, courts faced with a variation in proof from the grand jury's charge must consider every way in which that variation might burden a defendant's substantial rights. Indeed, when we found a 'fatal variance' in *Tsinhnahijinnie*, we referred to all three rationales for the indictment requirement: 'The problem [with a variance in proof] would be that the defendant was not indicted for the crime proved, had no fair notice, and would lack double jeopardy protection against an indictment for the ... crime if he won acquittal.' 112 F.3d at 992.

As mentioned above, the historical difference between a constructive amendment and a variance has been that the former requires automatic reversal while the latter does not. *See Adamson*, 291 F.3d at 615 ('[The line between a constructive amendment and a variance] is significant because, whereas a constructive amendment always requires reversal, a variance requires reversal only if it prejudices a defendant's substantial rights' (internal quotation marks omitted)). Under *Bain* and *Stirone*, a constructive amendment requires automatic reversal. *See Gaither*, 413 F.2d at 1072. A variance, on the other hand, is harmless if the indictment gave the defendant adequate notice of the charges and there was no risk of double jeopardy if the defendant had been acquitted. *See id*.; *see also Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)." *Jingles*, 702 F.3d at 500-502

The defendant maintains that the dismissal of counts one, two, and three constitutes a material variance which requires re-submission to the grand jury. The circumstances described herein effectively deny the defendant proper notice and are in violation of his Fifth Amendment rights. Notice of the charges is deficient. The defendant is prejudiced by inability to respond to an indictment which fails to describe the offense conduct. Count five incorporates by reference conduct which was presented to the grand jury, and which is no longer in play. As such, it is appropriate that the court unseal the grand jury materials and permit inspection by the defendant so as to determine whether count five, or any other portion of the indictment, should be challenged by motion or other manner. The defendant has made the "particularized need" for the grand jury proceedings in accordance with the requirements of *Douglas Oil Company v. Petrol Stops Northwest*, 441 U.S. 211 (1979).

## CONCLUSION

For all the reasons stated above the defendant respectfully requests that the court enter an order pursuant to F.R.C.P. 6(e)(3)(E)(I) directing the unsealing of the grand jury materials.

Dated at Milwaukee, Wisconsin, this 4th day of February 2024.

13

Respectfully submitted,

/s/ *Robert G. LeBell*

---
Robert G. LeBell, SBN: 01015710
Attorney for Defendant
788 N. Jefferson St, Suite 740
Milwaukee, WI 53202
(414) 276-1233
dorbell@ldm-law.com