UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

       Plaintiff,

v.                                 **Case No. 18-CR-154**

**VAN L. MAYES,**

       Defendant.

### DEFENDANT'S MOTIONS IN LIMINE

Comes now the above named defendant and moves the court for orders granting Motions in Limine as delineated below.

**AS GROUNDS THEREFORE,** the defendant states the following: the instant Motions in Limine will address objections to certain of the government's proffered evidence, the basis for admission to defense evidence, and witnesses and other standard pre-trial matters. Both the government's and defense witness and exhibit lists have been attached to the instant motion. In order to assist the court in deciding the inadmissibility of the government's materials, the defense has set forth specific objections based upon the numbering system in the government's exhibit and witness list. Accordingly for each exhibit the defense has provided the basis for the objection or an indication that at this time there is no objection.

-1-

The defendant reserves the right to interpose further objections should they arise during the course of trial or trial preparation.

It is the clear and unambiguous intent of the government to portray the defendant as an anarchist who espouses violent anti-government, anti-police views. The government intends to portray him through witnesses and exhibits as an advocate for the overthrow of governmental authority. The very nature of the indictment reflects precisely that.

The essence of the prosecution's case is that, subsequent to the riots after the shooting of Silvie Smith on August 13, 2016, the defendant engaged in efforts to further the unrest in the Milwaukee community. After the death of Mr. Smith, various individuals (not the defendant) set fire to numerous commercial establishments in the Milwaukee community. The theory was that this was in response to the claimed unjustified police killing of Mr. Smith near the Sherman Park area. On the night of August 13th, 2016, crowds engaged in destructive acts resulting in the arson of retail establishments, a police vehicle, and public property.

Prior to the shooting and at all times relevant, Mr. Mayes was a recognized community leader who was outspoken about his concerns for the welfare of the city, police misconduct, and the protection of Milwaukee's youth. For years prior to the arsons he engaged in many public demonstrations, and community outreach actions, which were designed to bring to the attention of the public and the

Case 2:18-cr-00154-PP   Filed 03/28/24   Page 2 of 47   Document 220

authorities various community problems involving race relations and desperate treatment based on color. His advocacy often became the thorn in the side of the authorities. Soon after Mr. Smith's death, and made demonstrative efforts to disquiet the rising fervor of the crowd and to dispel their angst. His attempts were recorded by media and others who were present. Thereafter, various members of the community and interlopers from outside of Milwaukee decided to seek retribution for what they perceived to be an unjust killing. They did so by engaging in violent activities.

Mr. Mayes was never a part of these actions. Rather, he attempted to tamp down the temperament of the crowd and prevent them from engaging in further injurious conduct. Witnesses will testify that the defendant entered one of the buildings which was engulfed in flames to extract and save two of the employees who had been trapped in the fire. There are also witnesses who will testify that when the crowd attempted to attack two investigative reporters, who were covering the arsons, he was able to extract them from an impending assault by the crowd and put them into a safe haven.

The government will allege thereafter that the defendant hatched a plan, which it denominates as a conspiracy, to attack the 7th District Police Precinct by throwing rocks and Molotov cocktails. According to the government, the scheme came to fruition during the evening of August 15th, 2016 when various individuals

-3-

went to the home of Charles Edwards to assemble the cocktails and the rocks. It is the government's theory that the defendant was present during this meeting with Edwards and others.

It is noteworthy that no assault on the precinct ever occurred, nor was it ever attempted. Moreover, varying accounts indicate that the idea was abandoned prior to any action being taken, after the devices were created. Of further note is that Edwards, who is now deceased, was arrested shortly after the events of August 15, 2026 for possession of a firearm as a convicted felon and possession with intent to deliver cocaine. Various witnesses have stated that the arsons of the establishments were effectuated through the use of Molotov cocktails assembled by and/or distributed by Edwards.

Edwards was wheelchair bound and moved about the city on a motorized chair. His arrest for the aforementioned offenses occurred in Sherman Park where Mr. Mayes held his programming for the youth in the neighboring areas. The circumstances were that Edwards apparently attempted to engage in some physical activity which caused his wheelchair to upend. This dislodged his automatic weapon and significant amounts of crack cocaine. This event occurred directly under the eyes of law enforcement who happened to be in the park observing the events of the day. Edwards was immediately apprehended.

-4-

Edwards subsequently became a government witness and it is his testimony which was projected by the government to be the lynchpin of the its case. Now the prosecution will rely upon theoretically admissible statements of co-conspirators and witnesses who claim to be direct observers.

The defendant was not indicted until two years after the events of the unrest in 2016. The trial in this matter is projected to occur seven years later. At all times prior to his arrest and thereafter, Mr. Mayes has continued to be a stalwart in community activism and one who is the voice of the advancement of community interest. He continues to be engaged in joint efforts with law enforcement, governmental organizations and government representatives to effectuate peace in the community. He engaged in a myriad of different projects, all of which are designed to limit or eliminate violence of any nature in Milwaukee. He has participated in countless events which advance the economic and educational interest of community members both here and in other states. He has established programs which are designed to benefit city's youth and the community at large. His efforts have provided safe havens for individuals at risk and those who have been disenfranchised due to various, unfortunate events.

The defense will vehemently object, as is set forth herein, to many of the prosecution's witnesses and evidence on the grounds that they are inflammatory, highly prejudicial, probative of

-5-

nothing, and designed strictly to impugn the integrity of the defendant. This evidence will be further introduced for the prohibited purposed of improperly attacking the character of the defendant by demonizing him and his outreach work.

Examples of the government's highly objectionable proffered evidence are as follows:

1.  multiple videos of the defendant burning or stepping on the American flag

2.  engaging in conversation with unknown individuals about white militia groups

3.  recordings of the defendant stating or singing songs depicting the U.S. as a racist nation

4.  describing Donald Trump as a racist

5.  Supporting the Black Lives Matter movement

6.  Disparaging white people

7.  Supporting black power

8.  Laughing at a police car which was on fire

9.  Disparaging damage to law enforcement property

10. Disparaging police officers in general

11. Engaging in a protest which results in a viewer threatening to pepper spray the defendant

12. A statement by a citizen that he disrespects veterans

13. Encouraging others to burn the flag

14. Calling white people crackers

-6-

15. Stating that the American flag represents oppression and is like a swastika or Confederate flag

16. Engaging in derisive behavior while the American flag is burning

17. Describing the racial divide as white supremacy

18. Using language to describe white people as bitch ass motherfuckers and cowards

19. Burning the Bible

20. Describing the inequities against black citizens by the justice system

21. Derisive statements when viewing people involved in the BP arson

There are many times in which courts of appeals have considered whether the probative value of politically charged evidence is outweighed by its prejudicial effect. These cases reflect the clear concern that the government's zealotry will compromise fundamental fairness by allowing the jury to be swayed by evidence and advocacy directed at biases and prejudices. This evidence is designed to raise the anger of jurors and inflame their considerations of guilt or innocence, so that passion and antipathy against the defendant will be the controlling motivator. The government's exhibits, when independently examined, fall squarely within the prohibited limitations of F.R.E. 403. Here, however, they have overwhelmingly amplified the impermissibility of the

-7-

evidence by seeking a massive amount of similar rhetoric. Therefore, the exhibits for which the government seeks admission are not only highly and prohibitively inflammatory, but are cumulatively more prejudicial to the defense.

In *United States v. Ellis* 147 F.3d 1131 1135 (9th Cir. 1998), the court determined that admission of Ellis' possession of THE ANARCHIST COOKBOOK constituted such unfair prejudice that it was inadmissible. There, the introduction was unnecessary to support the charge. The *Ellis* provided the following general observations about unfair prejudice:

> "'Unfair prejudice' refers to an 'undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one' or 'evidence designed to elicit a response from the jurors that is not justified by the evidence.' 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence 403.04[bj (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.1997)." *Ellis* at 1135.

