UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                         Case No. 18-CR-154 (PP)

VAN L. MAYES,

        Defendant.

_____

**Government's Consolidated Motions in Limine**

_____

The United States of America, by its attorneys Gregory J. Haanstad, United States Attorney for the Eastern District of Wisconsin, and Christopher Ladwig and Benjamin Taibleson, Assistant United States Attorneys, hereby moves the Court as follows.

I.    **Motion to Allow Introduction of Social Media Evidence as Direct Evidence, Pursuant to Federal Rule of Evidence 401, or Alternatively as Other Acts Evidence, Pursuant to Federal Rule of Evidence 404(b)**

    **A. Background on Disputed Social Media Evidence**

The government conferred with defense counsel and informed them of our intent to present video and picture evidence from the following two categories:

- Category 1: (a) business surveillance videos from the BP Gas Station, BMO Harris Bank, PJ's Supermarket, MJM Liquor, and Big Jim's Liquor between August 13 and August 15, 2016; (b) Milwaukee Police Department body camera footage between August 13 and August 15, 2016; and (c) news footage, social media, and federal law enforcement video of the civil disorder and damage between August 13 and August 15, 2016.

- Category 2: Social media videos and pictures showing the defendant's activity and statements from 2014 – 2016.

Category 1 evidence is relevant and direct evidence of civil disorder activity between August 13-16, 2016.

Category 2 evidence is relevant and direct evidence or admissible other acts evidence of the defendant's motive, location, opportunity, intent, preparation, plan, knowledge, connection to coconspirators, and/or identity for Counts Four, Five, Six, and Seven in the Superseding Indictment. Most of the videos show the defendant's location, encouragement of civil disorder activity, witness intimidation, use of his cellphone and social media, connections to coconspirators, and/or participation in the civil disorder between August 13 and August 15—all of which is evidence needed to meet the elements of the crimes indicted. The remaining videos and pictures are statements from the defendant showing his motive, intent, preparation, plan, and/or connection to coconspirators. Category 2 evidence shows the defendant's anti-government, anti-police, racial animus, and/or intent to use violence to achieve black power or what he perceived as racial justice that led up to his actions in August 2016.

The videos and pictures Category 2 are the focus of the defendant's concern, so the government has provided two theories of admissibility: (1) direct evidence, pursuant to Fed. R. 401, 403; and (2) other acts evidence, pursuant to Fed R. Evid. 404(b), 403. Furthermore, the government has elaborated below on the content of Category 2 evidence and provided the Court with copies of the exhibits for further review.

## B. Applicable Law: Fed. R. Evid. 401

Whether evidence is relevant is a low threshold. *United States v. Driggers*, 913 F.3d 655, 658 (7th Cir. 2019). Relevant evidence is that which "has any tendency to make a fact … of

consequence" any "more or less probable than it would be without the evidence." Fed. R. Evid. 401. A fact of consequence includes one that is "ultimate, intermediate, or evidentiary." Fed. R. Evid. 401 advisory committee's notes. Consequently, what must be proven at trial in this case is germane to the relevance inquiry. Rule 403 gives judges discretion to exclude relevant evidence "if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The defendant is charged with four crimes: (1) civil disorders (18 U.S.C. § 231(a)(1)) on August 15, 2016; (2) possession of a destructive device by a felon (18 U.S.C. § 922(g)(1)) on August 15, 2016; (3) manufacturing a destructive device (26 U.S.C. §§ 5822 and 5861(f)) on August 15, 2016; and (4) witness intimidation (18 U.S.C. § 1512(b)(3)) between August 30, 2016, and May 1, 2019. Under Fed. R. Evid. 401, the evidence need only affect a fact "of consequence," which includes any ultimate fact.

The evidence in Category 1, which shows the civil disorder activity, adds context and is germane to elements the government must prove, including that there was an ongoing civil disorder[1]. The evidence in Category 2 is also germane to the elements that the government must prove; and in addition, the evidence also shows the defendant's motive, location, opportunity, intent, preparation, plan, knowledge, connection to coconspirators, and/or identity for making and possessing Molotov cocktails, participating in civil disorders, and witness intimidation[2].

---

[1] The government will not introduce hours of general civil disorder footage that does not specifically show the defendant participating in civil disorder activity. Rather, it will show brief portions to show the civil disorder was occurring.

[2] The government does not seek to introduce this evidence to prove character, a character trait, or conduct in conformity on a particular occasion. *See generally* Fed. R. Evid. 404.

## C.  Applicable Law: Fed. R. Evid. 403

Rule 403 allows a judge to exclude relevant evidence "if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Because the law favors the admission of all relevant evidence, exclusion under Rule 403 "is 'an extraordinary remedy [that] should be used sparingly.'" *United States v. Watson*, 766 F.3d 1219, 1241 (10th Cir. 2014).

Most "relevant evidence is, by its very nature, prejudicial." *United States v. Boswell*, 772 F.3d 469, 476 (7th Cir. 2014). Therefore, only evidence which creates an *unfair* prejudice, not mere prejudice, should be excluded under a Fed. R. Evid. 403 analysis. *See United States v. Buckner*, 91 F.3d 34, 36 (7th Cir. 1996). Fed. R. Evid. 403 advisory notes define unfair prejudice as having "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." The Court of Appeals noted an important issue in Fed. R. Evid. 403 analysis is "the extent to which the non-propensity factual proposition actually is contested in the case." *United States v. Gomez*, 763 F.3d 845, 857 (7th Cir. 2014). The more probative the evidence, the more a court will tolerate prejudice. *United States v. Earls*, 704 F.3d 466, 471 (7th Cir. 2012) (citing *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012)); *United States v. Curry*, 79 F.3d 1489, 1496 (7th Cir. 1996).

In this case, evidence in Category 1 provides context and is germane to elements the government must prove—it is highly probative. The evidence in Category 2 shows the defendant's location, participation in a civil disorder, and motive for participating in a civil disorder—again, it is highly probative. Any risk of prejudice that would result from admitting this evidence is far outweighed by its probative value. Generally, this evidence should be admitted; however, to the

extent that the Court is concerned about unduly prejudicing the defendant, the government suggests addressing that concern via a limiting instruction.

### D. Applicable Law: Fed. R. 404(b)

Federal Rule of Evidence 404(b) excludes evidence of other crimes, wrongs, or acts if the purpose is to show a person's propensity to behave in a certain way, but other-act evidence may be admitted for "another purpose" including, but not limited to, "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *United States v. Gomez*, 763 F.3d 845, 855 (7th Cir. 2014). The Rule excludes evidence if its relevance to "another purpose" is established only through the forbidden propensity inference. *Id.* at 856. The admission must be supported by some "propensity-free chain of reasoning." *Id.* The district court "should not just ask whether the proposed other-act evidence is relevant to a non-propensity purpose but how exactly the evidence is relevant to that purpose—or more specifically, how the evidence is relevant without relying on a propensity inference." *Id.*

If the proponent demonstrates that the evidence is relevant to a legitimate purpose, the district court must then use Rule 403 to determine "whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice," taking into account "the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case." *United States v. Brewer*, 915 F.3d 408, 415 (7th Cir. 2019).

If the Court finds evidence in Category 2 is not direct evidence of the crimes, then the evidence should be admitted, pursuant to Fed. R. Evid. 404(b), for the allowable purposes of showing motive, location, opportunity, intent, preparation, plan, knowledge, connection to coconspirators, and/or identity. Because Category 2 evidence is highly probative, and it substantially outweighs any risk of unfair prejudice. To the extent that the Court is concerned about

unduly prejudicing the defendant, the government suggests addressing that concern via a limiting instruction.

### E. Application of Fed. R. 401, 403, and 404(b) to Category 2 Evidence

Category 2 evidence consists of the defendant's own words, thoughts, and pictures, which were captured on his cellphones, YouTube account, and Facebook account. Several of the defendant's pictures and videos were publicly posted on social media. Many of these videos and pictures were contemporaneous with the civil disorder, and all the evidence is direct evidence or admissible through other acts evidence. A brief description of the evidence in Category 2 and the allowable purpose for admissibility is below. The government also provided the exhibits to the defense and to the Court.

### Category 2 exhibits created during the civil disorder on August 13 - 15, 2016

1.      Exhibit 40. This 58-second video, from the defendant's cellphone and posted to the defendant's public YouTube account, shows a masked defendant on August 13, 2016, filming himself during the civil disorder. In the video, the defendant appears to encourage the civil disorder as he promotes black power, and he discusses civil disorder and the throwing of rocks at police in positive terms. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's location, motive, opportunity, intent, preparation, plan, knowledge, and identity.

2.      Exhibit 42. This 57-second video, from the defendant's cellphone and posted to the defendant's public YouTube account, shows the defendant on August 13, 2016, observing a group of rioters who are destroying a police squad car with bricks and stealing and shattering police items from inside the car. The defendant states, "Black power in this motherfucker," as he walks around the car.  This evidence is relevant and direct evidence or admissible other acts evidence for the

legitimate purposes of showing the defendant's location, motive, opportunity, intent, preparation, plan, knowledge, and identity.

3.      Exhibit 43. This 42-second video, from the defendant's cellphone and posted to the defendant's public YouTube account, shows the defendant on August 13, 2016, observing a police squad car, which had been destroyed and burned by rioters. During the video, Mayes states, "Black goddam power, nigger." This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's location, motive, opportunity, intent, preparation, plan, knowledge, and identity.

4.      Exhibit 44. This 47-second video, from the defendant's cellphone and posted to the defendant's public YouTube account, shows the defendant on August 13, 2016, mocking police officers as they tow away a police squad car that was destroyed by rioters. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's location, motive, opportunity, intent, preparation, plan, knowledge, and identity.

5.      Exhibit 45. This 50-second video, from the defendant's cellphone and posted to the defendant's public YouTube account, shows the defendant on August 13, 2016, driving through the civil disorder and mocking police officers and local reporter. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's location, motive, opportunity, intent, preparation, plan, knowledge, and identity.

6.      Exhibit 46. This 49-second video, from the defendant's cellphone and posted to the defendant's public YouTube account, shows the defendant on August 13, 2016, observing looters and rioters at the BP Gas Station in Sherman Park. In the video, the defendant explains that civil disorder cannot be stopped. The defendant does not take any action to prevent any of the civil disorder or looting. This evidence is relevant and direct evidence or admissible other acts evidence

7

for the legitimate purposes of showing the defendant's location, motive, opportunity, intent, preparation, plan, knowledge, and identity.

7.      Exhibit 47. This 53-second video, from the defendant's cellphone and posted to the defendant's public YouTube account, shows the defendant on August 13, 2016, observing looters and rioters at the BP Gas Station in Sherman Park. The defendant claims that there is nothing he can do to stop the rioters. The defendant does not take any action to prevent any of the civil disorder or looting. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's location, motive, opportunity, intent, preparation, plan, knowledge, and identity.

8.      Exhibit 48. This 59-second video, from the defendant's cellphone and posted to the defendant's public YouTube account, shows the defendant on August 13, 2016, observing the civil disorder and rioters approaching a police line. The defendant asks, "Where the rocks at? Who got the rocks?" As rioters throw items, including rocks, at the police, the defendant can be heard repeatedly saying, "Getting their ass tagged!"; "Getting their ass rocked!" "Fuck you all!", "Punkass cops!" This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's location, motive, opportunity, intent, preparation, plan, knowledge, and identity.