In *United States v. McCrea* 583 F.2d 1083 1086 (9th Cir. 1978), the court determined that two books seized during the course of the search warrant were improperly admitted into evidence pursuant to F.R.E. 403. Those two publications were entitled "Improvised Munitions Handbook" and "O.S.S. Sabotage and Demolition Manual". The court ruled that the titles alone would have the tendency to prejudice the defendant. In *United States v. Lehder-Ravas* 955 F.2d 1510 1518 (11th Cir. 1992), the court found that testimony was improvidently admitted which indicated that the defendant planned to mark his share of cocaine packages with swastikas. In *United*

-8-

*States v. Mehanna* 735 F.3d 32 (1st Cir. 2013), the court noted that "courts must be wary of the particular perils associated with prosecutions centered on ideology". Additionally, the demonization of the defendant through this evidence constitutes impermissible other acts evidence in violation of F.R.E. 404(b). There is a presumption against the admission of such evidence, see *United States v. Simpson* 479 F.3d 492 497 (7th Cir. 2007). Conversely, from the defendant's perspective, in determining the admissibility of its proffered 404(b) evidence, the standard is lower because the prejudice to the defendant is not a factor. *United States v. Seals* 419 F.3d 600 606 (7th Cir. 2005) Such evidence fails to satisfy the pre-requisites set forth in *United States v. Gomez* 763 F.3d 845 (7th Cir. 2014). Rather, it constitutes excludable propensity testimony designed to attack the defendant's character. The *Gomez* court summarized the new rule as follows:

> "[T]o overcome an opponent's objection to the introduction of other-act evidence, the proponent of the evidence must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way. See Fed.R. Evid. 401, 402, 404(b). Other-act evidence need not be excluded whenever a propensity inference can be draw (*sic*). But its relevance to "another purpose" must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case. If the proponent can make this initial showing, the district court must in every case assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and may exclude the evidence under Rule 403 if the risk is too

-9-

great. The court's Rule 403 balancing should take account of the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case." *Gomez* at 860.

## OBJECTIONS TO GOVERNMENT'S EXHIBITS AND WITNESSES

The concerns raised by the prosecution's evidence fall into the following general categories:

1. Relevance - F.R.E. 401, 402, 403

2. First Amendment Freedom of Speech

3. Sixth Amendment Right to Confrontation

4. Failure to identify the specific portion of a voluminous document

5. Violation of the prohibitions set forth in F.R.E. 404 (b)

6. Hearsay F.R.E. 801, 802, 803

7. Unavailability of Witness F.R.E. 804

8. The statement is not admissible as that of a party opponent F.R.E. 801(d)(2)(A)

9. The item cannot be opened

10. Duplicative and Cumulative

Below is an itemized list of the government's exhibits and their relevant objections:

Exhibit 1: Video MAYES 11.21.21 1831hrs

The defendant is filming a large police and media presence. It is a video taken 5 years after the date in question. The exhibit is inadmissible under F.R.E. 401, 402, and 403, 801(d)(2), and 804(b).

Exhibit 2: Video MORE GAS STATION VIDEO 10pm air date 08 13 2016 WTMJ9346 140 – **can't open**

-10-

Exhibit 3: Video More Gas Station Video 0023 to 0118 – no objection
footage of people at the BP Station

Exhibit 4: Video NRT Scene Photo 20160815 Aerial Footage – No
objection

   This is aerial footage of the BP the day after it burned down.

Exhibit 5: Video VO VIDEO OF GAS STATION  DB 08 14 2016
WTMJ93cc 140 – **can't open**

Exhibit 6: Video 3 Brothers Store Video ch07 20160813220201 – **can't
open**

Exhibit 7: Video 3 Brothers Store Video ch07 20160814000930 – **can't
open**

Exhibit 8: Video 3 Brothers Store Video ch08 20160813230928 – **can't
open_**

Exhibit 9: Video 3 Brothers Store Video ch16 20160813215506 – **can't
open_**

Exhibit 10: FRE 801, 802

Exhibit 11: FRE 801, 802

Exhibit 12: no objection

Exhibit 13: No objection

Exhibit 14: FRE 801, 802, and 805(b)

Exhibit 15: Video Black Panther – Vaun Mayes goes live over MKE KKK
hoax

   The defendant went to visit a construction site due to reports
   of KKK imagery and confederate flags being spotted on the
   personal items of the construction workers. No symbols were
   found on the machinery, but the workers were gone for the day
   so the defendant couldn't check their items. The defendant
   discusses racial tensions that arose from the death of a young
   man in the community. He talks about white militia groups
   surrounding after the incident occurred. This exhibit is
   irrelevant, inflammatory, polarizing and should be
   inadmissible on 1st amendment grounds, relevance grounds,
   F.R.E. 401, 402, F.R.E. 801(d)(2)(A), 802, 404(b), and
   cumulative.

-11-

Exhibit 16:

    This is a duplicate of 173, same objection.

Exhibit 17: No objection

Exhibit 18: No objection

Exhibit 19: No objection

Exhibit 20: 1st Amendment/ FRE 403 Undue Prejudice / FRE 401 / FRE 402 / cumulative / 404(b) other acts

    Facebook post wherein Mr. Mayes expresses negative views towards a police officer. It also contains the hashtag "#fuckthepolice". Expressing views about the police in this manner is protected speech. Moreover, the presentation of this screenshot would merely serve to inflame the passions of the jury and result in undue prejudice.

Exhibit 21: Jail calls

        a.    7.3.2018

                FRE 401, 402, 403. Contains no probative value and due to being jail calls would be unduly prejudicial.

                FRE 401, 402, and 403. Contains no probative value and due to being jail calls would be unduly prejudicial.

        b.    7.4.2018

                Don't play

Exhibit 22: No objection

Exhibit 23: Audio 9.13.16 Van Mayes Recorded Phone Call – no objection

    Recorded call from ATF Agent Rick Hankins to Van Mayes, discuss when he will get his confiscated devices back, asked about how bin got to Charles' place, Hankins asks if someone could carry it by themselves, Mayes says yes but it depends on how you load it, Hankins asks what kind of recycling bin are they talking about and Mayes says it wasn't a recycling bin it was boxes and bags, little brown cardboard boxes, Hankins asked how many bags and boxes he brought to the park on the 13th, Mayes said one box of glass bottles, and an unknown

-12-

number of bags full of plastic bottles. Hankins clarifies that the bottles were in a cardboard box. Mayes describes the box as a little bit bigger than a VCR, small package box like from UPS. Hankins clarifies that the bottles were already used, and they were just going to add more bottles to the box to recycle. Hankins asks where they put the boxes and bags, Mayes says there's a grassy area near a wooden shed where they set up their tables. Hankins asks for specific names of who was setting fires, expresses they're looking for people who were playing with Molotov cocktails and doing "more dangerous stuff". Mayes says there weren't Molotovs being used the night of the riots, and he didn't get a good look at faces of people involved. Hankins asked if he remembers the brand of the bottles in the cardboard box, Mayes says ever fresh, orange juice, apple juice, some root beer, long-neck kind of bottles. Hankins asks for dimensions and Mayes estimates it's a little bigger than from his fingertips to his elbow, maybe a foot or a foot and a half tall. Hankins asks for the number of bottles in the box, Mayes said probably more than a dozen but very unsure. Mayes mentioned not having a phone due to being arrested and Hankins asks for more details. Mayes says he went to mediate some confrontation having to do with Sylville Smith and was arrested.

Exhibit 24: Video "@Fu@k Your Flag" Black Samsung GSM

This video begins with the defendant stating "fuck this flag, fuck this country…this flag is the new fucking swastika". He goes on to talk about America being a racist nation, the murder of a young black man by three white men in the community and discusses Donald Trump. In regard to Trump he states, "his rhetoric is very racist", "his ties to the KKK are questionable, so are Hillary's". He continues to scream "fuck this flag", "Black power", and various other obscenities and statements. When asked about the Black Lives Matter movement, he answers that he believes in the essence of it, but doesn't agree with everything they do, and is not affiliated with them. The defendant talks about Milwaukee being very segregated. He proceeds to talk about the good things he does for his community, such as: stop the violence rallies, cleanups, and cookouts. The defendant believes these are ways to resolve black on black crime and mentions how the media does not cover these productive efforts. The defendant also states: "white people need to understand the difference between rights and being disrespectful" Around 7:09 in the

-13-

video, a white man lunges for the flag the defendant is standing on, and individuals present at the event say they are there for a peaceful protest and tell him to back away. Police intervene and get man to move away. This video should be inadmissible on 1st amendment grounds, relevance, F.R.E. 401 and F.R.E. 801 and 802.

<u>Exhibit 25:</u> 1st Amendment/ FRE 403 Undue Prejudice / FRE 401 / FRE 402 / 404(b) other acts

Photo of Mr. Mayes engaging in protected political speech while holding what appears to be a partially burned US flag. The presentation of this photo would only serve to unduly inflame the passion of the jury and would be unduly prejudicial.

<u>Exhibit 26:</u> 1st Amendment/ FRE 403 Undue Prejudice / cumulative / 404(b) other acts

Photo of Mr. Mayes engaging in protected political speech while standing on a US flag. The presentation of this photo would only serve to unduly inflame the passion of the jury and would be unduly prejudicial.

<u>Exhibit 27:</u> 1st Amendment/ FRE 403 Undue Prejudice / FRE 401 / FRE 402 / cumulative / 404(b) other acts

Image of a political slogan, not attributed to Mr. Mayes directly. The presentation of this photo would only serve to unduly inflame the passion of the jury and would be unduly prejudicial.