9.      Exhibit 49. This 1-minute video, from the defendant's cellphone and posted to the defendant's public YouTube account, shows the defendant on August 13, 2016, observing rioters approaching a police line. The defendant yells at the police, "Fuck these niggers, man", "Black power in this motherfucker, man", and "Fuck you all." The defendant also says, "Rocking their shit," as rioters throw rocks at police. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's location, motive,

opportunity, intent, preparation, plan, knowledge, and identity.

10. Exhibit 56. This 3-minute video, from the defendant's cellphone and posted to the defendant's public YouTube account, shows the defendant on August 13, 2016, with Bernice Hart observing rioters approaching a police line. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's motive, location, opportunity, intent, preparation, plan, knowledge, connection to coconspirators, and/or identity.

11. Exhibit 153. This 8-minute video, from the defendant's public YouTube account, shows the defendant on August 14, 2016, with Bernice Hart observing rioters approaching a police line and eventually destroying a police squad car. The defendant is heard laughing as rioters damage the car, and he takes no action to prevent the activity. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's motive, location, opportunity, intent, preparation, plan, knowledge, connection to coconspirators, and/or identity.

12. Exhibit 156. This 6-minute video, from the defendant's public YouTube account, shows the defendant on August 13, 2016, observing a belligerent group approaching a police line. The defendant takes no action to prevent the activity. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's location, motive, opportunity, intent, preparation, plan, knowledge, and identity.

13. Exhibit 179. This 33-minute video, from the defendant's public Facebook account, shows the defendant on August 13, 2016, with Bernice Hart as a group approaches a police line. Mayes makes several statements throughout the video explaining the police had shot someone and he wants people to share his live feed. This evidence is relevant and direct evidence or admissible

other acts evidence for the legitimate purposes of showing the defendant's motive, location, opportunity, intent, preparation, plan, knowledge, connection to coconspirators, and/or identity.

14. Exhibit 180. This 1-minute video, from the defendant's public Facebook account, shows the defendant on August 13, 2016, with Bernice Hart as a group approaches a police line. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's motive, location, opportunity, intent, preparation, plan, knowledge, connection to coconspirators, and/or identity.

15. Exhibit 181. This 1.5-minute video, from the defendant's public Facebook account, shows the defendant on August 13, 2016, as a belligerent group approaches a police line. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's location, motive, opportunity, intent, preparation, plan, knowledge, and identity.

16. Exhibit 182. This 6-minute video, from the defendant's public Facebook account, shows Bernice Hart and the defendant on August 13, 2016, at the BP Gas Station in Sherman Park. The defendant is heard laughing as rioters and looters attack the gas station and set the gas station and a car on fire, and he takes no action to prevent the activity. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's motive, location, opportunity, intent, preparation, plan, knowledge, connection to coconspirators, and/or identity.

17. Exhibit 183. This 6-minute video, from the defendant's public Facebook account, shows the defendant on August 13, 2016, in Sherman Park. The defendant states the police are "fucking" with people. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's location, motive, opportunity,

intent, preparation, plan, knowledge, and identity.

18.    Exhibit 184. This 10-minute video, from the defendant's public Facebook account, shows the defendant on August 14, 2016, in Milwaukee. The defendant states police "don't have any sense" because they have assault rifles during the civil disorder. The defendant states this is "black power." The defendant identifies MPD District Seven Police station as one of the worst police stations. The defendant encourages people to continue to watch his Facebook live feeds, and he explains that the civil disorder was necessary, like "Baltimore" (a reference to civil disorder in Baltimore due to the Freddy Gray in-custody death). This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's location, motive, opportunity, intent, preparation, plan, knowledge, and identity.

19.    Exhibit 185. This 9-minute video, from the defendant's public Facebook account, shows the defendant on August 15, 2016, in a belligerent crowd confronting a police line. The defendant states that there is black power in Milwaukee and police are "bitch ass niggers." The defendant encourages the belligerent crowd, directs them to move, and does nothing to quell the tension. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's location, motive, opportunity, intent, preparation, plan, knowledge, and identity.

20.    Exhibit 186. This 1-minute video, from the defendant's public Facebook account, shows the defendant on August 15, 2016, in a crowd by a police line. The defendant states, "It about to get real. You all leaving. You all ain't going to see how real it's going to get." This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's location, motive, intent, and opportunity.

21.    Exhibit 187. This 10-minute video, from the defendant's public Facebook account,

shows the defendant on August 15, 2016, in a protesting crowd in Milwaukee, and the defendant states his disdain for police. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's location, motive, opportunity, intent, preparation, plan, knowledge, and identity.

22.     Exhibit 263. This August 15, 2016, Facebook statement posted by the defendant shows his response to another Facebook post that said Sylville Smith had a gun in his car. The defendant posted, "So yeah.. how he point a gun that was still in the car? I'm tryna find out. Don't fall for that bs. That brotha was shot in his back multiple times. AND since they wanna play tough watch what I reveal next.. Play me if u want to. My comrades coming if yall think yall can fuck around in my biz.. NBS #Sylville." This evidence is relevant and direct evidence the legitimate purposes of showing the defendant's motive, opportunity, intent, preparation, plan, knowledge, and identity.

23.     Exhibit 26. This August 15, 2016, Facebook statement posted by the defendant in which he stated, "The last few days I have lol I been in the field with the revolution." Mayes mentions the "revolution" in multiple exhibits, and a witness will testify that the defendant explained that the "revolution" started during the Milwaukee civil disorder. In a Facebook video, the defendant discussed the revolution beginning during the Waukesha Parade tragedy (Exhibit 1); in a YouTube video, the defendant explained his understanding of black power, revolution, violence, and militancy (Exhibit 144); and in a YouTube video the defendant black power, militancy, and revolution (Exhibit 13). This evidence is relevant and direct evidence for the legitimate purposes of showing the defendant's motive, opportunity, intent, preparation, plan, knowledge, and identity.

24.     Exhibits 273 and 274. These August 13, 2016, Facebook videos posted by Charles

Edwards shows the PTP picnic that occurred on August 13, 2016. The videos show that there were no gas cans or recycling bins present in the area. This evidence is relevant and direct evidence for the legitimate purposes of showing the defendant's motive, opportunity, intent, preparation, plan, knowledge, and identity.

25. Exhibit 275. This August 13, 2016, Facebook video by the defendant shows the PTP picnic that occurred on August 13, 2016. The videos show that there were no gas cans or recycling bins present in the area. This evidence is relevant and direct evidence for the legitimate purposes of showing the defendant's motive, opportunity, intent, preparation, plan, knowledge, and identity.

## Category 2 exhibits created after August 13-15, 2016

1. Exhibit 1. This publicly posted 1-hour Facebook video shows the defendant on November 21, 2021, arriving at Waukesha Christmas Parade attack to excitedly discuss what he assumed to be the beginning of a "revolution" connected to the "verdict," which is a reference to the Kyle Rittenhouse acquittal from November 19, 2021. Six people were killed, including children, and sixty-two people were injured at the parade when Darrell Brooks, Jr. drove a vehicle through the parade crowd. Mayes mentions the "revolution" in multiple exhibits, and a witness will testify that the defendant explained that the "revolution" started during the Milwaukee civil disorder. In a Facebook post, the defendant discusses being part of the "revolution" during the civil disorder on August 15, 2016 (Exhibit 26); in a YouTube video, the defendant explained his understanding of black power, revolution, violence, and militancy (Exhibit 144); and in a YouTube video the defendant black power, militancy, and revolution (Exhibit 13). This evidence is relevant and direct evidence for the legitimate purposes of showing the defendant's motive and intent.

2. Exhibit 13. This 1-hour YouTube video shows the defendant on October 11, 2016,

discussing his anger towards white people and police, how kids from PTP follow him, and his belief in black power, militancy, and revolution. Specifically, the government intends to admit parts of the following portions: 8:30 minute mark to 11:15 minute mark; 15:00 minute mark to 22:00 minute mark; 30:00 minute mark to 59:00 minute mark; and the 1 hour mark to 1 hour and 5 minute mark. Mayes mentions the "revolution" in multiple exhibits, and a witness will testify that the defendant explained that the "revolution" started during the Milwaukee civil disorder. In a Facebook post, the defendant discusses being part of the "revolution" during the civil disorder on August 15, 2016 (Exhibit 26); in a YouTube video, the defendant explained his understanding of black power, revolution, violence, and militancy (Exhibit 144); and in a Facebook video, the defendant discussed the revolution beginning during the Waukesha Parade tragedy (Exhibit 1). This evidence is relevant and direct evidence for the legitimate purposes of showing the defendant's motive and intent.

3.      Exhibits 37 and 38. This photo is from the defendant's Samsung cellphone, which was seized in August 2016. This photo was taken on August 26, 2016, and is from a Facebook post by the defendant. In the post, the defendant identifies his anger towards white people who he says have done "horrific things" to black people. This evidence is relevant and direct evidence for the legitimate purposes of showing the defendant's motive and intent.

4.      Exhibit 151. This 13-minute video, from the defendant's public YouTube account, shows the defendant on August 18, 2016, being interviewed about the Milwaukee civil disorder. The defendant explains that the Milwaukee police were to blame for the civil disorder. The defendant also explained that the police requested his assistance to quell tensions, but he refused to help the police. The defendant also explained that he encouraged rioters not to attack police in "broad daylight" but to wait for a better time. The defendant finishes the interviewing by

explaining his views on violence, civil disorder, looting, and destruction of property, "They only understand uprising. They only understand violence and destruction. When you start dealing with their money and their property and the stuff that they value, then they want to work with you." This evidence is relevant and direct evidence because it is a statement that directly inculcates the defendant who admitted to his motive for violence and property destruction and his criminal activity during the Milwaukee civil disorder.

5.  Exhibit 152. This 3-minute video, from the defendant's public YouTube account, shows the defendant on October 12, 2016, mocking witnesses who provided information to law enforcement. The defendant calls those witnesses "riot snitches." This evidence is relevant and direct evidence because it is a statement that directly inculcates the defendant who was actively intimidating witnesses of his criminal activities. Alternatively, the evidence is admissible other acts evidence for the legitimate purposes of showing the defendant's motive, intent, preparation, and plan.

6.  Exhibit 177b. This 4-minute video, from the defendant's public Facebook account, shows the defendant on August 30, 2016, discussing a search warrant that was executed at his apartment and the witnesses who cooperate with law enforcement. The defendant states that he knows people are talking to law enforcement, and he will figure out who they are. The defendant explains, "Shit about to get real. Y'all going to learn with fucking with me. Y'all going to see what kind of power and authority a motherfucker got." This evidence is relevant and direct evidence because it is a statement that directly inculcates the defendant who was actively intimidating witnesses of his criminal activities. Alternatively, the evidence is admissible other acts evidence for the legitimate purposes of showing the defendant's motive, intent, preparation, and plan.