<u>Exhibit 28:</u> 1st Amendment/ FRE 403 Undue Prejudice / cumulative / 404(b) other acts / FRE 401 / FRE 402

Image of a political statement, not attributed to Mr. Mayes directly. The presentation of this photo would only serve to unduly inflame the passion of the jury and would be unduly prejudicial.

<u>Exhibit 29:</u> 1st Amendment/ FRE 403 Undue Prejudice / FRE 401 / FRE 402 / cumulative / 404(b) other acts

Photo of Mr. Mayes engaging in protected political speech while standing on a US flag. The presentation of this photo would only serve to unduly inflame the passion of the jury and would be unduly prejudicial.

-14-

<u>Exhibit 30:</u> FRE 402 Lack of Probative Value/ FRE 403 Undue
Prejudice / FRE 401 / FRE 402 / cumulative / 404(b)

A picture of highlights from the FBI Cointelpro Papers with
highlighted segments pertaining to "Black Nationalist-Hate
Groups". This picture does not have a tendency to make the
existence of any fact that is of consequence to the
determination of the action more probable or less probable
than it would be without the evidence. Instead, due to the
content of the speech it could potentially inflame the
passions of the jury and be unduly prejudicial.

<u>Exhibit 31:</u> FRE 403 Undue Prejudice/ FRE 402 lack of probative
value/ FRE 404.B Other Acts Analysis Required / FRE 401 /
cumulative

Photo of Mr. Mayes apparently holding a device which the
government suggests is a firearm. Mr. Mayes does not stand
accused of using a firearm or illegally possessing a
firearm. Therefore, this photo lacks any probative value.
There is a danger of undue prejudice against Mr. Mayes. To
the extent the government argues this photo has probative
value an Other Acts motion must be filed by the government
and the court must go through the analysis of whether it is
admissible. There is no foundation for the photo and no
proof it is a firearm.

<u>Exhibit 32:</u> FRE 401 / FRE 403 Undue Prejudice/ FRE 402 lack of
probative value/ FRE 404.B Other Acts Analysis Required

Photo of Mr. Mayes apparently holding a device which the
government claims is firearm. Mr. Mayes does not stand
accused of using a firearm or illegally possessing a
firearm. Therefore, this photo lacks any probative value.
There is a danger of undue prejudice against Mr. Mayes. To
the extent the government argues this photo has probative
value an Other Acts motion must be filed by the government
and the court must go through the analysis of whether it is
admissible. There is no foundation for the photo and no
proof it is a firearm.

<u>Exhibit 33:</u> FRE 403 Undue Prejudice/ FRE 402 lack of probative
value/ FRE 404.B Other Acts Analysis Required

Photo of Mr. Mayes apparently holding a device which the
government claims is a firearm. Mr. Mayes does not stand
accused of using a firearm or illegally possessing a

-15-

firearm. Therefore, this photo lacks any probative value. There is a danger of undue prejudice against Mr. Mayes. To the extent the government argues this photo has probative value an Other Acts motion must be filed by the government and the court must go through the analysis of whether it is admissible. There is no foundation for the photo and no proof it is a firearm.

Exhibit 34: FRE 403 Undue Prejudice/ FRE 402 lack of probative value/ FRE 404.B Other Acts Analysis Required

Photo of Mr. Mayes apparently holding a device which the government claims is a firearm. Mr. Mayes does not stand accused of using a firearm or illegally possessing a firearm. Therefore, this photo lacks any probative value. There is a danger of undue prejudice against Mr. Mayes. To the extent the government argues this photo has probative value an Other Acts motion must be filed by the government and the court must go through the analysis of whether it is admissible. There is no foundation for the photo and no proof it is a firearm.

Exhibit 35: 1st Amendment/ FRE 403 Undue Prejudice / cumulative / 404(b) other acts

Photo of Mr. Mayes engaging in protected political speech while standing on a US flag. The presentation of this photo would only serve to unduly inflame the passion of the jury and would be unduly prejudicial.

Exhibit 36: 1st Amendment / Cumulative / Relevancy

This is a treaty about state issued identification and viewpoints opposing it. It is objectionable on 1st amendment and relevancy grounds.

Exhibit 37: 1st Amendment/ FRE 402 Lack of Probative Value/ FRE 403 Undue Prejudice / cumulative / 404(b) other acts

Screenshot of Mr. Mayes engaging in a conversation on Facebook. This conversation discusses Mr. Mayes' views on policing in Milwaukee and race relations generally in the United States. Therefore, Mr. Mayes' statements fall within the protections of protected speech. Moreover, screenshot does not have a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Instead due to the content of the speech it could

-16-

potentially inflame the passions of the jury and be unduly prejudicial.

Exhibit 38: 1st Amendment/ FRE 402 Lack of Probative Value/ FRE 403 Undue Prejudice / cumulative / 404(b) other acts

Screenshot of Mr. Mayes engaging in a conversation on Facebook. This conversation discusses Mr. Mayes' views on policing in Milwaukee and race relations generally in the United States. Therefore, Mr. Mayes' statements fall within the protections of protected speech. Moreover, screenshot does not have a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Instead due to the content of the speech it could potentially inflame the passions of the jury and be unduly prejudicial.

Exhibit 39: Video Mayes on Flag with 2 Others Outside

The defendant films himself and two other people standing on the American flag. This is a form of protected speech that would, if introduced, unduly prejudice the defendant, and is thus inadmissible on 1st amendment grounds, relevance, F.R.E. 401, 402 and F.R.E. 801, 802, 804(b) and cumulative.

Exhibit 40: Video 08.13.2016 Mayes Masked Riot

This is a video of the August 13th riots, showing the defendant yelling "black power in this motherfucker man…they pelting they ass with these motherfucking rocks, rocking they shit…shit going down, shit going down man, black power in this motherfucker man…look, look, look, they all in the park" This video is inadmissible on 1st amendment grounds, relevance, F.R.E. 401, 402 and F.R.E. 801, 802, 804(b) and cumulative.

Exhibit 41: Video 8.13.16 Mayes Laughing About Burning Squad

This is a video of the defendant walking down the street while laughing at an on-fire police car. He states: "police car is completely fucked". This video is inadmissible due to relevance, 1st amendment protections, F.R.E. 801, 802 and F.R.E. 401 and 402.

Exhibit 42: Video 8.13.16 Mayes Filming Damaging Squad

In this video the defendant films people screaming and beating up a car while shouting "Black power in this motherfucker man". The video is inadmissible under relevance, 1st amendment

-17-

grounds, F.R.E. 801, 802 and F.R.E. 401, 402, 403, 404(b), and cumulative.

<u>Exhibit 43:</u> Video 8.13.16 Mayes Black Power Damaged Car

In this video the defendant films a tow truck taking away the damaged police car. He states: "well…detective bullshit won't be at work in this motherfucker tomorrow…black goddamn power n***a". The defendant appears to be the only civilian around. He is standing on the sidewalk while three police officers are watching the car be towed away from the street. The defendant and the officers do not interact during the course of the video. This exhibit is inadmissible due to relevance, 1st amendment protections, F.R.E. 401, 402, 403 and F.R.E. 801, 802, 404(b) and cumulative.

<u>Exhibit 44:</u> Video 8.13.16 Mayes Mocks Police During Riot

This video shows the defendant sitting in a car laughing at the damaged police car. He states: "n***a that motherfucker extra crispy n***a, that motherfucker look like…god fucking damn Paul". He and several other individuals are laughing at the police needing to tow the car. This video is inadmissible due to relevance, 1st amendment protections, F.R.E. 401, 402, 403 and F.R.E. 801 and 802.

<u>Exhibit 45:</u> Video 8.13.16 Mayes Mocks the Damage

The defendant is driving around, looking at the damaged businesses, and saying "fuck you" to several cops standing around. He also yells at a reporter from the car. This video is inadmissible due to relevance, F.R.E. 401, 402, 403 and F.R.E. 801, 802, 404(b), and cumulative.

<u>Exhibit 46:</u> Video 8.13.16 Mayes at BP Not Stopping Damage – FRE 401, 402, 403

This is a video of people screaming and stealing from the BP gas station on the night of the arsons. The defendant is filming the scene and reacting in shock. This exhibit is inadmissible due to FRE 401, 402, and 403.

<u>Exhibit 47:</u> Video 8.13.16 Mayes at BP Not Stopping Damage 2 – no objection

The defendant is filming the rioting and arson at the BP station. He comments: "they fucking this shit up, there ain't shit I can do, there's nothing I can do, there's fucking nothing I can do".

-18-

<u>Exhibit 48:</u> Video 8.13.16 Mayes Where the Rocks At

The defendant is filming people on the street and asks bystanders "where the rocks at, who got the rocks". Shielded police officers are approaching the defendant and the crowd. The defendant repeatedly screams "they getting they ass tagged", "fuck y'all", and "punk ass cops…getting they ass rocked". Chants break out from the crowd of people screaming "hell no, we won't go". The video is inadmissible due to relevance, 1st amendment protections, F.R.E. 401, 402, 403 and F.R.E. 801 and 802, and cumulative.