7.  Exhibit 188. This 13-minute video, from the defendant's public Facebook account,

shows the defendant on August 30, 2016, discussing a search warrant that was executed at his apartment and the witnesses who cooperate with law enforcement. The defendant explains, "Somebody talking. Somebody doing a lot of talking." The defendant also discusses his anti-police views and the unfairness of what is received by "Jews", "Wauwatosa", "West Allis", and "River West." This evidence is relevant and direct evidence because it is a statement that directly inculcates the defendant who was actively intimidating witnesses of his criminal activities. Alternatively, the evidence is admissible other acts evidence for the legitimate purposes of showing the defendant's motive, intent, preparation, and plan.

## Category 2 exhibits created prior to August 13-15, 2016

1.      Exhibit 14. This 3-minute YouTube video shows the defendant on May 19, 2016, discussing his anger towards the United States, generally. This evidence is relevant and direct evidence or admissible for the legitimate purposes of showing the defendant's motive and intent.

2.      Exhibits 25, 26, 29, 35, 39. These photos and video are from August 2-7, 2016, and were recovered from the defendant's Samsung cellphone, which was seized in August 2016. The exhibits show the defendant burning and standing on the American flag. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's motive and intent.

3.      Exhibit 28. This photo is from the defendant's Samsung cellphone, which was seized in August 2016. The photo shows a pledge of "No Allegiance" to the United States. This evidence is relevant and direct evidence for the legitimate purposes of showing the defendant's motive and intent.

4.      Exhibit 30. This photo is from the defendant's Samsung cellphone, which was seized in August 2016. The photo shows an explanation of "COINTELPRO" which was an FBI

conducted operation between 1956 to 1971 to discredit what it viewed as subversive organizations. This evidence is relevant and direct evidence for the legitimate purposes of showing the defendant's motive and intent.

5.      Exhibits 31-34. These are photos from the defendant's Samsung cellphone, which was seized in August 2016. The photos show the defendant holding various firearms. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's motive and intent.

6.      Exhibit 36. This photo is from the defendant's Samsung cellphone, which was seized in August 2016. The photo shows "Moorish Rights," from the Moorish Sovereign Citizen group, which has anti-government views. This is a group that the defendant was associated with in 2016. *See* Exhibit 50. This evidence is relevant and direct evidence for the legitimate purposes of showing the defendant's motive and intent.

7.      Exhibit 50. This 7-minute video is from the defendant's Samsung cellphone, which was seized in August 2016. The video is from an August 7, 2016, interview with the defendant where he explains his association to the beliefs of the Moorish Sovereign Citizen group which has anti-government views. This evidence is relevant and direct evidence for the legitimate purposes of showing the defendant's motive and intent.

8.      Exhibit 55. This 14-second video is from the defendant's Samsung cellphone, which was seized in August 2016. The video shows the defendant on video created on August 7, 2016, standing by police as he calls them "motherfuckers" and says, "fuck the flag" and said "black power." This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's motive and intent.

9.      Exhibit 128. This 3-minute YouTube video shows the defendant on June 17, 2015.

The defendant explains his anger towards the American flag and what it represents to black oppression. The defendant burns the flag. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's motive and intent.

10. Exhibit 129. This 3-minute YouTube video shows the defendant on June 14, 2015. The defendant explains his anger towards the American flag and what it represents. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's motive and intent.

11. Exhibit 130. This 3-minute YouTube video shows the defendant on June 14, 2015. It is a continuation of Exhibit 129. The defendant drags the American flag through the street and the gutter as he degrades white people. The defendant explains his anger towards the American flag and white people. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's motive and intent.

12. Exhibit 131. This 3-minute YouTube video shows the defendant on August 3, 2015. The defendant burns the American flag explains his anger towards the American flag and white people. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's motive and intent.

13. Exhibit 142. This 6-minute YouTube video shows the defendant on July 6, 2015, 2015. The defendant burns the American flag, with a bottle and wick (similar to a Molotov cocktail construction), with others as they explain their anger towards the American flag and the United States. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's motive and intent.

14. Exhibit 144. This 14-minute YouTube video shows the defendant on February 16,

2016. The defendant explained his understanding of black power, revolution, violence, and militancy. The defendant explains that black people need to use strength to confront the current power structures. Mayes mentions the "revolution" in multiple exhibits, and a witness will testify that the defendant explained that the "revolution" started during the Milwaukee civil disorder. In a Facebook post, the defendant discusses being part of the "revolution" during the civil disorder on August 15, 2016 (Exhibit 26); in a Facebook video, the defendant discussed the revolution beginning during the Waukesha Parade tragedy (Exhibit 1); and in a YouTube video the defendant black power, militancy, and revolution (Exhibit 13). This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's motive and intent.

15.    Exhibit 146. This 2-minute YouTube video shows the defendant on July 4, 2015. The defendant uses several American flags as doormats throughout a residence. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's motive and intent.

16.    Exhibit 148. This 3-minute YouTube video shows the defendant on July 6, 2015. This video is a continuation of Exhibit 142. The defendant and the group discuss white power as their burn the American flag, a bible, and clothes. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's motive and intent.

17.    Exhibit 149. This 5-minute YouTube video shows the defendant on August 22, 2015. The defendant explains that white people get away with crimes. The defendant explains that white police officers do not go to jail when they kill a black person, and there is no justice. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate

purposes of showing the defendant's motive and intent.

18.    Exhibit 150. This 5-minute YouTube video shows the defendant on September 12, 2015. The defendant walks through West Allis as he drags the American flag on the ground. The defendant explains his dislike for West Allis and "punk ass white motherfuckers", and he explains that he is there to "wreak havoc." This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's motive and intent.

19.    Exhibit 155. This 11-minute YouTube video shows the defendant on February 14, 2016. The defendant explains that police rape, lynch, and frame black people and black panthers. The defendant explains that black people are using violence self-defense. The defendant explains that he stands for the "the protection and progress of black people. Black people." The defendant also states that this comes "by any means necessary" with an emphasis on "protection." The defendant explains that white people "have no room for error anymore." The defendant explains, "At the very least every black person deserves to say they want to fuck a cracker up…. You should be glad more police aren't being shot and killed…. I stand on whatever I say…. My stance will never change." This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's motive and intent.

20.    Exhibit 178. This July 14, 2016, Facebook statement posted by the defendant shows his response to a picture of an injured police officer. The defendant posted, "#FuckThePolice". This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's motive, opportunity, intent, preparation, plan, knowledge, and identity.

21.    Exhibit 194. This 17-minute Facebook video shows the defendant on August 4, 2016. The video shows the defendant with Bernice Hart in Sherman Park. In the first eight minutes,

the defendant explains what it means to be a sovereign person. This evidence is relevant and direct evidence or admissible other acts evidence for the legitimate purposes of showing the defendant's motive and intent.

22. Exhibits 196 and 198. These Facebook videos show the defendant on August 6 and 9, 2016. The video shows the defendant with Bernice Hart and Charles Edwards in Sherman Park. This video is relevant and admissible for the legitimate purposes of showing the defendant's location and connection to Sherman Park and coconspirators Bernice Hart and Charles Edwards.

23. Exhibit 197. This 22-minute Facebook video shows the defendant on August 10, 2016. The video shows the defendant with Bernice Hart and others in Sherman Park. The video shows the antagonistic relationship that the defendant had with police in August 2016. This video is relevant and admissible for the legitimate purposes of showing the defendant's location and connection to Sherman Park and coconspirator Bernice Hart, as well as his motive and intent.

### F. Conclusion

The evidence in Category 2 is direct evidence of the defendant's motive, location, opportunity, intent, preparation, plan, knowledge, connection to coconspirators, and/or identity connected to his manufacturing and possession of destructive devices, civil disorders, and witness intimidation. Any risk of prejudice that would result from admitting this evidence is far outweighed by its probative value.

If the Court finds evidence in Category 2 is not direct evidence of the crimes, then the evidence should be admitted, pursuant to Fed. R. Evid. 404(b), for the allowable purposes of showing motive, location, opportunity, intent, preparation, plan, knowledge, connection to coconspirators, and/or identity. Because Category 2 evidence is highly probative, it substantially outweighs any risk of unfair prejudice.

Category 2 evidence is not unduly prejudicial to the defendant. The evidence will establish the defendant's motive, location, opportunity, intent, preparation, plan, knowledge, connection to coconspirators, and/or identity. The government will not improperly suggest the defendant's character, as prohibited by Rule 404(b). To the extent that the Court is concerned about unduly prejudicing the defendant, the government suggests addressing that concern via a limiting instruction.

## II. Motion to Admit Statements as Co-conspirator Statements Under Federal Rule of Evidence 801(d)(2)(E) and Showing Motive, Intent, or Plan Under Federal Rule of Evidence 803(3) and the Effect on the Listener.

### A. The Law of Coconspirator Statements

The statements in the government's case-in-chief are often admissible under multiple, non-exclusive theories, including that the statements are (1) not hearsay because they are statements by a party opponent (including co-conspirator statements), Fed. R. Evid. 801(d)(2)); (2) not hearsay because they are either not assertions or not offered for the truth of the matter asserted or both, Fed R. Evid. 801(c)(2); and (3) exceptions to the rule against hearsay because they are present statements of the declarant's then existing state of mind (such as motive, intent, or plan), Fed. R. Evid. 803(3).

Out-of-court statements offered for the truth of the matter asserted are typically inadmissible hearsay. *See* Fed. R. Evid. 801(c), 802. But under Rule 801(d)(2)(E), an out-of-court statement is not hearsay if it: (1) "is offered against an opposing party," and (2) "was made by the party's coconspirator during and in furtherance of the conspiracy." *See* Fed. R. Evid. 801(d)(2)(E); *see also United States v. Cardena*, 842 F.3d 959, 993 (7th Cir. 2016). The standard for admissibility of coconspirator declarations under the Confrontation Clause is the same as that under Federal Rule of Evidence 801(d)(2)(E). *Bourjaily v. United States,* 483 U.S. 171, 182-184,

(1987); *United States v. Dugan,* 902 F.2d 585, 589-90 (7th Cir. 1990); *Garlington v. O'Leary,* 879 F.2d 277, 280 (7th Cir. 1989).

Rule 801(d)(2)(E) applies not only to conspiracies, but also to joint ventures. *United States v. Kelley,* 864 F.2d 569, 573 (7th Cir.1989). There need not be a formal conspiracy charge for statements to be admitted under Rule 801(d)(2)(E), if the government establishes that a "criminal venture existed and that the statements took place during and in furtherance of that scheme." *United States v. Reynolds,* 919 F.2d 435, 439 (7th Cir.1990); *Kelley,* 864 F.2d at 573. The government is not required to prove that there was a formal agreement, and circumstantial evidence indicating the defendant's membership in the conspiracy can also be considered. *United States v. Schumpert,* 958 F.2d 770, 773 (7th Cir. 1992). To show that a person was involved in the conspiracy, the government must show that she (1) knew of the conspiracy, and (2) intended to associate herself with the criminal scheme. *United States v. Sullivan,* 903 F.2d 1093, 1098 (7th Cir. 1990).