<u>Exhibit 49:</u> Video 8.13.16 Mayes Fuck Y'all

The defendant yells "fuck these n***as man…black power in this motherfucker man". A police officer is asking people to clear their assembly, orders them to disperse, declares the gathering unlawful. The defendant screams "fuck y'all" repeatedly in response to this. He shouts "rocking they shit" and shows a wall of shielded police officers. This video is inadmissible under relevance, 1st amendment protections, F.R.E. 401, 402, 403 and F.R.E. 801 and 802, and cumulative.

<u>Exhibit 50:</u> Deonate Anderson – Black Edutainment Interview

The defendant is being interviewed and is discussing his political views. He states: "I don't deal in politics…fuck the whole two-party system…I definitely ain't a leftist, I definitely ain't a part of the black lives matter movement even though I do fuck with the movement before it became an organization, the message behind it I do support that 110%". He admits to burning the flag, as well as standing on it. The defendant states white people stole everything from "us". He mentions that the presidents prior to George Washington were black. This video contains incredibly charged and polarizing language and would unduly prejudice the defendant if introduced. It is inadmissible on 1st amendment grounds, relevance, F.R.E. 401, 402, 402 and F.R.E. 801 and 802, 404(b), and cumulative.

<u>Exhibit 51:</u> Video Mayes on Flag Downtown 2

The defendant is shown dancing on the flag. This act immediately upsets a man who threatens to pepper spray him if he doesn't take the flag off the ground. The individual calls the defendant a "disrespectful motherfucker". The group of protestors chastise the veterans that are complaining, call

-19-

them brainwashed, and laugh at them. This video is inadmissible under relevance, 1st amendment protections, F.R.E. 401, 402 and 403, and F.R.E. 801 and 802.

**Exhibit 52:** Video Mayes on Flag Downtown

The defendant and other individuals are standing on flag while a group of white men is speaking to them. The man says, "I fought for this…people died for this…why are you doing this…what did I do to you?". The defendant and the man argue back and forth about whether his protest is disrespecting veterans. This video is inadmissible under 1st amendment protections, F.R.E. 401, 402, 403 and F.R.E. 801 and 802., 404(b) and cumulative.

**Exhibit 53:** Video West Allis Fox News Flag

This is a clip from fox news commenting on footage of the defendant and other individuals stomping on the flag. The news anchor is quoted as saying: "they began by encouraging people to burn flags on 9/11". This video is highly prejudicial and inadmissible on 1st amendment grounds, hearsay, F.R.E. 401, 402, 403 and F.R.E. 801 and 802, 404(b), and cumulative.

**Exhibit 54:** Video Mayes At War Song

This is a video of the defendant rapping about black power and people who have died at the hands of police. He calls white people crackers. One of the song lyrics goes as follows: "this was they plan from the jump these crackas at war with my people, to them you still 3/5th a man so killin u is not illegal". This video is inadmissible under the 1st amendment, F.R.E. 401, 402, 403 and F.R.E. 801 and 802, 404(b), and cumulative.

**Exhibit 55:** Video Mayes Juneteenth Statement

The defendant is filming several cops and states: "fuck these motherfuckers, fuck they flag, I'm gonna burn 2 of them bitches tonight, fuck these people, ya feel me?". He proceeds to flip off the camera and say: "black power motherfucker, fuck y'all". This video is inadmissible under the 1st amendment, F.R.E. 401, 402, 403 and F.R.E. 801 and 802, 404(b), and cumulative.

**Exhibit 56:** Video Mayes filming Sylville Smith Police Line

The defendant is in a large crowd of people and filming a police barricade. He asks people he knows to go back to the

-20-

park because "shit's about to go down". This video is inadmissible under the 1st amendment, F.R.E. 401, 402, 403 and F.R.E. 801 and 802.

Exhibit 57: 1st Amendment/ FRE 401 / FRE 403 Undue Prejudice/ FRE 402 lack of probative value/ FRE 404.B Other Acts Analysis Required / cumulative

Screen shot of a FB video. Appears to be a filming of a police line. There does not appear to be any probative value to this screen shot and it is far outweighed by the danger of undue prejudice. To the extent the government argues this screen shot has probative value, an Other Acts motion must be filed and the court must go through the analysis of whether it is admissible.

Exhibit 58: No objection

Exhibit 59: No objection

Exhibit 60: No objection

Exhibit 61: FRE 403 Undue Prejudice/ FRE 402 lack of probative value

Mugshot from the Wisconsin Department of Corrections for Derrick Madlock. Photo date is from 2017, which predates the incidents that are the subject of the government's case. By clearly appearing to be a mugshot of an individual the danger is a negative and unduly prejudicial association against Mr. Mayes without any probative value of the facts of consequence.

Exhibit 62: No objection

Exhibit 63: No objection

Exhibit 64: No objection

Exhibit 65: No objection

Exhibit 66: No objection

Exhibit 67: No objection

Exhibit 68: No objection

Exhibit 69: No objection

Exhibit 70: No objection

Exhibit 71: No objection

-21-

Exhibit 72: No objection

Exhibit 73: No objection

Exhibit 74: No objection

Exhibit 75: No objection

Exhibit 76: No objection

Exhibit 77: No objection

Exhibit 78: No objection

Exhibit 79: No objection

Exhibit 80: No objection

Exhibit 81: No objection

Exhibit 82: No objection

Exhibit 83: No objection

Exhibit 84: FRE 401, 402 Lack of Probative Value, 403, FRE 801 and 802

     Photo of text messages with a "Gab Taylor". These texts are from Aug 20, a week after the incidents that are the subject of the government's case. Moreover, these texts do not seem to pertain to any issue of consequence in this case.

Exhibit 85: No objection

Exhibit 86: 1st Amendment/ FRE 401 / FRE 403 Undue Prejudice/ FRE 402 lack of probative value/ FRE 404.B Other Acts Analysis Required / cumulative

     These shirts express protected political views. The content of these pollical views have the danger of inflaming the passions of a jury and are without probative value. To the extent the government argues this shirt has probative value and Other Acts motion must be filed by the government and the court must go through the analysis of whether it is admissible

Exhibit 87: No objection

Exhibit 88: No objection

Exhibit 89: No objection

Exhibit 90: No objection

**Exhibit 91:** 1ˢᵗ Amendment/ FRE 401 / FRE 403 Undue Prejudice/ FRE 402 lack of probative value/ FRE 404.B Other Acts Analysis Required / cumulative

> Books about policing and cultural theory. The content of these pollical views have the danger of inflaming the passions of a jury and are without probative value. To the extent the government argues this shirt has probative value and Other Acts motion must be filed by the government and the court must go through the analysis of whether it is admissible

**Exhibit 92:** FRE 401, 402, 403 Lack of Probative Value

> Photo which contains a mostly drank bottle of Seagrams Cooler. Does not have a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Exhibit 93: No objection

Exhibit 94: No objection

Exhibit 95: No objection

**Exhibit 96:** FRE 401,402,403 Lack of Probative Value/cumulative

> This letter is irrelevant to the government's case against Mr. Mayes and contains no probative value

**Exhibit 97:** 1ˢᵗ Amendment/ FRE 401/ FRE 403 Undue Prejudice/ FRE 402 lack of probative value/ FRE 404.B Other Acts Analysis Required/cumulative

> This shirt expresses protected political views. The content of these pollical views have the danger of inflaming the passions of a jury and are without probative value. To the extent the government argues this shirt has probative value and Other Acts motion must be filed by the government and the court must go through the analysis of whether it is admissible

**Exhibit 98:** 1ˢᵗ amendment// FRE 401 // FRE 403 Undue Prejudice/ FRE 402 lack of probative value/ FRE 404.B Other Acts Analysis Required // cumulative

> This shirt expresses protected political views. The content of these pollical views have the danger of inflaming the passions of a jury and are without probative value. To the extent the government argues this shirt has probative value

and Other Acts motion must be filed by the government and the court must go through the analysis of whether it is admissible

Exhibit 99: No objection

Exhibit 100: No objection

Exhibit 101: No objection

Exhibit 102: No objection

Exhibit 103: FRE 402 Lack of Probative Value / FRE 401 / FRE 403

Photo of a bottle of lighter fluid. Lighter fluid in a home is a common object. There mere presence of lighter fluid has no probative value.

Exhibit 104: No objection

Exhibit 105: FRE 402 Lack of Probative Value / FRE 401 / FRE 4030

Photo of a Mark's Hard Lemonade bottle on the bumper of a law enforcement vehicle. This bottle's origin is not clear. It is clearly presented in a staged photo. Therefore this photograph lacks probative value.