In the Seventh Circuit, district courts may make a preliminary ruling on the admissibility of co-conspirator statements based on a party's pretrial proffer of evidence, known as a *Santiago* proffer. *See United States v. Davis*, 845 F.3d 282, 286 (7th Cir. 2016) (citing *United States v. Santiago*, 582 F.2d 1128, 1131 (7th Cir. 1978), *overruled on other grounds by Bourjaily v. United States*, 438 U.S. 171 (1987)). A *Santiago* proffer allows a district court to "conditionally admit coconspirator statements" if the proponent "makes a showing that it can and will meet the requirements for admissibility during trial." *Cardena*, 842 F.3d at 994 (internal quotation omitted).

This "*Santiago* proffer" must satisfy all three elements of Rule 801(d)(2)(E). In other words, a district court may conditionally admit a statement against a party where the plaintiff has made a preliminary showing that: (1) a conspiracy existed; (2) the defendant and the declarants

were members of the conspiracy; and (3) the proffered statements were made during the course of and in furtherance of the conspiracy. *See United States v. DeKelaita*, 875 F.3d 855, 859–60 (7th Cir. 2017); *see also* Fed. R. Evid. 801(d)(2)(E). If the district court finds that the statements satisfy the rule, then the statements are not hearsay, and the jury may consider them for any purpose, including the truth of the matter asserted. *See United States v. Thompson*, 944 F.2d 1331, 1345 (7th Cir. 1991).

A proponent need only establish these elements by a preponderance of the evidence. *See Santiago*, 582 F.2d at 1134 ("[I]f it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy, the hearsay is admissible."). The inquiry "is not whether the proponent of the evidence wins or loses his case on the merits, but whether the evidentiary Rules have been satisfied." *Bourjaily*, 483 U.S. at 175.

"*Santiago* proffers are, by nature and necessity, argumentative and summary." *United States v. Cox*, 923 F.2d 519, 527 (7th Cir. 1991). The proponent faces a "relatively low burden of proof," and need only summarize the evidence that it expects to adduce at trial in order to establish that a conspiracy existed. *See United States v. Shah*, 2023 WL 22140, at *2 (N.D. Ill. 2023) (quoting *United States v. Shoffner*, 826 F.2d 619, 628 (7th Cir. 1987)); *United States v. Bouzanis*, 2003 WL 22143278, at *6 (N.D. Ill. 2003) (citing *Santiago*, 582 F.2d at 1128). District courts make a ruling on the admissibility of a coconspirator's statements pursuant to Rule 104(a) before they are admitted at trial. *United States v. Santiago,* 582 F.2d 1128, 1130–35 (7th Cir. 1978); *United States v. Cox,* 923 F.2d 519, 526 (7th Cir. 1991).

The court can consider a proffered coconspirator statement itself in determining whether it was made "in furtherance of" the conspiracy. See *Bourjaily, 483 U.S. at 180, 107 S.Ct. 2775*. In

addition, in determining whether a statement was made "in furtherance" of the conspiracy, courts look for a reasonable basis upon which to conclude that the statement furthered the conspiracy. *United States v. Shoffner,* 826 F.2d 619, 628 (7th Cir. 1987). Under the reasonable basis standard, a statement may be susceptible to alternative interpretations and still be "in furtherance of the conspiracy," *Shoffner,* 826 F.2d at 628. Yet, the statement need not have been made exclusively, or even primarily, to further the conspiracy in order to be admissible under the coconspirator exception. *United States v. Johnson,* 200 F.3d 529, 533 (7th Cir. 2000); *United States v. Powers,* 75 F.3d 335, 340 (7th Cir. 1996). Rather, the record need only contain some reasonable basis for concluding that the statement in question furthered the conspiracy in some respect. *Stephenson,* 53 F.3d at 845. Finally, it is immaterial that statements otherwise "in furtherance" were made to a government witness or agent. *United States v. Mahkimetas,* 991 F.2d 379, 383 (7th Cir. 1993).

The Seventh Circuit has upheld the admission of a wide assortment of coconspirators statements. Statements used to recruit potential, conspirators, *Shoffner,* 826 F.2d at 628, update others on a conspiracy's progress, *United States v. Potts,* 840 F.2d 368, 371 (7th Cir. 1987), control damage to an ongoing conspiracy, *United States v. Van Daal Wyk,* 840 F.2d 494, 499 (7th Cir. 1988), inform or reassure the listener, *United States v. Sophie,* 900 F.2d 1064, 1073 (7th Cir. 1990), plan or review coconspirators' exploits, *United States v. Molt,* 772 F.2d 366, 369 (7th Cir. 1985), express updates on the status of the conspiracy and how the status affected the future of the conspiracy, *United States v. Doyle,* 771 F.2d 250, 256 (7th Cir. 1985), and attempt to conceal or protect the conspiracy, *United States v. Kaden,* 819 F.2d 813, 820 (7th Cir. 1987), have been approved as statements made "in furtherance of" conspiracies. Moreover, conversations made by conspirators to prospective coconspirators for membership purposes are acts in

furtherance of the conspiracy. *Shoffner,* 826 F.2d at 628. Statements that are "part of the information flow between conspirators intended to help each perform his role" are statements "in furtherance." *United States v. Gajo,* 290 F.3d 922, 929 (7th Cir. 2002). Assurances that a coconspirator can be trusted or relied upon to perform his role are considered to further the conspiracy. *United States v. Buishas,* 791 F.2d 1310, 1315 (7th Cir. 1986). Statements designed to conceal a conspiracy also are deemed to be "in furtherance" where ongoing concealment is a purpose of the conspiracy. *Gajo,* 290 F.3d at 928–29; *United States v. Markowski,* 772 F.2d 358, 366 (7th Cir. 1985). Therefore, "statements made to keep coconspirators informed about the progress of the conspiracy, to recruit others or to control damage to the conspiracy are in furtherance of the conspiracy." *Stephenson,* 53 F.3d at 845. "Conspiracy is serious business and talk about it among or by the conspirators should not be presumed to be unrelated to the accomplishment of the conspiracy's goals." *United States v. Pallais,* 921 F.2d 684, 688 (7th Cir. 1990).

Federal Rule of Evidence 803(3) exempts from the bar on hearsay "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, …), but not including a statement of memory or belief to prove the fact remembered or believed...." *United States v. Stallworth*, 656 F.3d 721, 727 (7th Cir. 2011). "Three requirements must be satisfied for a statement to be admissible under the state of mind exception to the hearsay rule: (1) the statement must be contemporaneous with the mental state sought to be proven; (2) it must be shown that declarant had no time to reflect, that is, no time to fabricate or misrepresent his thoughts; and (3) the declarant's state of mind must be relevant to an issue in the case." *United States v. Neely*, 980 F.2d 1074, 1083 (7th Cir. 1992).

A statement is offered to show an effect on the listener only if the listener heard and reacted to the statement, *United States v. Gaytan*, 649 F.3d 573, 579–80 (7th Cir. 2011), and if the "actual use" of the statement at trial was to demonstrate the listener's response, *Jones v. Basinger*, 635 F.3d 1030, 1042 n.2 (7th Cir. 2011).

## B. Coconspirator Statements Connected to the Conspiracy to Commit a Civil Disorder Background

In the case before this court, witnesses will explain that, on or about August 15, 2016, the defendant, Charles Edwards, Bernice Hart (AKA "Gab Taylor") and others agreed to participate in the defendant's plan to firebomb a police station and the homes of white people.

On August 13-15, 2016, a civil disorder erupted in Milwaukee due to an officer-involved shooting. During the civil disorder, Mayes used his cellphone to record himself and his associates, and he posted several of those recordings to YouTube and Facebook. In many of the videos, Hart was with Mayes, and Mayes encouraged the ongoing civil disorder.

According to several witnesses and conspirators, including coconspirator Charles Edwards, on or about the evening of August 15, 2016, the defendant asked adults, including Hart, to gather some children from the Sherman Park neighborhood so that they could meet and plan a firebombing of an occupied Milwaukee Police Station and homes of white people in West Allis. The defendant's intention was to use the explosive devices to further ongoing large-scale civil disorder that were occurring in Milwaukee.

Witnesses will explain that the defendant and other coconspirators brought rocks, gasoline, and glass bottles to Edwards's apartment. In front of children (many to whom the defendant was a mentor) and adults, the defendant demonstrated the making Molotov cocktails by pouring gasoline into glass bottles and placing fabric wicks into the tops. The defendant's plan was to have the children create a diversion by throwing rocks at police; then at the same time, adults would throw

the Molotov cocktails at a Milwaukee Police Station and at residential homes in West Allis "where white people live." Witnesses will testify that the defendant, Edwards, and Hart were present and approved of the defendant's Molotov cocktail plan. Ultimately, the plan was not pursued due to police presence. Approximately ten of the manufactured Molotov cocktails were placed in a cardboard box, abandoned, and recovered by law enforcement in front of coconspirator Edwards's residence. Several of the Molotov cocktail bottles that were recovered were Seagram's wine cooler and Everfresh juice bottles.

### Coconspirator Statements Heard by Witness 1

Witness 1 was present at Charles Edwards's home when the defendant, Edwards, and Hart discussed the defendant's plan to firebomb a police station. Witness 1 saw the defendant, Edwards, Hart, and about 20 others including children at the residence. Witness 1 saw that the defendant had a large bag of rocks intended to be thrown at police. Witness 1 also saw the defendant was making Molotov cocktails out of Everfresh juice bottles. Witness 1 heard people discussing the defendant's plot to firebomb a police station. Witness 1 heard Edwards say that people should not go through with the defendant's plan to firebomb the police station because the "cops were ready for them." Witness 1 also heard Hart say that they should not go forward with the defendant's plan to firebomb the police station because "someone will get hurt or arrested." Witness 1 left the residence without furthering the conspiracy.

### Coconspirator Statements Heard by Witness 2

Witness 2 was present at Charles Edwards's home when the defendant, Edwards, and Hart discussed the defendant's plan to firebomb a police station. Witness 2 saw about 20 people, including children and adults at Edwards's residence. Witness 2 saw the defendant making Molotov cocktails. The defendant told the group his plan, which was to load the children into cars

and have them throw rocks at police as a diversion and then firebomb a police station and homes of white people in West Allis.

Witness 2 heard the defendant describe his diversion and firebombing plan to a group of adults and children. Witness 2 also spoke to Bernice Hart who told Witness 2 that she was aware of the defendant's firebombing plan and that's why she and others were at Edwards's residence. The defendant then let the group of adults and children decide if they should go through with his plan. Witness 2 responded by voting against the plan, but all others voted to go through with the defendant's firebombing plot. Witness 2 also explained that the defendant's plan was ultimately abandoned.

### Coconspirator Statements Heard by Witness 3

In the summer of 2016, Witness 3 was a volunteer for PTP, and Witness 3 was acquainted with the defendant, Edwards, and Hart. In January 2017, ATF interviewed Witness 3 about the events surrounding the manufacturing of the Molotov cocktails.

Witness 3 explained that shortly after August 15, 2016, Charles Edwards contacted Witness 3 to meet him in Sherman Park. Witness 3 met Edwards who told Witness 3 that he believed some children had given information to the ATF. Edwards said that Mayes had Molotov cocktails and had convinced some kids "to do some stuff." Edwards said that he had Molotov cocktails at his house.

### Evidence Corroborating Witness 1, Witness 2, and Witness 3

Witness 1 and Witness 2's version of events from on or about August 15, 2016, are coincide in the details of the defendant's firebombing plot, the defendant's role as the maker of the Molotov cocktails, the people at the location, and the eventual abandonment of the defendant's plan.