Exhibit 106: No objection

Exhibit 107: No objection

Exhibit 108: No objection

Exhibit 109: Relevance

Exhibit 110: Relevance

Exhibit 111: Relevance

Exhibit 112: Relevance

Exhibit 113: Relevance

Exhibit 114: Relevance

Exhibit 115: No objection

Exhibit 116: No objection

Exhibit 117: No objection

Exhibit 118: No objection

Exhibit 119: No objection

Exhibit 120: No objection

Exhibit 121: No objection

Exhibit 122: No objection

Exhibit 123: No objection

Exhibit 124: No objection

Exhibit 125: No objection

Exhibit 126: No objection

Exhibit 127: FRE 403 Undue prejudice / FRE 401 / FRE 402 / 404(b) other acts

The document contains reference to an "Arrest date" for the defendant from 11/19/2015. The inclusion of this information would be unduly prejudicial.

Exhibit 128: Youtube #EricSheppardChallenge #FuckYoFlag #FYF911

This is a video of the defendant and another individual making many different political statements, such as: fuck your flag, black power, the flag represents oppression, it's the new symbol for racism like a swastika, it's like a confederate flag. The two men then proceed to burn the flag while individuals in the background are laughing. Individuals present make statements, such as: "fuck ISIS, fuck your government, fuck Obama, fuck the president, fuck white supremacy". The defendant is laughing while the flag is burning. This video is inadmissible under the 1st amendment, F.R.E. 401, 402, 403 and F.R.E. 801 and 802, and cumulative.

Exhibit 129: Youtube Fyf2

The defendant films himself stomping on the flag and making various inflammatory statements, such as: "I hate this motherfucking country bitch, fuck your flag, fuck your flag"…"This is how I like my white supremacy, flattened on its goddamn back"…"you goddamn (unknown) and goddamn cracker motherfuckers better hope I don't get this goddamn money for this goddamn tour because I'm not playing. You try that bullshit with me I'm gonna kick your goddamn ass, I'll tell you that much man, enjoy the goddamn sights while you can, yeah it's gonna be a beautiful year for black power, it's gonna be a beautiful goddamn year for black power, white supremacy fuck you, fuck you." This video is inadmissible under the 1st amendment, F.R.E. 401, 402, 403 and F.R.E. 801 and 802, 404(b), and cumulative.

-25-

Exhibit 130: Youtube Fyf

This is a video of the defendant dragging the flag down the sidewalk while saying fuck you, mocking the flag, and "you know you white people some bitchass motherfuckers y'all some cowards you not really gonna do shit"…"let me find a nice puddle of fucking gutter water to rinse this bitch off with". He proceeds to drag the flag through several puddles while talking to the flag. This video is inadmissible under the 1st amendment, F.R.E. 401, 402, 403 and F.R.E. 801 and 802., 404(b) and cumulative.

Exhibit 131: Youtube #FYF911 #FuckYoFlagTour #JusticeOrElse

This video starts with the gathered crowd saying black power. The defendant says "officially, 9/11 is fuck yo flag day". The group is discussing the death of a young woman named Sandra Bland. Several obscenities are shouted, such as: "fuck that flag, fuck the police, shout out to anonymous". The group proceeds to burn the flag. This video is inadmissible under the 1st amendment, F.R.E. 401,402,403 and F.R.E. 801 and 802, 404(b), and cumulative.

Exhibit 132: Youtube #MKERiots #SylvilleSmith(1)

This is a duplicate of Exhibit 49, same objection.

Exhibit 133: Youtube #MKERiots #SylvilleSmith(2)

This is a duplicate of Exhibit 48, same objection.

Exhibit 134: Youtube #MKERiots #SylvilleSmith(3)

This is a duplicate of Exhibit 43, same objection.

Exhibit 135: Youtube #MKERiots #SylvilleSmith(4)

This is a duplicate of Exhibit 44, same objection.

Exhibit 136: Youtube #MKERiots #SylvilleSmith(5)

This is a duplicate of Exhibit 45, same objection.

Exhibit 137: Youtube #MKERiots #SylvilleSmith(6)

This is a duplicate of Exhibit 46, same objection.

Exhibit 138: Youtube #MKERiots #SylvilleSmith(7)

This is a duplicate of Exhibit 47, same objection.

Exhibit 139: Youtube #MKERiots #SylvilleSmith(8)

This is a duplicate of Exhibit 41, same objection.

Exhibit 140: Youtube #MKERiots #SylvilleSmith(9)

This is a duplicate of Exhibit 42, same objection

Exhibit 141: Youtube #MKERiots #SylvilleSmith(10) – no objection

This is a recording of a news clip. The headline reads: "activists rescue employees trapped during fire". The news anchor describes how the defendant and two other people "jumped into action" to save various individuals from the burning BP station.

Exhibit 142: Youtube #CBID – Claim Black Independence Day & #FYF911 – Libation & JumpOff

This video features a group of people saying black power. The defendant is holding what appears to be a Molotov cocktail made with an American flag. The group proceeds to burn the American flag and a bible. The content of this video is highly prejudicial and is not admissible under the 1st amendment, F.R.E. 401, 402, 403 and F.R.E. 801 and 802, 404(b) and cumulative.

Exhibit 143: Youtube #MKERiots SylvilleSmith(11)

This is a duplicate of Exhibit 40, same objection

Exhibit 144: What does Black Power and Militancy Look Like?

The defendant discusses "beating previous charges" when he was previously arrested. He talks about Malcom X and Black Panther Party. There is a focus on the meaning of power and how power doesn't necessarily require weapons or violence, but he does encourage people to fight back. The defendant also calls white people crackers several times. This video is inadmissible under the 1st amendment, F.R.E. 401, 402, 403, 801, and 802, 404(b), and cumulative. This has inadmissible statements of previous arrest.

Exhibit 145: Youtube Baltimore (1)

This is a video of the defendant speaking to an unnamed individual. This video is inadmissible under F.R.E. 401 and 402.

Exhibit 146: Youtube Fuck Yo Flag Day #FYF911

The defendant starts the video by saying black power. He and several other individuals have American flags laid out as a doormat and all over the staircase. They proceed to walk across and mock the various flags. This video is inadmissible under the 1st amendment, and F.R.E. 401, 402, 403, 801 and 802, 404(b), and cumulative.

Exhibit 147: Youtube #CBID – Claim Black Independence Day & #FYF911 Libation & JumpOff

This video is duplicative of Exhibit 142, same objection.

Exhibit 148: Youtube #CBID – Claim Black Independence Day & #FYF911 – Burning Items

This is a different angle of Exhibit 142. The group is burning the bible, the American flag, and American flag themed clothing. This video is inadmissible under the 1st amendment, as well as F.R.E. 401, 402, 403, 801 and 802, 404(b), and cumulative. It is also semi-duplicative of exhibit 142.

Exhibit 149: Youtube Black on Black crime an excuse for death by cops_#JusticeOrElse #FYF911

The defendant discusses stop the violence campaigns and vigils. He argues against the idea of black-on-black crime being a problem due to the inequity of the justice system. The defendant mentions how when black people shoot each other they go to jail, however when cops shoot black people nothing typically happens to them. Additionally, he states: "we are extremely against white people, and especially white police officers, or any police officer that shoots a black person and doesn't go to jail". This video is highly prejudicial and inadmissible under the 1st amendment, and F.R.E. 401, 402, 403, 801, and 802, 404(b), and cumulative.

Exhibit 150: Youtube #FYF911 Milwaukee – Walking through West Allis

The defendant is shown dragging the American flag and Wisconsin flag through West Allis. He is also carrying a flag that has already been burned. The defendant repeatedly makes the following statements: "fuck your flag 9/11", "trying to find where a bunch of these motherfuckers at so I can wreak some havoc over here". The defendant explains he chose West Allis for his protest because a 16-year-old black kid was choked to death by three white men while stealing wine coolers from a store. This video is inadmissible under the 1st

amendment, as well as F.R.E. 401, 402, 403, 801, and 802, 404(b), and cumulative.

Exhibit 151: YouTube Goddess Aayanna & Vaun Mayes ~ the Milwaukee Uprising

This is an interview of the defendant in which he discusses the gas station incident and the death of Sylville Smith. It is inadmissable under the 1st amendment, as well as F.R.E. 401, 402, 403, 404(b) 801, 802, and cumulative.

Exhibit 152: YouTube New Oct 12(2)

This is a video of the defendant discussing rioters speaking to the police about the night of the BP arson. It is inadmissable under the 1st amendment, as well as F.R.E. 401, 402, 403, 404(b) 801, 802, and cumulative.

Exhibit 153: YouTube August 14 2016(2)

This is a video the defendant filmed the night of the riots. It shows a large group of people protesting while chanting "our street". It is inadmissable under the 1st amendment, as well as F.R.E. 401, 402, 403, 404(b) 801, 802, and cumulative.