The ATF recovered the Molotov cocktails that were abandoned in a dumpster next to Edwards's residence. The Molotov cocktails included Everfresh juice bottles, which confirms Witness 1's observation of the bottles that were being used by the defendant to make the bombs. At Edwards's residence, ATF recovered gas cans and Seagram's Wine Cooler and Everfresh Juice bottle caps.

Witness 3's statements from Charles Edwards are also corroborated. On December 7, 2017, Charles Edwards made a statement to law enforcement explaining the defendant's firebombing plot. Edwards stated the defendant and a group of people including Bernice Hart decided to make Molotov cocktails, and the defendant asked if they could use Edwards's home to manufacture the items. Edwards stated that the defendant and others began making Molotov cocktails at his home, and they planned to firebomb a police station. Edwards estimated about 20 people, adults and children were at his home when the Molotov cocktails were made. Edwards stated the defendant's plan was ultimately abandoned. Edwards ultimately pled guilty to the conspiracy to commit arson and making Molotov cocktails. Unfortunately, Charles Edwards passed away, and much of his statements will be inadmissible in front of the jury. However, his statements also corroborated the coconspirator statements.

In Section I "Motion to Allow Introduction of Video and Picture Evidence as Direct Evidence, Pursuant to Federal Rule of Evidence 401, or Alternatively as Other Acts Evidence, Pursuant to Federal Rule of Evidence 404(b)", there are several examples of the defendant's own statements showing his motive to commit this crime and also his witness intimidation that followed the investigation. Since these statements are covered in detail above, the government will not restate them here.

**Witness 1 and Witness 2's Proffered Statements Satisfy the Coconspirator Exception, Federal Rule of Evidence 803(3), and the Effect on the Listener**

Communications between coconspirators and Witness 1 and Witness 2 on or about August 15, 2016, satisfy each element of the coconspirator exception and should be conditionally admitted pursuant to this *Santiago* proffer.

First, there is little doubt that the conspiracy between the defendant, Edwards, Hart, and others to make Molotov cocktails and firebomb a police station and homes existed. Given the proffered statements above it is clear that the defendant, Edwards, Hart, and others were coordinating efforts to manufacture explosive devices and planning to firebomb a police station and homes.

Second, the proffered statements show statements made were discussions of how to further the conspiracy to make bombs and use them to damage a police station and homes. These discussions are at the heart of manufacturing and possessing destructive devices and creating a civil disorder.

Lastly, it is clear from the proffered statements and the surrounding evidence that the people involved in the firebombing plot discussions occurring at Edwards's residence on or about August 15, 2016, were members of the conspiracy. To any extent that the court is concerned about unduly prejudicing the defendant, the government suggests addressing that concern via a limiting instruction.

**Witness 3's Proffered Statements Satisfy the Coconspirator Exception, Federal Rule of Evidence 803(3), and the Effect on the Listener**

Communications between Edwards and Witness 3 also satisfy each element of the coconspirator exception and should be conditionally admitted pursuant to this *Santiago* proffer.

First, there is little doubt that the conspiracy between the defendant, Edwards, Hart, and others to make Molotov cocktails and firebomb a police station and homes existed. Given the proffered statements above it is clear that the defendant, Edwards, Hart, and others were coordinating efforts to manufacture explosive devices and planning to firebomb a police station and homes.

Second, the proffered statement shows that Edwards was not merely informing Witness 3 as to what had occurred. Rather, he summoned Witness 3 to inform him that there was a conspiracy involving Molotov cocktails and to warn Witness 3 that the children who Witness 3 worked with were informing federal agents about the adults' criminal activity. These statements were clearly meant to inform Witness 3 about the criminal liability that was being created by Witness 3's mentees who were cooperating with law enforcement. This was also an effort to recruit Witness 3 into the conspiracy so that Witness 3 could assist with controlling damage, concealing, and protecting the conspirators.

Lastly, it is clear from the proffered statements and the surrounding evidence that the people involved in the firebombing plot discussions occurring at Edwards's residence on or about August 15, 2016, were members of the conspiracy. To any extent that the court is concerned about unduly prejudicing the defendant, the government suggests addressing that concern via a limiting instruction.

## C. Statements Connected to the Conspiracy to Intimidate Witnesses

### Background

In the case before this court, witnesses will explain that, in the summer of 2016, Bernice Hart (AKA "Gab Taylor") was a friend and associated with the defendant through an informal Sherman Park community organization referred to as We All We Got or Program the Parks

("PTP"), which supported activities in Sherman Park, Milwaukee. Bernice Hart was involved as an organizer and volunteer for PTP, and as explained above, was a conspirator involved in the defendant's firebombing plot as well.

### Hart's Coconspirator Statements Heard by Witness 3

In the summer of 2016, Witness 3 was a volunteer for PTP, and Witness 3 was acquainted with the defendant, Edwards, and Hart. In January 2017, ATF interviewed Witness 3 about the events surrounding the manufacturing of the Molotov cocktails.

During the interview, Witness 3 explained that about a week after the civil disorder, Hart asked him to come to her residence. Hart spoke with Witness 3 about what occurred at Edwards' residence during the disorder. Hart said that days after the civil disorder, Mayes, Edwards, and Hart tried to "get something going" but it did not "pop off" as they planned. Hart explained that she was at Edwards's residence when police recovered a Molotov cocktail and questioned them about the gas cans near Edwards' apartment. Hart said that "they had covered-up" the presence of gas cans recovered from coconspirator Edwards's apartment by saying that the gas cans were for a generator that was used in Sherman Park.

In July 2018, the defendant was federally charged via criminal complaint for his crimes committed in August 2016. Shortly after that complaint, ATF interviewed Witness 3 who explained that in July 2018, Hart contacted Witness 3 because she and the defendant planned to contact everyone referenced in the criminal complaint. Witness 3 said that Hart explained that she and the defendant were attempting to gather all the witnesses to discuss how to protect themselves from prosecution. The defendant and Hart developed a common story to tell law enforcement that empty bottles were routinely brought to Sherman Park for a PTP recycling program. Witness 3, who was aware of PTP's recycling practices, told ATF that this story was false. Additionally,

Witness 3 said in July 2018, Witness 3 was part of a Facebook chat with the defendant and Hart where there was a discussion about which witnesses to trust and what to say to law enforcement.

In May 2019, ATF interviewed Witness 3. In May 2019, Witness 3 said that the defendant contacted Witness 3. The defendant asked Witness 3 whether Witness 3 had received a federal subpoena to testify against him. The defendant told Witness 3 that he identified several witnesses who made statements against him, and he was going to "expose" those witnesses. The defendant said he was not worried about Hart cooperating against him in his case. The defendant also told Witness 3 that he was not concerned that there would be cooperation from the children who were present on August 15, 2016, because they had criminal records and were loyal to him. Witness 3 responded by informing law enforcement concerning these statements.

### Evidence Corroborating Witness 3

On August 29, 2016, the defendant was questioned by agents from ATF regarding arsons and the civil disorder. The defendant stated that on August 13, people from PTP planned cookout in Sherman Park. The defendant said that all the cookout items from Sherman Park, including glass bottles and two gas cans were taken to Edwards's apartment. The defendant stated that the Seagram's wine cooler bottles were from his house, and the other bottles, such as Everfresh were from events at the park. The defendant said that that glass bottles at Charles's apartment were both from the defendant's house as well as from the park.

On September 13, 2016, the defendant spoke to ATF agents for a second time. The defendant explained that PTP used empty cardboard boxes as recycling bins for recycling of empty glass bottles. The defendant said on August 13, he brought a cardboard box to Sherman Park that was filled with empty glass bottles. The defendant further said that the cardboard box with empty bottles was taken from Sherman Park to Edwards's apartment on August 13.

On September 20, 2016, the defendant spoke to ATF agents for a third time. The defendant explained that on August 13, he brought two gas cans to Sherman Park because Edwards's generator was out of gas. The defendant said his two gas cans were taken Edwards's apartment on August 13. The defendant said his DNA would be located on the Molotov cocktail bottles because the bottle came from his house.

On May 26, 2017, the defendant spoke to ATF agents for a fourth time. The defendant explained that if his bottles were at Edwards's apartment on August 13, it was because those bottles had come from a recycling box located in Sherman Park. The defendant insisted that he used a cardboard box to collect bottles for recycling. The defendant said that he and Hart were the primary organizers at Sherman Park. The defendant explained that someone took his generator, box of bottles, and two gas cans to Edwards's apartment on August 13.

Further corroborating the defendant's efforts to intimidate and manipulate witnesses are three videos the defendant posted on social media. On October 12, 2016, the defendant mocked witnesses who provided information to law enforcement. The defendant called those witnesses "riot snitches." Government Exhibit 152. On August 30, 2016, the defendant discussed a search warrant that was executed at his apartment and the witnesses who cooperated with law enforcement. The defendant stated that he knew people were talking to law enforcement, and he would figure out who they are. The defendant explained, "Shit about to get real. Y'all going to learn with fucking with me. Y'all going to see what kind of power and authority a motherfucker got." Government Exhibit 177b. On August 30, 2016, the defendant discussed a search warrant that was executed at his apartment and the witnesses who cooperated with law enforcement. The defendant explained, "Somebody talking. Somebody doing a lot of talking." Government Exhibit 188.

**The Proffered Statements Satisfy the Coconspirator Exception**

Communications between Hart and Witness 3 in August 2016 and July 2018 satisfy each element of the coconspirator exception and should be conditionally admitted pursuant to this *Santiago* proffer.

First, there is little doubt that the conspiracy between the defendant and Hart to tamper with witness statements existed. Given the proffered statements above it is clear that the defendant and Hart were coordinating efforts to influence witness statements to obscure and conceal the defendant's crimes connected to manufacturing explosive devices and planning to firebomb a police station and homes.

Second, the proffered statements confirm that Hart's statements to Witness 3 in August 2016 and July 2018 go beyond mere narrative declarations. Rather, the statements were used to further the witness tampering conspiracy because Hart's statements were (1) an attempt to recruit Witness 3 as a potential and prospective conspirator who could further the conspiracy by lying to law enforcement; (2) an update on the progress of the conspiracy by identifying the plan and who to trust; and (3) an attempt to conceal the firebombing and witness tampering conspiracies by sharing the common lie and identifying trusted coconspirators. As explained by the Court of Appeals, "…. statements made to keep coconspirators informed about the progress of the conspiracy, to recruit others or to control damage to the conspiracy are in furtherance of the conspiracy." *Stephenson,* 53 F.3d at 845.

Lastly, it is clear from the proffered statements that both the defendant and Hart were members of the conspiracy. To the extent that the court is concerned about unduly prejudicing the defendant, the government suggests addressing that concern via a limiting instruction.

## III. Motion to Limit the Defendant's Character Evidence and to Exclude Evidence of the Defendant's Lawful Conduct

To distract the jury from the charges at issue, the defendant is seeking to admit evidence and testimony that, on prior occasions he acted in a lawful manner. For example, the defendant may attempt to argue that he did not commit the charged offenses because he acted lawfully when recording himself during the civil disorder or because he committed other good acts.