Exhibit 154: YouTube August 14, 2016 (1)

This is a video, filmed by the defendant, on an on-fire police car. He is warning people to get away from the car as it is going to blow. This video is inadmissable under the 1st amendment, as well as F.R.E. 401, 402, 403, 404(b) 801, 802, and cumulative.

Exhibit 155: YouTube #BPPvsKKK

This is a video of the defendant discussing his political views. He makes several statements such as claiming he is "very into the panthers". He clarifies that he is not advocating for violence but rather self-defense. The video is inadmissable under the 1st amendment, as well as F.R.E. 401, 402, 403, 404(b) 801, 802, and cumulative.

Exhibit 156: YouTube August 14, 2016(3)

This is a video, filmed by the defendant, of the police and crowds the night of the riot. It is inadmissable under the 1st amendment, as well as F.R.E. 401, 402, 403, 404(b) 801, 802, and cumulative.

-29-

<u>Exhibit 157:</u> YouTube the park program in Milwaukee

This video is duplicative of exhibit 220, same objection.

<u>Exhibit 158:</u> YouTube January 21, 2017

This is a video of the defendant and several other individuals speaking to employees and the owner of the BP gas station. Several people inside the station are armed and the police are called by someone outside the gas station. The video is inadmissable under the 1st amendment, as well as F.R.E. 401, 402, 403, 404(b) 801, 802, cumulative, and relevancy.

Exhibit 159: No objection

Exhibit 160: Failure to identify relevant portions of a voluminous exhibit, relevance

Exhibit 161: No objections

Exhibit 162: No objections

Exhibit 163: No objections

Exhibit 164: No objections

Exhibit 165: No objections

Exhibit 166: No objections

Exhibit 167: Failure to identify relevant parts of a voluminous exhibit.

Exhibit 168: No objections

<u>Exhibit 169:</u> Audio 12.30.16 Alberta Marie Weeks Statement

This is an interview of the ex-girlfriend of Corey Miles. She is asked what else was at the park besides the grill, she informs the officers that she observed coolers, bread, and buns for the hamburgers. They asked if there would be gasoline at the park for any reason, she said no and that they always used lighter fluid. When asked if there was a generator, she said doesn't remember. The officers asked if she recalls gasoline cans ever being at the park, and she says she doesn't think they would have needed them. When asked what the group did with trash and recycling, she said garbage would go in the park's trash cans, bottles would go in the trash can or on the ground. She was asked whether there was a recycling box and replied no. This recording is inadmissible under F.R.E. 401, 402, 403, 801, 802, and 804.

-30-

<u>Exhibit 170:</u> Charles Edwards jail calls

FRE 801, 802, hearsay confrontation, failure to identity relevant portions of a voluminous exhibit.

<u>Exhibit 170:</u> Charles Edwards Jail Calls

These recordings are inadmissible under F.R.E. 401, 402, 403, 801 and 802: objection to the portion attributable to other declarants.

<u>Exhibit 171:</u> Audio 1.4.17 Corey Miles Interview

FRE 801 and 802.

Exhibit 172: Audio 8.29.16 Mayes Interview – no objection

Exhibit 173: Audio 9.20.16 Mayes Statement – no objection

<u>Exhibit 174:</u> Audio Quinn Taylor Interview 1.26.17

FRE 801 and 802

<u>Exhibit 175:</u> Audio Quinn Taylor Interview 6.22.17

FRE 801 and 802

<u>Exhibit 176:</u> FRE 402 Lack of Probative Value / FRE 801 / FRE 802 / FRE 401 / FRE 403

Photo of text messages with a "Gab Taylor". These texts are from Aug 20, a week after the incidents that are the subject of the government's case. Moreover, these texts do not seem to pertain to any issue of consequence in this case.

<u>Exhibit 177:</u> Video Mayes Facebook Statement on SW 8.30.2016

The defendant is talking to the camera about how someone is talking to the police and states "we going to figure out who the fuck it is". He shows the search warrant to the camera. This video is inadmissible under the 1st amendment, F.R.E. 401, 402, 403, 801, 802, and 404(b).

<u>Exhibit 178:</u>

This is a facebook post by the defendant in which he makes fun of a police officer who is pictured having fallen down. The photo is inadmissible under the 1st amendment, F.R.E. 401, 402, 403, 801, 802, 404(b), and relevance.

<u>Exhibit 179:</u> Video Mayes FB 8.13.2016 1718

This is a video, filmed by the defendant, showing the police barricade the day Sylville Smith was killed. Fighting breaks out and it is unclear who exactly is involved. The video is inadmissable under the 1st amendment, as well as F.R.E. 401, 402, 403, 404(b) 801, 802, and cumulative.

Exhibit 180: Video Mayes FB 8.13.2016 1739

The defendant is filming police and crowds the day of the Sylville Smith shooting. This video is inadmissible under the 1st amendment, as well as F.R.E. 401, 402, 403, 801 and 802.

Exhibit 181: Video Mayes FB 8.13.2016

The defendant is filming police and crowds. There is a man in the video shouting "fuck the police" and "dumbass n***as killed my little cousin". This video is inadmissible under the 1st amendment, as well as F.R.E. 401, 402, 403, 801, 802, and 404(b).

Exhibit 182: Video Mayes FB 8.13.2016 2138

The defendant is filming the BP station on the night of the fires. He shouts: "they is fucking up the gas station…Milwaukee is going up tonight fam". The defendant is laughing at people stealing from the gas station. This video is inadmissible under the 1st amendment, as well as F.R.E. 401, 402, 403, 801, 802, 404(b) and cumulative.

Exhibit 183: Video Mayes FB 8.13.2016 2339

The defendant is filming police at Sherman Park. He states: "the kids did not set the gas station on fire, it started from the riots from the police shooting and you know a couple police cars got fucked up and then people moved on to the gas station because like I said we go in the gas station today and the motherfucker who shot at the kids or around the kids or whatever the fuck he did – he was at work today. You know what I'm saying? They said he was fired, all this shit, you know what I'm saying?" This video is inadmissible under the 1st amendment, as well as F.R.E. 401, 402, 403, 801, 802, 404(b) and cumulative.

Exhibit 184: Video Mayes FB 8.14.2016 0033

This video starts with the defendant saying, "black power in this motherfucker, Marie we on 35th". He is filming the police station and bank, taunting the police, filming cops holding assault rifles, as well as calling them motherfuckers and

-32-

idiots. This video is inadmissible under the 1st amendment, as well as F.R.E. 401, 402, 403, 801, 802, 404(b) and cumulative.

Exhibit 185: Video Mayes FB 8.15.2016 1959 – no objection

The defendant is filming a crowd of people and the police. The police are shouting at people to get back and the defendant calls them "bitch ass n***as". He breaks up an altercation between a few men, tells some people to calm down, as well as tries to get the crowd to move away from the officers and stop talking to them. Someone mentions that Kenyari Montgomery was arrested. The defendant is filming the police but not interacting with them directly.

Exhibit 186: Video Mayes FB 8.15.2016 2150

The defendant is talking to a woman and her nephew about community patrols. There is a mention of Charles Edwards. This video is inadmissible under F.R.E. 401, 402, 403, 801, 802, and cumulative.

Exhibit 187: Video Mayes FB 8.15.2016 2204 – no objection

Exhibit 188: Video Mayes FB 8.30.2016 1834

This is a longer version of Exhibit 177, same objection. This video is inadmissible under F.R.E. 401, 402, 403, 801, and 802.

Exhibit 189:

Appears to be blank. Downloading the file only results in multiple error messages and no image is visible.

Exhibit 190: FRE 402 Lack of Probative Value / FRE 401 / cumulative

Screengrab of a Facebook video. The video appears to be film of a police line. This exhibit does not have a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Exhibit 191: FRE 402 lack of probative value / FRE 401

Appears to be a screenshot of a video from Facebook. Screenshot does not show any image from the video and therefore has no probative value.

Exhibit 192: 1st Amendment/ FRE 402 Lack of Probative Value/ FRE 403 Undue Prejudice / FRE 401 / cumulative

-33-

A Facebook post that identifies the officer that shot Syville Smith. The content of the statement is protected speech. The presentation of the screenshot does not have any probative value and would serve to inflame the passions of the jury leading to undue prejudice.

Exhibit 193: 1st Amendment/ FRE 402 Lack of Probative Value/ FRE 403 Undue Prejudice

A Facebook post referencing Mr. Mayes' release from custody. Due to the reference to being in custody it inherently contains a danger of undue prejudice. This post does not contain any probative value to the issues in this case. Finally, the post also contains protected political speech as it references "Black Power".