The government acknowledges that a defendant may be permitted to introduce limited reputation or opinion testimony. However, the defendant cannot introduce evidence of specific good acts through reputation or opinion testimony. Fed. R. Evid. 404 and 405. Additionally, evidence of person's reputation in the community should be reasonably contemporaneous, and reputation evidence after he or she is accused of a crime is not relevant because it is not trustworthy or relevant. *U.S. v. Curtis*, 644 F.2d 263, 268 (3d Cir. 1981); *United States v. Lewis*, 482 F.2d 632, 641-42 (D.C. Cir. 1973); and *Gross v. United States*, 394 F.2d 216, 219 (8th Cir. 1968).

A defendant may offer evidence of his pertinent character trait to "prove that on a particular occasion[,] [he/she] acted in accordance with the character or trait." Fed. R. Evid. 404(a)(2)(A). However, the defendant is limited in the form that evidence may take: the defendant's pertinent character trait offered in the defendant's case "may [only] be proved by testimony about the person's reputation or by testimony in the form of an opinion", and the defendant cannot use evidence of specific acts to illustrate the trait. Fed. R. Evid. 405(a) and (b).

In this regard, "[p]roof that a defendant acted lawfully on other occasions is not necessarily proof that he acted lawfully on the occasion alleged in the indictment." *United States v. Heidecke*, 900 F.2d 1155, 1162 (7th Cir. 1990). Such if-then arguments necessarily veer into the territory prohibited by Fed. R. Evid. 404 and 405. Evidence of other lawful behavior is irrelevant because acts of honesty do not prove an absence of dishonest acts. *E.g., United States v. Burke*, 781 F.2d

1234, 1243 (7th Cir. 1985) ("Evidence that the defendant frequently performs lawful or laudable acts does not often establish that some subsequent act is also lawful or laudable."). To hold otherwise would be to eviscerate the limitations of Rule 405. *United States v. Johnson, 2011 WL 809194, at \*4 (N.D. Ill. March 2, 2011)* (concluding, "evidence of specific lawful acts of Defendants is not properly introduced to show that Defendants did not have the requisite intent to commit the crimes charged"). Rule 405 is intended to prevent the series of wasteful "mini-trials" that would inevitably ensue if defendants were allowed to pursue this irrelevant line of inquiry. The Advisory Committee Notes for Rule 405 conclude that proof of character by means of specific acts "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time." In *Michelson v. United States, 335 U.S. 469 (1948)*, the U.S. Supreme Court distinctly stated when referring to character evidence that "[t]he witness may not testify about defendant's specific acts or courses of conduct. . . ." *Id.* at 477.

Furthermore, when the Court permits the introduction of limited reputation or opinion testimony, the government is allowed, on cross-examination of the defendant's witnesses, to ask questions about specific acts relevant to the character trait that the defendant raised on direct. Fed. R. Evid. 404 and 405.

The defendant has provided a witness and exhibit list to the government. Most of the witnesses appear to be character witnesses—the government has not received any defense reports regarding statements made by those witnesses. To the extent that defendant intends to offer evidence regarding his character through his testimony or these witnesses, he should be permitted to do so only in accordance with Fed. R. Evid. 404 and 405.

As to the defendant's exhibit list, most of the items are evidence of specific acts to prove the defendant's character, and several of the exhibits are specific acts that post-date the

indictment—these exhibits are not admissible. Fed. R. Evid. 405(a). The government moves the court to exclude the following defense exhibits because they are inadmissible evidence of specific acts: 1-73; and 75-165.

Furthermore, several of the defendant's exhibits would also be inadmissible if introduced through a character witness because they include self-serving statements by the defendant. Federal Rule of Evidence 801(d)(2) allows the government to introduce a defendant's out-of-court statements but does not permit the defendant to introduce self-exculpatory statements. Fed. R. Evid. 801(d)(2); *see also Williamson v. United States*, 512 U.S. 594, 599 (1994); *United States v. Velasco*, 953 F.2d 1467, 1475 (7th Cir. 1992) (affirming trial court's admission of a redacted version of defendant's confession). Indeed, courts have consistently held that a defendant cannot introduce his own self-serving out-of-court statements. *Id.* The government moves the court to exclude the following defense exhibits be introduced through character witnesses because, in addition to being inadmissible specific acts, they are inadmissible evidence of defendant's written and oral statements: 14, 15, 19, 22, 25, 27, 29, 30, 32, 34, 37, 38, 40, 42, 43, 44, 47-49, 52, 53, 56, 58, 64, 65-72, 76-113, 116, 120-130, 132, 134, 135, and 137-165.

The government has provided a copy of the defense exhibits to the court.

## IV. Motion to Preclude Defense from Introducing the Defendant's Out-Of-Court Statements

The defendant was interviewed by law enforcement on multiple occasions as to his involvement in the indicted crimes. Some of the interviews were lengthy. The defendant also recorded and publicly posted several statements via YouTube and Facebook. The government intends to call an ATF special agent to testify about the substance of the defendant's many statements and to summarize those portions of the defendant's statements that the government views as relevant and inculpatory.

The government requests an order precluding the defendant from attempting to introduce his own out-of-court statements through cross-examination of the government's witnesses (or through his own witnesses, should he elect to call any). Although the government may admit the defendant's statements pursuant to Federal Rule of Evidence 801(d)(2)(A), as admissions by a party-opponent, the defendant is not free to do the same. When offered by the defense, a defendant's self-serving out-of-court statements are inadmissible hearsay. Federal Rule of Evidence 803 prohibits the introduction of hearsay subject to certain exceptions. Fed. R. Evid. 803. Federal Rule of Evidence 801(d)(2) allows the government to introduce a defendant's out of court statements but does not permit the defendant to introduce self-exculpatory statements. Fed. R. Evid. 801(d)(2); *see also Williamson v. United States*, 512 U.S. 594, 599 (1994); *United States v. Velasco*, 953 F.2d 1467, 1475 (7th Cir. 1992) (affirming trial court's admission of a redacted version of defendant's confession). Indeed, courts have consistently held that a defendant cannot introduce his own self-serving out-of-court statements. *Id*.

The defendant may assert that the "rule of completeness" requires introduction of his entire interview. Federal Rule of Evidence 106 provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Rule 106 only applies to written statements. However, Federal Rule of Evidence 611(a) grants the same authority to trial judges with respect to oral statements. *United States v. Haddad*, 10 F.3d 1252, 1258 (7th Cir. 1993).

The "rule of completeness" is not unqualified. The proponent of the additional evidence bears the burden of demonstrating (1) its relevance to the issue in the case and (2) must show that it clarifies or explains the portion offered by the opponent. *United States v. Glovner*, 101 F.3d

1183, 1189-90 (7th Cir. 1996). The Seventh Circuit has adopted a four-part test for determining whether the additional evidence clarifies or explains the portion of the statement already offered into evidence. *Id*. Under this test, the remainder of the statement may only be admitted if it is necessary to: 1) explain the admitted portion; 2) place the admitted portion in context; 3) avoid misleading the trier of fact; and 4) insure a fair and impartial understanding. *Id*.

When the prosecution seeks only to introduce a portion of a defendant's statement, the defendant is not entitled to introduce portions of his statement that are neither explanatory nor relevant to those portions of the statements introduced by the government unless the statements are necessary to explain or clarify the portion of the statement received. *United States v. McCorkle*, 511 F.2d 482, 486-87 (7th Cir.); *cert. denied*, 423 U.S. 826 (1975). The "rule of completeness" does not authorize the introduction of defendant's self-serving, exculpatory out-of-court statements as part and parcel of statements introduced by government unless such statements are necessary to explain or clarify the portion of the statement received. *United States v. Haddad*, 10 F.3d 1252 (7th Cir. 1993); *see also United States v. Li*, 55 F.3d 325 (7th Cir. 1995) (upholding district court's exclusion of exculpatory portion of defendant's statement which was not necessary for completeness). The "rule of completeness" is not intended to open the floodgates and permit the wholesale introduction of otherwise inadmissible evidence. *United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982) (noting that the rule is designed to cause evidence to be viewed in its proper and fair context, not to make inadmissible evidence become admissible).

Simply put, the "rule of completeness" permits nothing more than setting the context and clarifying the evidence already introduced. It ensures fairness where a misunderstanding or distortion created by the other party can only be averted by introduction of the full out-of-court statement. To invoke the "rule of completeness," the defendant must make a focused and specific

request outlining those portions of the introduced statement that are confusing, misleading or taken out of context. Here, there is no danger of confusion or misunderstanding because the testifying law enforcement officers will make clear that the defendant denied any involvement in the indicted crimes.

The government thus respectfully moves this Court for an order precluding the defendant from seeking to introduce his own statements through cross or direct examination of other witnesses.

## V. Motion to Admit Records and Conversations Between the Defendant and Third Parties Pursuant to Federal Rules of Evidence 106.

At trial, the government intends to introduce conversations between the defendant and third parties that took place in text, YouTube videos, and Facebook messages. Some of these conversations were with witnesses who will testify at trial, while others were between the defendant and third parties who will likely not testify at trial. The government has already provided the defendant with additional advance notice of the conversations it intends to introduce at trial to resolve any objections in advance of trial. The government is filing the instant motion only to flag the issue for this Court and defense counsel.

It is well settled that a defendant's statements are admissible as non-hearsay statements of a party opponent. Fed. R. Evid. 801(d)(2); *United States v. Tolliver*, 454 F.3d 660, 665 (7th Cir. 2006) (holding that a defendant's "statements on the tapes constitute admissions by a party-opponent, and, as such, those statements are, by definition, not hearsay under Federal Rule of Evidence 801(d)(2)(A)"). It is also clear that a third-party's statements in a conversation with the defendant are admissible, not for the truth of the matter asserted, but to provide context. *United States v. Van Sach,* 458 F.3d 694, 701 (7th Cir. 2006); *see also United States v. Simmons*, 582 F.3d

730, 736 (7th Cir. 2009); *United States v. York*, 572 F.3d 415, 427 (7th Cir. 2009); *United States v. Nettles*, 476 F.3d 508, 517-18 (7th Cir. 2006).

In *Van Sach*, for example, the Seventh Circuit upheld the district court's ruling admitting recordings (both recorded phone calls and body wire) between the defendant and a non-testifying informant. In so doing, the *Van Sach* decision specifically addressed the impact that *Crawford v. Washington* would have on such a statement (between a defendant and a non-testifying informant): *Crawford* "narrowed its holding to testimonial statements, explaining that the Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" *Id.* at 701. *See also United States v. Davis*, 890 F.2d 1373, 1379 (7th Cir. 1989) ("the admission of [the informant's] portion of the conversations do[es] not implicate [the defendant's] Sixth Amendment rights because the tape recorded statements were admitted for the limited purpose of placing [the defendant's] statements in context."); *United States v. Gajo*, 290 F.3d 922, 930 (7th Cir. 2002) (same); *United States v. McClain*, 934 F.2d 822, 832 (7th Cir. 1991) (same).