Exhibit 194: Video Mayes FB 8.04.2016 1713

This is a video of the defendant with Charles in the background. He is discussing the concept of "sovereignty" in relation to a young black woman who was killed by police. This video is inadmissible under the 1st amendment, as well as F.R.E. 401, 402, 403, 801, 802, 404(b), and cumulative.

Exhibit 195: Video Mayes FB 8.9.16 1653

This is another video of the defendant live-streaming at Sherman Park. He hands the phone over to another guy who talks for a while and then hands the phone back to the defendant. They're talking about a police officer by the name of Tinsley that's been bothering their community. The defendant films the picnic table which is covered in cardboard boxes and coolers. This video is inadmissible under the 1st amendment, as well as F.R.E. 401, 402, 403, 801, 802, and cumulative.

Exhibit 196: Video Mayes FB 8.09.2016 1804

This is a video at Sherman park which shows a cardboard box filled with glass bottles and a grill. The defendant explains they're hosting a fish fry. This video is inadmissible under the 1st amendment, as well as F.R.E. 401, 402, and 403.

Exhibit 197: Video Mayes FB 8.10.2016 1925

The defendant is filming police officers and a crowd that has gathered. Someone mentions that an officer by the name of Tinsley arrested "Quinn". There is a back and forth between the defendant and a police officer. This video is inadmissible

under the 1st amendment, as well as F.R.E. 401, 402, 403, 801, and 802.

**Exhibit 198:** Video Mayes FB 8.06.2016 1345

This video shows a bunch of items at Sherman park, including lighter fluid. The police show up near the end of the video. This video is inadmissible under the 1st amendment, as well as F.R.E. 401, 402, 403, 801, and 802.

**Exhibit 199:** Video Mayes FB 8.14.2016 1033

The defendant films a barricade of police officers. This video is inadmissible under the 1st amendment, as well as F.R.E. 401, 402, 403, 801, and 802.

Exhibit 200:

**Exhibit 201:** 1st Amendment/ FRE 403 Undue Prejudice / FRE 401 / FRE 402 / cumulative / 404(b) other acts

Facebook post wherein Mr. Mayes expresses his views on the circumstances that led to the death of Syville Smith. This post is dated from August 15, days after the events at question in this case. Mr. Mayes is engaging in protected speech by discussing his views about the circumstances that lead to Mr. Smith's death. Morever, because the post is from several days after the relevant events to this case it would simply serve to inflame the passions of the jury and result in undue prejudice against Mr. Mayes.

**Exhibit 202: Hightire Interviews** – **can't open**

**Exhibit 203** – failure to identify the specific portion of a voluminous document

**Exhibit 204** - failure to identify the specific portion of a voluminous document

**Exhibit 205 -** failure to identify the specific portion of a voluminous document

**Exhibit 206 –** failure to identify the specific portion of a voluminous document

**Exhibit 207 -** failure to identify the specific portion of a voluminous document

**Exhibit 208 –** failure to identify the specific portion of a voluminous document

-35-

Exhibit 209 - failure to identify the specific portion of a voluminous document

Exhibit 210 - failure to identify the specific portion of a voluminous document

Exhibit 211 - failure to identify the specific portion of a voluminous document

Exhibit 212 - failure to identify the specific portion of a voluminous document

Exhibit 213 - failure to identify the specific portion of a voluminous document

Exhibit 214: Issues with getting videos to play

Exhibit 215: Video Mayes and Edwards at Citgo

This is gas station security footage with no audio on it. This video is inadmissible under the 1st amendment, as well as F.R.E. 401, 402, 403, 801, and 802.

Exhibit 216: Issues with getting videos to play

Exhibit 217: MPD Body Camera Videos (After 2030 hrs on 8.13.16)

Failure to identify specific portion of voluminious materials

Exhibit 218: Surveillance Video from Charles Edwards Apartment Building - **can't open**

Exhibit 219: Youtube The Many Faces of Vaun

Interview of Van expressing his discontent with America and its values, defends standing on the flag and explains why he started doing it. This is inadmissible under FRE 401, 402, 403, 404(b) and cumulative.

Exhibit 220: Youtube Mayes Speaks Park program

This is an hour-long video between Mayes and an older man. They are discussing his park program and various community issues. The other man participating in the discussion uses derogatory language towards various groups, and appears to hold opinions which might come off as prejudicial. This video is objectionable on 1st amendment and relevancy grounds.

Exhibit 221: Derobertis Johnson Facebook Records

Objection to the portions which are hearsay and not relevant, F.R.E. 401, 402, 403, 801, and 802. Also an objection for

-36-

failure to identify the specific portion of a voluminous document.

Exhibit 222: Audio Derrick Madlock Statement 2.09.2017

Objection to the portions which are hearsay and not relevant, F.R.E. 401, 402, 403, 801, and 802. The recording contains 404(b) info about the defendant.

Exhibit 223: Audio Derrick Madlock Statement 3.24.2017

Objection to the portions which are hearsay and not relevant, F.R.E. 401, 402, 403, 801, and 802. The recording contains 404(b) information about the defendant.

Exhibit 224: Video Derrick Madlock

Objection to the portions which are hearsay and not relevant, F.R.E. 401, 402, 403, 801, and 802. The video contains 404(b) information about the defendant.

Exhibit 225: No objection

Exhibit 226: Business Records Certification 414-419-8840 Edwards

Results are presented in Excel spreadsheets that number over 1,500 entries. The government has not provided any specificity as to what documents they would intend to introduce. Therefore, defense cannot respond with any specific objections.

Exhibit 227: No objection

Exhibit 228: Distorted image

Exhibit 229: Video FB Charles Edwards 8.13.16 1732 hrs

This is a video of Charles Edwards livestreaming from Sherman park. This video is inadmissible under F.R.E. 401, 402, 403, 801, 802, 804, and confrontation.

Exhibit 230: Video FB Charles Edwards 8.13.2016 1747 hrs

This is a video of Charles Edwards livestreaming from Sherman park and talking about tacos. He shows lighter fluid on the table. This video is inadmissible under F.R.E. 401, 402, 403, 801, 802, and 804, confrontation.

Exhibit 231: Video FB Charles Edwards 8.15.2016 2005 hrs

Charles Edwards livestreaming a large police presence. This video is inadmissible under F.R.E. 401, 402, 403, 801, 802, and 804, confrontation.

**Exhibit 232:** Video FB Charles Edwards 8.15.2016 2010 hrs

Charles Edwards livestreaming the police. This video is inadmissible under F.R.E. 401, 402, 403, 801, 802, and 804, confrontation.

**Exhibit 233:** Video FB Charles Edwards 9.08.2016 1606 hrs

Charles livestreaming from Sherman Park and hanging out with his dog. He talks about commitment and loyalty. He makes the following statement: "anything I say may be scrutinized as something else". Finally, he mentions having kids over to his house the previous night. This video is inadmissible under F.R.E. 401, 402, 403, 801, 802, and 804, confrontation.

Exhibit 234: No objections

Exhibit 235: No objections

**Exhibit 236:** MPD Body Camera Videos (After 2030 hrs on 8.13.16)

This is a duplicate of Exhibit 217, same objection.

**Exhibit 237:** Video Mayes FB 8.04.2016 1713

This is a duplicate of Exhibit 194, same objection.

**Exhibit 238:** Video Mayes FB 8.09.2016 1653

This is a duplicate of Exhibit 195, same objection.

## DEFENSE WITNESSES AND EXHIBITS

The defendant's witness list and exhibits have placed the government on notice that it seeks to admit evidence pursuant to F.R.E. 404(b), 405(a), and 405(b). Many of the defense exhibits would be permissible pursuant to those provisions even if the government did not seek to introduce prohibited bad character propensity evidence. The theory of the government amply justifies the admission of other acts evidence and reputation testimony

-38-

through the witnesses and exhibits submitted to the government. They will cumulatively establish the defendant's reputation for truthfulness and honesty. It will further establish his reputation for non-violence. The evidence will additionally counter the assertion the defendant has repeatedly espoused statements deemed to be anti-police and anti-government. The evidence will refute the government's theory and proffered witness testimony that the defendant has a propensity for violent acts and incendiary rhetoric. It will directly refute the government's assertion that the defendant intentionally engaged in the acts charged in the complaint. The defense witnesses will testify additionally with respect to specific acts consistent with the aforementioned character evidence. Other evidence is admissible pursuant to F.R.E. 405(a) and 405(b).

In this matter, Mr. Mayes' character or character traits are an essential element of the charges, claims, and defenses. As such, specific relevant instances of a person's conduct are admissible.