Similarly, in *Tolliver*, the Seventh Circuit rejected defense attempts to preclude audio recordings between a defendant and non-testifying confidential informant based upon *Crawford v. Washington*. 454 F.3d at 665. The trial court held that the defendant's statements were non-hearsay under Rule 801(d)(2)(A) and found that the informant's statements were also non-hearsay because they were offered only to put the statements of the defendant in context:

> *Crawford* only covers testimonial statements proffered to establish the truth of the matter asserted . . . . In this case, as pointed out by the United States [the non-testifying informant's] statements were admissible to put [the defendant's] admissions on the tapes into context, making the admissions intelligible for the jury. Statements providing context for other admissible statements are not hearsay because they are not offered for their truth.

*Tolliver*, 454 F.3d at 665-66.

The same analysis applies here to conversations between the defendant and third parties. The statements of the third parties are necessary for context because without those statements, the jury will be confused about the meaning and salience of the defendant's statements.

Thus, the government will seek to admit entire conversations between the defendant and third parties, even where those third parties do not testify, but not to offer the third-party's statements for the truth of the matter asserted.

## VI. Motion to Preclude Cross-Examination Regarding "Bad Acts" by Any Witnesses That Are Not Probative of Truthfulness.

The government has disclosed to defense counsel materials in its possession which set forth potential impeachment material for the witnesses in this case. The defense has also acquired additional materials that it likely believes constitute impeachment material. The government requests that the court limit the questioning of witnesses regarding bad acts to only those acts that are probative of truthfulness.

Under Rules 611 and 608(b), defendants are permitted to inquire into specific bad acts of the witness only if these acts are probative of truthfulness. *See United States v. Henderson*, 2012 WL 698796, at *2 (N.D. Ill. Mar. 1, 2012); *United States v. Wilson*, 244 F.3d 1208, 1218 (10th Cir. 2001) (holding that drug-related crimes "have no relation to truth or untruth"); *United States v. Clemons*, 32 F.3d 1504, 1511 (11th Cir. 1994) ("We do not agree that the question whether Smith ever used or sold drugs was probative of his credibility as a witness."); *United States v. Williams*, 822 F.2d 512, 517 (5th Cir. 1987) ("[W]hether or not [witness] ever sold drugs is not probative of his truthfulness[.]"); *United States v. Apperson*, 441 F.3d 1162, 1195-96 (10th Cir. 2006) (evidence of witness's involvement in drug operation not proper impeachment under Rule 608(b)); *See also United States v. Flaharty*, 295 F.3d 182, 191 (2d Cir. 2000) ("Murder generally

is not a crime of dishonesty [.]"); *United States v. Tate*, 633 F.3d 624 (8th Cir. 2011) (disallowing allegation of assault as "not probative of [the witness]'s character for truthfulness); *United States v. Young*, 567 F.2d 799, 803 (8th Cir. 1977) (disallowing cross-examination of government witness concerning her alleged offer to pay $10,000 to have her husband killed, because "the proposed question was not relevant to veracity and honesty and would have been highly prejudicial").

### A. Past Arrests

Evidence of a prior arrest should be precluded under Rules 609 and 608. Fed. R. Evid. 609 allows for the admission of a witness' felony conviction for purposes of impeachment under certain circumstances. Under the rule, for the purpose of attacking the credibility of a witness, "admission of evidence of a conviction only when the conviction required the proof of (or in the case of a guilty plea, the admission of) an act of dishonesty or false statement." Committee Notes regarding 2006 Amendment to Fed. R. Evid. 609. In any event, arrests are not admissible under Rule 609, only convictions; accordingly, under Rule 609, the defendant should be precluded from inquiring into arrests of witnesses.

Nor are arrests admissible under Fed. R. Evid. 608(b). Rule 608(b) provides that specific instances of past conduct may be inquired into on cross-examination if and only if they concern the witness' character for truthfulness. Courts have not construed Rule 608(b) to permit cross-examination on prior *arrests* absent special facts bearing on the witness's character for the specific trait of truthfulness. *See, e.g., Thompson v. City of Chicago*, 722 F.3d 963, 977 (7th Cir. 2013) ("In general, a witness's arrest record will not be admissible, either because it is inadmissible character evidence under Rule 404(b) or because it is substantially more unfairly prejudicial than probative under Rule 403. There are exceptions, of course. Under Rule 608(b) of the Federal Rules of

Evidence, the court may permit cross-examination on specific instances of conduct if probative of the witness's character for truthfulness or untruthfulness.").

Unless defendant can demonstrate that the conduct underlying the arrest implicates a witness' character for truthfulness, defendant should be precluded from inquiring into the conduct.

## B. Past Convictions

Similarly, although the fact of a conviction may be admissible, provided the requirements of Rule 609 are met, the underlying details of the conviction are not. *United States v. Zarattini,* 552 F.2d 753 (7th Cir. 1977); *United States v. Chaverra-Cardona,* 669 F. Supp. 1445 (N.D. IL. 1987).

In *Zarattini,* the Seventh Circuit upheld the trial court's restrictions on any inquiry into the details of alleged 608(b) offenses. In that case, the government witness testified on direct examination he had been involved in other interstate thefts. *Id.* at 758. On cross-examination, the trial court prohibited defense counsel from going into the details of the other offenses. On appeal, the Seventh Circuit upheld the restriction: "The jury was aware of Brigg's involvement in other interstate thefts as a result of the government's direct examination. It was not error for the district court to exclude the details of these other incidents it felt irrelevant to the present case." 552 F.2d at 759.

Similarly, in *Chaverra-Cardona,* the court precluded any "inquiry into the details" of a government witness' suspected involvement in various narcotics-related offenses. *Id.* at 1446. In so doing, the court stressed that "even where a defendant has been *convicted,* impeachment under Fed. R. Evid. 609 would not permit inquiry into the details of the underlying offenses." *Id.* at 1446-47 (emphasis in original). Accordingly, defendant should be precluded from inquiring into the details underlying a witness' conviction.

## VII. Motion to Admit Prior Consistent Statements Pursuant to Federal Rule of Evidence 801(d)(1)(B)

Because the government anticipates that the defendant will call into question the witnesses' credibility and the reliability of their testimony on several grounds, some of the witnesses' prior consistent statements will be admissible as substantive evidence. Thus, the government is raising this issue for the Court and defense counsel now to streamline the issue at trial.

Federal Rule of Evidence 801(d)(1)(B) exempts from the definition of hearsay a declarant-witness's prior statements that are consistent with the declarant's testimony when offered for one of two purposes: "(i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground." Fed. R. Evid. 801(d)(1)(b)(i) and (ii). Prior consistent statements are admissible pursuant to Rule 801(d)(1)(b)(i) if four criteria are met: "1) the declarant testifies at trial and is subject to cross–examination; 2) the prior statement is consistent with the declarant's trial testimony; 3) the statement is offered to rebut an express or implied charge of recent fabrication or improper motive; and, 4) the statement was made before the declarant had a motive to fabricate." *United States v. Stoecker*, 215 F.3d 788, 791 (7th Cir. 2000). The Seventh Circuit has recently held that "determining whether a witness's past statement has any potential to rebut the allegation [of fabrication] will necessarily involve an exercise of the trial judge's discretion" and that the "precise contours of a charge of fabrication may be unclear." *United States v. Bonin*, 932 F.3d 523, 542 (7th Cir. 2019) (quoting *Miller v. Greenleaf Orthopedic Assocs., S.C.*, 827 F.3d 569, 574 (7th Cir. 2016)). A prior consistent statement is, however, generally admissible even where the defendant merely raises an "implication" that the statement is fictional if the other factors of the four-part test are satisfied. *Id.*

In 2014, Rule 801(d)(1)(B) was amended to add subsection ii, which permits the admission of a prior consistent statement as substantive evidence where a witness's credibility is attacked on a ground other than fabrication or improper motive. *United States v. Davis*, 896 F.3d 784, 789 (7th Cir. 2018). In making the change, the Committee noted that the traditional limits based on bolstering and 403 remained, but the amendment made prior statements that had previously been admissible only for rehabilitation also admissible as substantive evidence. Committee Notes on Rules – 2014 Amendment. Courts have interpreted (ii) to permit admission of a prior consistent statement where, for example, the declarant's trial testimony contradicts a prior statement, *United States v. Davis*, 896 F.3d 784, 788 (7th Cir. 2018), a declarant is repeatedly accused of "faulty memory," *United States v. Cox*, 871 F.3d 479, 487 (6th Cir. 2017), and where the declarant was impeached for prior inconsistencies or new facts provided in trial testimony, *United States v. J.A.S., Jr.*, 862 F.3d 543, 544-45 (6th Cir. 2017).

When admissible, the prior consistent statement can be admitted through the declarant, or through the person to whom the statement was made, such as a law enforcement officer. *United States v. Green*, 258 F.3d 683 (7th Cir. 2001). The statement is admissible for the truth of the matter asserted because it is not hearsay under Rule 801(d)(1)(B).

In this case, witnesses made multiple statements to law enforcement. Given the nature of some of those statements, such as the progressive nature of the revelations they made, it is likely that the defense will attempt to impeach them for inconsistency, faulty memory, and/or fabrication. If the defense does so, the witnesses' prior consistent statements are admissible as non-hearsay pursuant to Fed. R. Evid. 801(d)(1)(B). Whether subsection (i) or (ii) applies will, of course, depend on the specific nature of the cross-examination; however, and this Court should permit the

government to introduce the prior consistent statements pursuant to the rule as substantive evidence.

## VIII. Motion to Preclude Argument Intended to Arouse Speculation about Uncharged Coconspirators.

In this case, several individuals participated or assisted in the defendant's plan to manufacture Molotov cocktails and firebomb a police station and homes, but the defendant was the organizer and planner of the crimes. Some individuals assisted in the defendant's recruitment of coconspirators.

The Seventh Circuit has made clear that whether another individual was criminally charged as part of a criminal scheme does not make facts related to the charged individual's participation in the criminal activity more or less probable. *United States v. Young*, 20 F.3d 758, 765 (7th Cir. 1994) (affirming district court's grant of motion in *limine* to prevent defendant from introducing evidence that another individual was arrested with him, but not charged criminally). As a result, any discussion about whether others were charged or the reasons that they were not charged is irrelevant. *Id*; *see also United States v. O'Connor*, 656 F.3d 630, 645 (7th Cir. 2011) (issuing a cautionary instruction "telling the jurors not to 'speculate [about] why any other person whose names you may have heard during the trial or who was named in the indictment in this case as a defendant is not currently on trial before you.'").

Thus, the government moves this Court to issue an order preventing the defendant from making any argument, or pursuing any line of questioning, that invites the jury to consider or speculate about the reason that individuals who aided the defendant's trafficking were not also charged.

## IX. Motion to Exclude any Argument or Questioning Relating to the Government's Charging Decisions.

This Court should preclude the defense from arguing that the government's decision not to charge coconspirators.

Arguments and comments concerning the government's charging decisions are generally deemed irrelevant to a defendant's guilt or innocence. *See United States v. Mosky*, 1990 WL 70832, at *1 (N.D. Ill. 1990) ("The government seeks to bar only any reference to its decisions regarding who to indict and for what acts. The government is correct that those decisions are not relevant to the charges faced by these defendants.") (*citing Wayte v. United States*, 470 U.S. 598, 607 (1985)). The government's decision regarding who to charge and for what crime has no bearing on whether evidence is sufficient to convict a defendant of the charge for which he is on trial. *United States v. Young*, 20 F.3d 758, 765 (7th Cir. 1994) (instructing the jury not to speculate about the government's charging decision).