---

## OTHER PRE-TRIAL MOTIONS IN LIMINE

---

## JURY SELECTION

Pursuant to F.R.C.P. 24(a)(1) the defendant seeks permission from the court to examine perspective jurors. The circumstances underlying the case at bar evolved from a highly publicized series

of events in 2016. The government seeks to admit evidence of the defendant's social activism and involvement relating to various racially charged events. The government will attempt to portray Mr. Mayes as an anarchist, insurrectionist, proponent of violence, or all of the above. The underlying circumstances which gave rise to the claimed conspiracies have marked racial overtones. Attitudes of jurors with respect to black culture, activism, and freedom of speech and expression will be center court in this trial. The testimony will require jurors to consider evidence without prejudice, biases, or other predilections against people of color, as well as individuals who are involved in community protests.

The defense will present testimony of witnesses who have spoken in racially charged language and who have expressed negative opinions about law enforcement and the disparity of justice in Milwaukee. The witnesses will utilize language which could easily be perceived as offensive. As such, jurors may allow their responsibility of deciding guilt or innocence to be based on their relative position regarding the cultural divide in this country. These are but a mere sampling of the issues that are unique to this case and that must be developed through individual voir dire conducted by the defendant. While the court has the inherent knowledge and skill to conduct voir dire, the familiarity with the underlying facts, circumstances, and nuances possessed by defense counsel necessitates granting the instant request.

-40-

## SEQUESTRATION OF WITNESSES

The defendant seeks to sequester witnesses pursuant to F.R.E. 615. The defendant further seeks an order prohibiting an exemption for law enforcement officials who have conducted the investigation in this case and the taking of witnesses' statements, as provided in F.R.E. 615(b). It is requested that the prosecution designate, in advance of trial, the individuals it seeks to exempt.

## VOUCHING

The defendant seeks an order prohibiting the prosecutor from expressing his personal opinions regarding the credibility of witnesses or the guilt of the accused. *Kappos v. Hanks*, 54 F.3d 365, 367 (7th Cir 1995), and *United States v. Brasher,* 962 F.3d 254, 269(7th Cir. 2020). The defendant also seeks an order prohibiting the prosecution from offering evidence, constituting "Bolstering", solely for the purpose of enhancing a witnesses' credibility before it is attacked. See, *United States v. Lindemann*, 85 F.3d 1232, 1242 (7th Cir. 1996).

## PRIOR CONVICTIONS

The defendant seeks an order from the court prior to the commencement of trial to determine whether any perspective witness may be impeached by use of prior convictions in accordance with F.R.E. 609(a)(b) and (d).

## CO-CONSPIRATOR STATEMENTS

The defendant seeks an order from the court requiring the

-41-

prosecution to immediately disclose any statement which it intends to introduce as that permitted by F.R.E. 801(d)(2)(E). The discovery in this matter reveals statements which it is anticipated will be proffered as those of a co-conspirator. The defendant previously filed a motion seeking disclosure of unindicted co-conspirators to assist in determining what statements may fall under the ambit of F.R.E. 801. The government has not provided such list.

Of unique significance to the instant matter is the fact that one of the alleged co-conspirators, who has not been charged in the indictment, but has been charged in a separate matter, is Charles Edwards. Mr. Edwards, certainly from the view of the defendant, was the mastermind of any theoretical conspiracy. The various governmental witnesses claim that Molotov cocktails were assembled at Edwards' residence on August 15th, 2016. They place Edwards in the very thick of the plan which he theoretically hatched to assault the 7th District Police Station. In 2022, Edwards died. If the government still seeks admission of Edwards' statements, this issue should be addressed well before trial, as it has significant evidentiary and constitutional implications. As such, the defendant requests that the court conduct a Santiago Hearing for each of the claimed hearsay exceptions under the co-conspiracy rule. *United States v. Santiago*, 582 F.2d 1128, 1131(7th Cir. 1978) and *United States v. Stephenson*, 53 F.3d 836, 842 (7th Cir. 1995).

The obvious purpose of this hearing is to determine the three prerequisites for admission as set forth in *United States v. Dekelaita*, 875 F.3d 855, 860-61 (7th Cir. 2017): (1) a conspiracy existed, (2) the defendant and declarant were members thereof, and (3) the proffered statements were made in furtherance of the conspiracy. The facts of this case are unique in that the admissibility may be crucial to both parties in their objective of seeking acquittal or conviction. This is a matter in which the court should not delay the determination of admissibility and conditionally admit testimony subject to it being stricken later on. *United States v. Hunt*, 272 F.3d 488, 494 (7th Cir. 2001). Conditional admission could well lead to a mistrial. *United States v. Haynie,* 179 F.3d 1048, 1050 (7th Cir. 1999).

## PRECLUDE THE USE OF THE WORD RIOT

The defendant seeks to preclude the prosecution from using the word "riot" in its case against the defendant. Whether or not the defendant promoted, participated in, or even knew of rioting around the city of Milwaukee is an issue for the jury to decide. The prosecution's use of the term throughout the trial will unnecessarily prejudice the defendant, and is a legal conclusion.

## PRECLUDE ANY REFERENCE TO ANTI-GOVERNMENT EXTREMIST GROUPS

The defendant seeks an order preventing any reference to anti-government extremist groups. These include, but are not limited to: We All We Got, The People's Revolution, Moors, Muslim Extremists,

-43-

The Original Black Panther Party, The Revolutionary Black Panther Party, and the Black Lives Matter Movement. These groups are typically thought of as consisting of individuals with radical and violent tendencies. Any opinion one may have regarding these groups will be wholly based on outside information that neither the government nor the defense can control. Additionally, the information potential jurors may possess related to these groups runs significant risk of not being entirely accurate or objective. These opinions will lead the defendant to be unduly prejudiced should he be referred to in conjunction with any of these organizations.

**OTHER ACTS EVIDENCE**

The defendant seeks an order requiring the government to immediately disclose any evidence which may constitute conduct permitted under F.R.E. 404(b)(3). Such notice should identify the purpose for which the prosecutor intends to introduce the evidence. A review of the prosecution's exhibits clearly reflect certain material which falls under the rubric of evidence which is prohibited. Granting the instant request will require the government to provide, in advance, what statements, testimony or physical evidence it believes is allowable pursuant to the rule. The court can then conduct an analysis to determine whether the analysis set forth in *United States v. Gomez* has been met. *United States v. Gomez* 763 F.3d 845(7th Cir. 2014). The *Gomez* court

summarized the new rule as follows:

> "[T]o overcome an opponent's objection to the introduction of other-act evidence, the proponent of the evidence must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way. See Fed.R. Evid. 401, 402, 404(b). Other-act evidence need not be excluded whenever a propensity inference can be draw (*sic*). But its relevance to "another purpose" must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case. If the proponent can make this initial showing, the district court must in every case assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and may exclude the evidence under Rule 403 if the risk is too great. The court's Rule 403 balancing should take account of the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case." *Gomez*, 763 F.3d Act 860.

### BRADY/KYLES/WHITLEY

On July 9th, 2018, the defendant made specific demands upon the government for disclosure of Brady/Giglio/Agurs/Bagley and Kyles/Whitley materials. To date, there has been no response which provides the information sought in the July request or which states that none exists. *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), *United States v. Bagley*, 473 U.S. 667 (1985), *United States v. Agurs* 427 U.S. 97 (1976), *Kyles v. Whitley* 514 U.S. 419 (1995). (See attached July 9th letter) A further request was transmitted on December 21st, 2023, reiterating the previous demands (see attached email). No response has been received to the second correspondence.

It is readily apparent that many of the government's witnesses

-45-

have significant criminal histories and have been recently charged or sentenced for various offenses. It is also apparent that some of the witnesses are cooperating pursuant to a proffer agreement. Moreover, the specific request in the defense correspondence seeks information which is highly probative of these witnesses' lack of credibility and motive to fabricate. The extensive reliance by the government on cooperators make disclosure even more imperative than under normal circumstances. The request of the defendant seeks to have the prosecutor comply with its affirmative duty to disclose exculpatory evidence and "learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." See Crivens v. Roth 172 F.3d 991, 996 (7th Cir. 1990), quoting Kyles v. Whitley 514 U.S. 419, 432 (1995).

Additionally, several of the witnesses have been involved in multiple state criminal matters resulting in a variety of dispositions. Therefore, it is incumbent upon the government to obtain exculpatory evidence controlled by state authorities. U.S. v. Hamilton 107 F.3d 499, 510 (7th Cir. 1997) Immediate disclosure of the material requested is essential to ensuring that the defendant has been accorded due process of law. See Hamilton at 509, U.S. v. Souffront 338 U.S. 819 (7th Cir. 2003).

Dated at Milwaukee, Wisconsin this 28th day of March, 2024.

Respectfully submitted,

/s/ *Robert G. LeBell*

-46-

Robert G. LeBell, SBN 01015710
Attorney for Defendant
788 N. Jefferson St, Suite 740
Milwaukee, WI 53202
(414) 276-1233
dorbell@ldm-law.com

-47-