In *United States v. Young*, for example, the Seventh Circuit affirmed a trial court's exclusion of evidence concerning the government's charging decisions. In that case, the defendant who had been arrested with another individual who was not charged with the defendant, sought to comment on the government's charging decisions. The district court, however, granted an in limine motion to exclude evidence of the government's charging decision, and the Seventh Circuit affirmed.

The Seventh Circuit's application of Rule 401's relevancy requirements in *Young* are equally applicable here. In this case, the Defendant may try and suggest that the jury should question his criminal culpability because others involved were not charged with the same offenses.

Importantly, the Government's decision not to charge coconspirators has no bearing on whether Mayes committed his crimes. Accordingly, the Court should preclude the Defendant from commenting on the government's charging decisions.

**X.     Motion to Exclude Argument or Evidence of "Outrageous Government Conduct".**

There is an "increasing tendency in criminal cases to try some person other than the defendant and some issues other than his guilt." *United States v. Griffin*, 867 F. Supp. 1347, 1347 (N.D. Ill. 1994) (citation omitted). The "thrust of the defense" in these types of cases "is this: the prosecution was not nice or could have done it better and so the jury ought to acquit, whether or not guilt has been proved beyond a reasonable doubt." *Id*. at 1347. Courts routinely have, therefore, granted motions *in limine* "to bar defendants from presenting evidence or making arguments to the jury suggesting that they should be acquitted because the government engaged in misconduct in the course of its investigation." *United States v. Shields*, 1991 WL 236492, at *3 (N.D. Ill. Aug. 13, 1991); *United States v. Finley*, 708 F. Supp. 906, 913-914 (N.D. Ill. 1989) (granting motion *in limine* to preclude evidence "which is not relevant to defendants' guilt but is designed only to persuade the jury that defendants should be acquitted because the government engaged in misconduct during its investigation."); *United States v. Katz*, 1992 WL 137174, at *5 (N.D. Ill. June 15, 1992).

The impropriety of arguing allegations of governmental misconduct to the jury is twofold. First, and most fundamentally, the Seventh Circuit has rejected the outrageous government conduct defense and has held that such claims afford no defense to a criminal prosecution as a matter of law. *See United States v. Boyd*, 55 F.3d 239, 241-42 (7th Cir. 1995). *Boyd* is unequivocal in its holding that "outrageous government conduct" is no defense to a criminal charge, and the jury thus should not be exposed to irrelevant allegations of this sort. Second, even before

the *Boyd* decision, this Circuit held that the issue of government misconduct was a matter of law for determination by the court: "the issue of outrageous government conduct is not an issue for the jury." *United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) (noting that every circuit which has considered the issue has held that the issue is not a jury question) (citations omitted); *see also Katz*, 1992 WL 137174, at *5 ("[T]he government is right in attempting to preclude any argument by [defendant] before the jury that the government's conduct in investigating and prosecuting this case is outrageous."); *United States v. D'Arco*, 1991 WL 264504 (N.D.Ill. Oct. 18, 1991); *Shields*, 1991 WL 236492, at *3; *Finley*, 708 F. Supp. at 913-914.

## XI.    Motion to Exclude Any Argument or Questioning Regarding the Government's or Agents' Motivation for Investigating or Prosecuting the Case.

The government moves to preclude evidence or argument by the defense regarding the government's and the agents' motivations for investigating or prosecuting the case. Evidence bearing on the government's decision to prosecute is "extraneous and collateral" and thus should be excluded from trial. *See United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument").

Further, the government moves to preclude the defense from arguing or eliciting evidence regarding the mental states, subjective intentions, or motivations, of the investigating agents. It is settled law that inquiries regarding the subjective intentions or motivations of a government agent are irrelevant to determining the factual guilt or innocence of a defendant. *See, e.g., United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994) (noting, even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant"); *United States v. Andreas*, 23 F. Supp.2d 835, 850 (N.D. Ill. 1998) (explaining that "the subjective beliefs of ... government

agents are inadmissible as to any potential entrapment defense" because "the government's intent to entrap the defendants is irrelevant to prove entrapment").

Accordingly, the government moves to preclude evidence or argument by the defense regarding the government's and the agents' motivations for investigating or prosecuting the case.

**XII.** **Motion to Exclude Any Argument or Questioning Implying That the Investigation or Prosecution of this Case Was Improper or Racially Motivated.**

The defendant should be prevented from advancing forms of argument or questioning designed to interject issues of race or religion into this trial. Permitting unsupported and improper argument or questioning of this nature in the presence of the jury risks irreparable prejudice and confusion of the matters at issue. Courts have long noted that "[a]ppeals to racial passion can distort the search for truth and drastically affect a juror's impartiality." *United States v. Doe*, 903 F.2d 16, 25 (D.C. Cir. 1990).

Not only is there no evidentiary basis for interjecting into this trial allegations of racial animus in the investigation or prosecution of the case, but the law is well-settled that claims of selective prosecution are to be resolved by the court and not the jury. Arguments or evidence that the government's motivation is not relevant to the jury's determination of a defendant's guilt or innocence. *United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979); *United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994).

In addition, the government notes that this investigation was initiated because ATF was investigating arsons related to the civil disorder and was informed that flammable destructive devices were in front of a residential apartment complex. The ATF thus justly began in investigation into where those destructive devices came from and how they were intended to be used.

As a more general matter, as discussed above, it is also settled law that inquiries regarding the subjective intentions or motivations of a government agent are irrelevant to determining the factual guilt or innocence of a defendant. *See, e.g., Goulding*, 26 F.3d at 667 (noting, even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant . . .").

Accordingly, the government moves to preclude any argument or questioning that suggests that the investigation or prosecution of this case was racially motivated.

## XIII. Motion to Prohibit Discussion of Potential Punishment, Including Any Collateral Consequences, if Convicted.

It is well-established that unless a jury has a sentencing role, such as in cases involving capital offenses, it "should be admonished to reach its verdict without regard to what sentence might be imposed." *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quotations, footnotes, and citations omitted); *see also Aliwoli v. Carter*, 225 F.3d 826, 830 (7th Cir. 2000); *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997) (noting that "the practice of informing juries about the sentencing consequences of their verdicts is strongly disfavored"). This basic principle applies equally to cases involving mandatory minimum penalties. *See Shannon*, 512 U.S. at 586 (recognizing that "as a general matter, jurors are not informed of mandatory minimum or maximum sentences"). Indeed, there is a Seventh Circuit Pattern Jury Instruction (4.08) that states, "[i]n deciding your verdict, you should not consider the possible punishment for the defendant . . . ."

Because evidence of the potential penalties and possible collateral consequences that defendant faces are irrelevant to the jury's responsibilities, mention of such penalties and consequences to the jury only serves the improper purpose of jury nullification. *See, e.g., United*

*States v. Reagan*, 694 F.2d 1075, 1080 (7th Cir. 1982) ("the authorities are unequivocal in holding

that presenting information to the jury about possible sentencing is prejudicial") (citation omitted).

The defendant should, therefore, be precluded from making any references to the possible penalties

he faces as a result of a guilty verdict. Similarly, any argument by the defendant based on potential

penalties or collateral consequences should be precluded.

**XIV.**   **Motion to Exclude the Presentation of Argument or Evidence in Support of Jury Nullification.**

The Seventh Circuit has explained that although jury nullification is a fact because the

government cannot appeal an acquittal, "it is not a right, either of the jury or of the defendant."

*United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996); *see also United States v. Bruce*, 109 F.3d

323, 327 (7th Cir. 1997) ("Jury nullification is not to be positively sanctioned by instructions but

is to be viewed as an aberration under our system."). As a matter of law, the defendant is prohibited

from raising a jury nullification argument to the jury. *United States v. Kerley*, 838 F.2d 932, 938

(7th Cir. 1983)).

Accordingly, the government requests the Court bar the presentation of argument or

evidence in support of jury nullification.

**XV.**   **Motion to Exclude any Discovery Requests or Commentary Regarding Discovery in the Jury's Presence.**

The government respectfully moves to preclude counsel from requesting discovery from

witnesses or opposing counsel, moving the court for such discovery, or otherwise commenting on

discovery matters, in the presence of the jury. Such requests from counsel in front of the jury are

inappropriate and may create the impression that one side has suppressed information as a means

of seeking an unfair advantage. See *United States. v. Dochee*, 2009 WL 102986, at *1 (N.D. Ill.

Jan. 15, 2009) (granting the government's motion in limine to exclude comments on discovery

because "commentary on discovery matters by either party in the presence of the jury could create the impression that the opposing party is withholding information."); *see also Large v. Mobile Tool Intern., Inc.*, 2008 WL 4238963, at \*4 (N.D. Ind. Sept. 10, 2008) ("[I]t is improper for Large to reference specific discovery motions or orders in this case when discussing spoliation before the jury.").

The government requests that the court require that all comments relating to discovery be made outside the presence of the jury. *See United States v. Gray*, 2010 WL 1258169, at \*2-3 (N.D. Ind. Mar. 26, 2010) ("[G]rant[ing] the government's motion to preclude requests of discovery from witnesses or opposing counsel, moving the court for such discovery or otherwise commenting on discovery matters in the presence of the jury. Any necessary requests for or comments about discovery can be made outside of the jury's presence."). Accordingly, the government moves to preclude counsel from requesting discovery from witnesses or opposing counsel, moving the court for such discovery, or otherwise commenting on discovery matters, in the presence of the jury.

**XVI.** **Motion to Exclude the Presentation of Argument Attempting to Define Reasonable Doubt.**

The Seventh Circuit has consistently held that trial courts and defense counsel alike should refrain from defining "reasonable doubt" for the jury. For example, in *United States v. Bruce*, 109 F.3d 323, 329 (7th Cir. 1997), the Seventh Circuit, in upholding a district court preventing the defendant's attorney from attempting to define reasonable doubt to the jury in closing argument, again emphasized the Seventh Circuit precedent that "it is well established in this Circuit . . . that neither trial courts nor counsel should attempt to define 'reasonable doubt' for the jury;" *United States v. Langer*, 962 F.2d 592, 600 (7th Cir.1992) (reasonable doubt is self-explanatory and further definition would confuse the jury); *United States v. Hall*, 854 F.2d 1036, 1039 (7th Cir.

1988) (reasonable doubt definitions are unhelpful to a jury and potential impair defendant's constitutional right to have the government prove each element beyond a reasonable doubt).

## **CONCLUSION**

The government moves for the court to grant its Motions in Limine pretrial to ensure an orderly, efficient trial devoid of jury nullification, and impermissible argument, questioning, and evidence.

Dated at Milwaukee, Wisconsin this 29th day of March, 2024.

> Respectfully submitted,
> GREGORY J. HAANSTAD
> United States Attorney
>
> By:    */s/ Christopher Ladwig*
> Christopher Ladwig
> Benjamin Taibleson
> Assistant United States Attorneys
> United States Attorney's Office
> Eastern District of Wisconsin
> 517 East Wisconsin Avenue
> Milwaukee, Wisconsin 53202